E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
CATHARINE RICHMOND (Cal. Bar No. 301184)
LYNDSI ALLSOP (Cal. Bar No. 323485)
Assistant United States Attorneys
Violent & Organized Crime Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-7162/3165
    Facsimile: (213) 894-0141
    E-mail:   catharine.richmond@usdoj.gov
               lyndsi.allsop@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-338-GW |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date:   04/18/23<br>Hearing Time: 8:00 a.m. |
| ROBERT QUIDO STELLA, | Location:   Courtroom of the<br>Hon. George Wu |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Catharine Richmond and Lyndsi Allsop, hereby files its Trial Memorandum.

//

//

This filing is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: 04/11/23                    Respectfully submitted,

                                   E. MARTIN ESTRADA
                                   United States Attorney

                                   MACK E. JENKINS
                                   Assistant United States Attorney
                                   Chief, Criminal Division

                                   *Catharine Richmond*
                                   _____
                                   CATHARINE RICHMOND
                                   LYNDSI ALLSOP
                                   Assistant United States Attorneys

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

**Contents**

TABLE OF AUTHORITIES...............................................i

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.    STATUS OF THE CASE..........................................1

II.   STATEMENT OF CHARGES........................................1

III.  ELEMENTS OF THE OFFENSES....................................2

IV.   SUMMARY OF FACTS............................................3

      A.    HSI Receives a Tip Someone at Defendant's Residence
            Paid for Access to a Dark Web Site Selling Access to
            Child Pornography....................................3

      B.    Agents Search Defendant's Residence, Seize Evidence,
            and Search the Evidence Which Reveals Defendant
            Produced Child Pornography of His Daughter and Her
            Teenage Friends and Possessed Child Pornography of
            Other Children.......................................5

V.    LEGAL AND EVIDENTIARY ISSUES................................7

      A.    Motions *In Limine*..................................7

            1.    The Charged Child Pornography Can Be Offered and,
                  If Admitted, Published to the Jury.............7

            2.    Defendant Is Precluded from Seeking Jury
                  Nullification by Referring to His Military
                  Service........................................8

            3.    Physical Evidence from the Search Warrant Can Be
                  Offered, But a Ruling on Hidden Cameras Is
                  Pending........................................8

            4.    A Ruling on the Admissibility of Defendant's
                  Statements Is Pending, But Defendant Should Be
                  Precluded From Attempting to Relitigate the
                  Manner of the Execution of the Search Warrant.......9

      B.    Hearsay.............................................10

            1.    The Government May Introduce Defendants'
                  Statements....................................10

            2.    The Government May Introduce Statements of
                  Persons in Conversation with the Defendant.........10

## **TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                              PAGE

        3.   Defendants May Not Introduce Their Own Recorded
           Statements........................................10

        4.   Rule of Completeness Does Not Permit Defendant to
           Admit Additional Statements where Government
           Clips Do Not Create Distortions.....................11

  C.   Cross-Examination of Defendant............................13

  D.   Lay Testimony of Law Enforcement Agents..................14

  E.   Audio and Video Recordings..............................16

  F.   Business Records and Public Records......................17

  G.   Reciprocal Discovery....................................17

  H.   Authentication, Identification, and Chain of Custody.....18

  I.   Character Evidence......................................19

VI.  CONCLUSION....................................................20

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

**Cases**

Gallego v. United States,
    276 F.2d 914 (9th Cir. 1960) ................................. 18

Hamling v. United States,
    418 U.S. 87 (1974) ......................................... 19

Los Angeles Cnty., California v. Rettele,
    550 U.S. 609 (2007) ......................................... 9

McGautha v. California,
    402 U.S. 183 (1971) ........................................ 13

Meraz v. United States,
    663 F. App'x 580 (2017) .................................... 12

Michelson v. United States,
    335 U.S. 469 (1948) ........................... 18-19, 19, 20

Ohler v. United States,
    529 U.S. 753 (2000) ........................................ 13

Reyes v. United States,
    383 F.2d 734 (9th Cir. 1967) ............................... 18

Taylor v. Illinois,
    484 U.S. 400 (1988) ........................................ 17

United States v. Black,
    767 F.2d 1334 (9th Cir. 1985) .......................... 13, 18

United States v. Blackwood,
    878 F.2d 1200 (9th Cir. 1989) .............................. 18

United States v. Bright,
    588 F.2d 504 (5th Cir. 1979) ............................... 20

United States v. Chu Kong Yin,
    935 F.2d 990 (9th Cir. 1991) ............................... 18

United States v. Collicott,
    92 F.3d 973 (9th Cir. 1996) ................................ 12

United States v. Colwell,
    7 F. App'x 555 (9th Cir. 2001) ............................. 15

United States v. Cunningham,
    194 F.3d 1186 (11th Cir. 1999) ............................. 11

i

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

United States v. Cuozzo,
    962 F.2d 945 (9th Cir. 1992) ................................. 13

United States v. De Bright,
    730 F.2d 1255 (9th Cir. 1984) (en banc) ..................... 18

United States v. Dorrell,
    758 F.2d 427–35 (9th Cir. 1985) ............................. 12

United States v. Fernandez,
    839 F.2d 639 (9th Cir. 1988) ................................. 9

United States v. Figueroa-Lopez,
    125 F.3d 1241–1246 (9th Cir. 1997) .......................... 14

United States v. Harrington,
    923 F.2d 1371 (9th Cir. 1991) ............................... 18

United States v. Hedgcorth,
    873 F.2d 1307 (9th Cir. 1989) ............................... 19

United States v. Kaiser,
    660 F.2d 724 (9th Cir. 1981) ................................ 18

United States v. Lim,
    984 F.2d 331 (9th Cir. 1993) ................................ 10

United States v. Matta-Ballesteros,
    71 F.3d 754 (9th Cir. 1995) ............................. 16, 18

United States v. McCollom,
    664 F.2d 56 (5th Cir. 1981) ................................. 20

United States v. McDowell,
    918 F.2d 1004 (1st Cir. 1990) ............................... 10

United States v. Miranda-Uriarte,
    649 F.2d 1345 (9th Cir. 1981) ............................... 13

United States v. Oriyomi,
    449 F. App'x 681 (9th Cir. 2011) ........................... 13

United States v. Ortega,
    203 F.3d 675 (9th Cir. 2000) ...................... 10, 11, 12

United States v. Robinson,
    967 F.2d 287 (9th Cir. 1992) ................................ 18

United States v. Rrapi,
    175 F.3d 742 (9th Cir. 1999) ................................ 16

ii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                            PAGE

United States v. Santana-Camacho,
    931 F.2d 966 (1st Cir. 1991) .................................. 19

United States v. Simas,
    937 F.2d 459 (9th Cir. 1991) .................................. 15

United States v. Skeet,
    665 F.2d 983 (9th Cir. 1982) .................................. 14

United States v. Smith,
    893 F.2d 1573 (9th Cir. 1990) ................................. 17

United States v. Smith,
    918 F.2d 1551 (11th Cir. 1990) ............................... 10

United States v. Tello-Carrillo,
    516 F. App'x 643 (9th Cir. 2013) ............................. 15

United States v. Torres,
    908 F.2d 1417 (9th Cir. 1990) ................................ 16

United States v. Vallejos,
    742 F.3d 902 (9th Cir. 2014) ............................. 11, 12

**Statutes**

18 U.S.C. § 2252A ........................................... 1, 2

18 U.S.C. § 2251 ..................................... 2, 3, 5, 9

**Rules**

Fed. R. Crim. P. 16 ...................................... 17

Fed. R. Evid. 106 .................................... 11, 12

Fed. R. Evid. 404 ........................................ 19

Fed. R. Evid. 405 ........................................ 19

Fed. R. Evid. 608 ........................................ 13

Fed. R. Evid. 801 ...................................... 9, 10

Fed. R. Evid. 803 ..................................... 16-17

Fed. R. Evid. 902 ........................................ 16

Fed. R. Evid. 701 .................................... 14, 15

Fed. R. Evid. 702 ........................................ 14

Fed. R. Evid. 901 .................................... 16, 17

Fed. R. Evid. 1003 ....................................... 17

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STATUS OF THE CASE

A jury trial in this case, <u>United States v. Stella</u>, CR 21-338-GW, is set for next Tuesday, April 18, 2023.  The government estimates its case-in-chief is approximately one court day.  With cross-examination and redirect, the government estimates the trial will take a one and a half to two days.  It is unknown whether the defense will present a case and, if so, how long it would last. Estimating two days for jury selection, the presentation of the case is likely to last three to four days with jury deliberations to follow.

The government anticipates calling four witnesses in its case-in-chief:

(1) Homeland Security Investigations ("HSI") Special Agent Victoria Scott ("Agent Scott"), the case agent;

(2) HSI Special Agent David Parker ("Agent Parker"), a digital forensic expert;

(3) Ms. Kelly Galvan, Minor Victim 3's ("MV3") mother; and

(4) Mr. Coleman Kelly, Minor Victim 2's ("MV2") father.

The government reserves the right to call rebuttal witnesses, if necessary.

### II.   STATEMENT OF CHARGES

Defendant, ROBERT QUIDO STELLA ("defendant"), is charged in a six-count indictment with child exploitation offenses.

Today, April 11, 2023, defendant disclosed he intends to plead guilty, without a plea agreement, to the last three counts of the indictment which charge him with, in Counts Four and Five, Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(b),

(b) (2), and, in Count Six, with Access With Intent to View Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(b), (b)(2). The change of plea is set for the final pretrial conference this Thursday, April 13, 2023.

If defendant pleads as he has indicated he will, then the trial will be on the remaining three counts, Counts One through Three, which charge defendant with Production of Child Pornography, in violation of 18 U.S.C. § 2252A(a), (e).

Count One charges defendant with producing child pornography of Minor Victim 1 ("MV1"), M.S., on March 5, 2018.  Count Two charges defendant with producing child pornography of MV2, M.K., on April 5, 2018.  Count Three charges defendant with producing child pornography of MV3, N.E., on April 5, 2018.  All three girls were around 13 years-old at the time.

**III. ELEMENTS OF THE OFFENSES**

For the jury to find defendant guilty of Production of Child Pornography, in violation of 18 U.S.C. § 2251(a), (e), the government must prove the below elements beyond a reasonable doubt:

(1)  At the time, the victim was under the age of 18 years;

(2)  Defendant employed, used, persuaded, or coerced the victim to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and

(3)  Defendant either (a) knew or had reason to know that the visual depiction would be mailed or transported across state lines or in foreign commerce; of (b) the visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce; or (c) the visual depiction was mailed or actually transported across state lines or in foreign commerce.

1     These elements come from the governing Ninth Circuit model jury

2     instruction, Model Instruction Number 20.18.

3  **IV.   SUMMARY OF FACTS**

4        **A.   HSI Receives a Tip Someone at Defendant's Residence Paid
              to Access to a Darkweb Site Selling Access to Child**

5              **Pornography**

6     On May 10, 2021, Homeland Security Investigations ("HSI")

7     Ventura received a lead from their headquarters that the German

8     police had captured payment information to a website, "356 CP," which

9     sold access to child pornography.  (In the Matter of the Search of

10    The Premises Located at 17808 Maplehurst Place, Canyon Country,

11    California 91387, MJ 2:21-03211-MAA, attached to United States v.

12    Stella, CR 21-338-GW ("Dkt.") 75, Exhibit ("Ex.") B.)

13    365 CP was a website accessible only through "The Onion

14    Browser," commonly referred to by its acronym, "Tor."  Tor anonymizes

15    online activity by concealing the true Internet Protocol ("IP")

16    address of both the website provider and the site visitor.  To access

17    a site on Tor, a user must first download and install Tor.  Once

18    installed, Tor does not function like a typical browser with a search

19    engine.  That is, a user cannot simply type in search terms which the

20    browser will use to populate a page with clickable hyperlinks to

21    related content.  Instead, the user must have a site's URL address,

22    which, on the dark web, is often an unintuitive alphanumeric string.

23    Even if a user has such an address, dark web sites usually have

24    additional login or verification requirements.  (Id. at p. 13,

25    Section V.)

26    The homepage of 365 CP contained 12 video stills depicting

27    children engaged in sex acts with hyperlinks.  There was no other

28    content on the page.  Those images and their captions were

3

unambiguous.  For example, one image titled, "Mother decided to talk with her son about sex and accidentally fucks," depicted a nude pre-adolescent male, approximately 8-10 years-old, and a nude adult female engaged in penetrative sex.  Another image, titled, "Young girl diligently sucks two cocks," depicted a pre-adolescent female orally copulating two adult males' penises.

At the bottom of 365 CP's page, there were two options to access the site: register or log in.  To register for access, the site instructed that a user must pay with cryptocurrency.  (Def. Ex. B, p. 14 at ¶ 9(d).)  Agents later found a screen recording defendant made of himself logging into the site.

The payment information to 365 CP from the German tip indicated a purchaser (identified by a unique number) used Coinbase – an online company operating a cryptocurrency exchange platform – to transfer a cryptocurrency payment to 365 CP.  Agent Scott queried Coinbase which in turn reported that that on July 13, 2020, the purchaser used a Bitcoin wallet (identified by a unique number) to pay the equivalent of approximately $18.00 to 365 CP from a particular IP address.  In addition, the Coinbase user had registered as follows: Name, Robert Stella; email address, rob.stella1@gmail.com; country, United States of America; address, 17808 Maplehurst Place, Canyon Country, 91387; and phone number, 619.672.9249.[1]  (Def. Ex. B, pp. 14-15 at Section VI(A).)

---

[1] Typically, the government would not provide a defendant's personally identifying information – such as a home address – in a public filing.  However, given that defendant publicly filed the warrant as an exhibit which contained his personally identifying information, the government will use the now-public full information as well.

Charter Communications confirmed the IP address used the make the cryptocurrency payment was registered to defendant at the Maplehurst address.  Verizon Wireless confirmed the 619.672.9249 phone number was registered to defendant at the Maplehurst address. (Id. at pp. 15-16 at Section VI(B).)

**B.    Agents Search Defendant's Residence, Seize Evidence, and Search the Evidence Which Reveals Defendant Produced Child Pornography of His Daughter and Her Teenage Friends and Possessed Child Pornography of Other Children**

On July 15, 2021, HSI agents executed the search warrant at defendant's residence.  In all, they seized approximately 17 items and, after retuning two, retained only 15 and digitally searched 12. (Id. at pp. 3-6; Def. Ex. C at p. 5.)

Special Agent David Parker ("Agent Parker"), who will be testifying as a digital forensic expert, extracted data from the digital devices pursuant to the warrant.  (Def. Ex. C.)  Agent Parker created a Report of Investigation ("ROI") detailing which devices he searched, how he searched them, and what he did with the extracted data and evidence items.  (Id.)  He will testify as much at trial. Specifically, he gave the extracted data to Agent Scott for further review and culling.

Agent Scott will testify one of those digital devices was Passport External hard drive, which is an external digital storage device, bearing serial number WXMIE83NVZ10, which agents found in a backpack on the right side of the bed in the primary bedroom.  She will also testify the backpack contained defendant's identification cards, work badges, a boarding pass in his name, and his passport. On that device, Agent Scott will testify (and Agent Parker will lay the forensic foundation) that there were 17 videos and approximately

430 stills of MV1, MV2, and MV3 recorded from about waist-height in the "kids' bathroom" of defendant's home.  These files were found nested five folders deep in file path titled, "\1-NU\1-Courses\HUB 650 Foundations of Behavioral Research\3-Case Study\Week4\."  Many of the files depicted the girls undressing or naked.  These files are the basis of the Production counts charged in Counts One through Three.  She will also introduce a video of defendant setting up the camera in the bathroom and (with Agent Parker) that in the deleted space were videos of defendant's wife and son.  Agent Parker will testify that he knows of no way the stills could be created except by a user generating them.

In a drawer in the small armoire on defendant's side of the bed, agents found a black USB charging port containing a hidden camera. This camera is one of the cameras the Court is currently deciding whether the government can introduce at trial and, if not, testify as to seeing it during the execution of the search warrant.

Agent Scott will also testify (and Agent Parker will lay the forensic foundation) that on defendant's MacBook Pro computer, bearing serial number C02XG27YJG5M, agents found a file path, "Users\robertstella\Desktop\1-Desktop\2-APG\2-Events\2-Clients\4-Federal Contracts\1-Bids\INACTIVE\Midshipmen Program\1-Materials for Experiential Program\Student Guide\Pictures\Working\Vampire," which contained child pornography.  One file, m2ex7pvg2uqfgwsgnzmh8.mp4, depicted a nude adolescent male orally copulating a naked prepubescent female.  That child pornography is the subject of Count Four.

They will also testify agents found a second external hard drive, a Western Digital Passport, bearing serial number

WX41E34D3202, containing a file path, "Users\robertstella\Desktop\1-Desktop\4-My Documents\Tax Return\2012\untitled folder," which housed 41 videos of child pornography mostly depicting prepubescent children between the ages of 5-8.  That child pornography is the subject of Count Five.  Those videos included the three videos charged in the indictment namely:

- 3djru8dpmmetnxappw4kr.mp4 – a video that portrays an unseen videographer directing a nude pre-adolescent female, approximately 5-7 years of age, to display her genitalia and buttocks, and then portrays an adult male hand touching her vagina, and an adult male penis penetrating her vagina, her mouth, and ejaculating on her genitals;

- 7mb6i6i5rrpdu645w4vpj.mp4 – a video that portrays a nude 5-7 year old male; and

- 78toe746mvw3x67ot3iqo – a video that portrays a nude adult male from the chest down, using his penis to penetrate the vagina of a nude pre-adolescent female, approximately 6-9 years of age.

Defendant's payment to access the 365 CP is the subject of Count Six.

## V.   LEGAL AND EVIDENTIARY ISSUES

### A.   Motions *In Limine*

#### 1.   The Charged Child Pornography Can Be Offered and, If Admitted, Published to the Jury

On February 23, 2023, this Court granted the government's motion in limine to allow the government to offer child pornography as evidence and, if it is admitted, publish it to the jury.  (Dkt. 104.) (The Court also agree to display the child pornography to the jurors

only and not to the gallery).  The Court is permitting the government to show one video for Counts One and Two plus one still from those videos; Count Three is based on stills alone and the government will admit only one still pursuant to the Court's ruling.

Now that defendant is pleading to Counts Four through Six, the government will file a separate motion seeking to admit a limited amount of evidence, including child pornography, from those counts under a number of different legal theories.

### 2.   Defendant Is Precluded from Seeking Jury Nullification by Referring to His Military Service

On February 23, 2023, this Court granted the government's motion in limine to preclude defendant from seeking to improperly trigger jury nullification by referring to defendant's military service. Dkt. 104.  If defendant calls character witnesses, which he has disclosed he might, the government might seek a side bar requesting an attorney proffer from defense counsel before the character witnesses take the stand indicating they will not seek to elicit testimony about defendant's military service.

### 3.   Physical Evidence from the Search Warrant Can Be Offered, But a Ruling on Hidden Cameras Is Pending

Defendant filed a motion to suppress the physical evidence seized from defendant pursuant to the search warrant. Dkt. 75.  At the hearings on the motions to suppress, the Court indicated it would deny defendant's motion, but held one issue in abeyance subject to further briefing: whether cameras seized during the warrant could be admitted and, if not, whether the agents could testify as to seeing them during the execution of the search warrant.  The parties' supplemental briefing is pending with the Court.

4.   <u>A Ruling on the Admissibility of Defendant's
Statements Is Pending, But Defendant Should Be
Precluded From Attempting to Relitigate the Manner of
the Execution of the Search Warrant</u>

Defendant filed a motion to suppress statements he made to agents on the day of the execution of the search warrant.  Dkt. 77. Defendant contended the manner of the execution of the search warrant was excessive and therefore caused him to involuntarily confess.  <u>Id</u>.

The Court has not yet ruled on whether defendant's statements will be suppressed.

Regardless how the Court rules, however, defendant should be precluded from relitigating to the jury the manner of the execution of the search warrant.  The manner of the execution of the search warrant is irrelevant to defendant's guilt or innocence. Relitigating it, therefore, would serve only to impermissibly call into question the agents' character by implying to the jury they violated defendant's rights or, in the alternate, were excessive in the manner of execution of the search warrant.

"In executing a search warrant officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search."  <u>Los Angeles Cnty., California v. Rettele</u>, 550 U.S. 609, 614 (2007) (citations omitted).  At the motion to suppress hearings, this Court indicated agreement with the agents need to protect their safety during the execution of the search warrant.

Therefore, defendant should be precluded from relitigating the manner of the execution of the search warrant to the jury as it will not aid the trier of fact in determining the only issue before it – defendant's guilt or innocence on Counts One through Three.

9

**B.    Hearsay**

     1.    The Government May Introduce Defendants' Statements

The government, if allowed, intends to introduce defendant's recorded statements to HSI Special Agents.

A defendant's out-of-court statement is admissible if offered against him by the government.  See Fed. R. Evid. 801(d)(2)(A); United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).

An out-of-court statement offered against the defendant is also not hearsay if the defendant "manifested an adoption or belief in its truth . . .."  Fed. R. Evid. 801(d)(2)(B).

     2.    The Government May Introduce Statements of Persons in Conversation with the Defendant

The government also intends to introduce statements of the agents interviewing defendant for context.  Such statements not offered for their truth, but to provide context for what the defendant said or did, and thus, are not hearsay.  United States v. Smith, 918 F.2d 1551, 1559 (11th Cir. 1990); United States v. McDowell, 918 F.2d 1004, 1007-08 (1st Cir. 1990).  This makes sense, as often a defendant's "yes" or "no" answer would be indecipherable to a jury without the question that prompted such a question.

     3.    Defendants May Not Introduce Their Own Recorded Statements

A defendant cannot elicit or introduce evidence of his own prior statements, either on direct examination of his own witness, or cross-examination of the government's witness, because those statements are inadmissible hearsay.  See e.g., United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000); United States v. Lim, 984 F.2d 331, 336 (9th Cir. 1993)("[Defendant's] own statement was

admissible as a party-opponent admission under Fed. R. Evid. 801(d)(2)(A)).

Indeed, even where the government elicits the inculpatory portion of a defendant's statement from a witness, on cross-examination, the defendant is not entitled to elicit any purportedly exculpatory portion of the defendant's own statement.  See Ortega at 682 ("self-inculpatory statements, when offered by the government, are admissions by a party opponent and are therefore not hearsay," but when offered by defendant himself, "non-self-inculpatory statements are inadmissible hearsay").  To permit otherwise would place a defendant's statements "before the jury without subjecting himself to cross examination, precisely what the hearsay rule forbids."  Ortega, 203 F.3d at 682 (district court properly granted the government's motion in limine to exclude introducing defendant's post-arrest statements through cross examination of INS agent) (quoting United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988)); United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999) (defendant cannot introduce exculpatory statement without subjecting himself to cross examination).

### 4. Rule of Completeness Does Not Permit Defendant to Admit Additional Statements where Government Clips Do Not Create Distortions

Defendant may argue that Rule 106 ("Rule of Completeness") allows defendant to admit additional portions of their recorded statements to "complete" the recordings.  This is a misstatement of the law.

The Ninth Circuit has been clear, Rule 106 only "exists to avert 'misunderstanding or distortion' caused by introduction of only part of a document."  United States v. Vallejos, 742 F.3d 902, 905 (9th

Cir. 2014) (quoting Beech Aircraft Corp. v. Rainey, 488 U.S. 153 (1988)).  This does not mean defendant is permitted to add additional recordings from the same conversation simply because the recording also contains non-inculpatory statements or furthers a defendant's narrative.  See United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996), as amended (Oct. 21, 1996).

To determine whether the Rule of Completeness applies, the Court must determine whether the government's proffered statements create a "misunderstanding" or "distortion" about its contents.  Vallejos, 742 F.3d at 905.  To be supplemented using this rule, the statements must have created a "misleading impression" because the edited version "distorted the meaning of the statement."  Collicott, 92 F.3d at 983; see also United States v. Dorrell, 758 F.2d 427, 434–35 (9th Cir. 1985) (finding no Rule of Completeness violation where the edited version of a confession did not "distort[ ] the meaning of the statement") (internal quotation marks omitted).  Here there is no such distortion.

Where the government introduces statements by a party opponent pursuant to 801(d)(2), it is proper to exclude non-self-inculpatory statements offered by defendant under Rule 106.  Meraz v. United States, 663 F. App'x 580 (2017); Ortega, 203 F.3d at 682.

Here the government's recording clips do not create any distortion of facts.  Where the recording excerpt does not create such a distortion, "it is often perfectly proper to admit segments of prior testimony without including everything . . . ."  Collicott, 92 F.3d at 983 (internal quotation marks omitted).

12

### C.   Cross-Examination of Defendant

A defendant who testifies at trial waives his right against self-incrimination and subjects himself to cross-examination concerning all matters reasonably related to the subject matter of his testimony.  See, e.g., Ohler v. United States, 529 U.S. 753, 759 (2000) (citing McGautha v. California, 402 U.S. 183, 215 (1971), vacated in part on other grounds, Crampton v. Ohio, 408 U.S. 941 (1972) ("It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination")).  A defendant has no right to avoid cross-examination on matters that call into question her claim of innocence.  United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981).  The scope of a defendant's waiver is coextensive with the scope of relevant cross-examination.  United States v. Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992); United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985) ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or his waiver.  Rather, the inquiry is whether 'the government's questions are reasonably related' to the subjects covered by the defendant's testimony.").

In addition, a witness's – including defendnat's – false statements may "on cross-examination, . . . be inquired into if they are probative of the character for truthfulness or untruthfulness" of the witness. Fed. R. Evid. 608(b); United States v. Oriyomi, 449 F. App'x 681, 682 (9th Cir. 2011) ("Under [Rule 608(b)], prosecutors may cross-examine witnesses about documents so long as they do not enter the documents as extrinsic evidence.").

1    As set forth above, the government intends to introduce in its

2    case-in-chief evidence of defendant's statements to HSI Special

3    Agents.

4    If defendant take the stand, the government intends to impeach

5    defendant with these statements.  Because defendant's attempts at

6    false exculpatory statements are highly probative of his character

7    for truthfulness, they are proper grounds for cross-examination under

8    608(b).

9    **D.   Lay Testimony of Law Enforcement Agents**

10   Lay opinion testimony from law enforcement officers is allowable

11   under Federal Rule of Evidence 701.  Rule 701 permits a lay witness

12   to give opinion testimony as long as the opinion is "(a) rationally

13   based on the witness's perception; (b) helpful to clearly

14   understanding the witness's testimony or to determining a fact in

15   issue; and (c) not based on scientific, technical, or other

16   specialized knowledge within the scope of Rule 702."  Fed. R. Evid.

17   701.  As the Ninth Circuit has explained, law enforcement officers'

18   opinion testimony:

19       is a means of conveying to the jury what the witness has
         seen or heard . . . . Because it is sometimes difficult to
20       describe the mental or physical condition of a person, his
         character or reputation, the emotions manifest by his acts;
21       speed of a moving object or other things that arise in a
         day to day observation of lay witnesses; things that are of
22       common occurrence and observation, such as size, heights,
         odors, flavors, color, heat, and so on; witnesses may
23       relate their opinions or conclusions of what they observed.

24   United States v. Skeet, 665 F.2d 983, 985 (9th Cir. 1982).

25   The government anticipates calling law enforcement witnesses

26   during its case-in-chief who are expected to testify about their

27   observations during the execution of the search warrant, including

28   (but not limited to) which bedroom was defendant's, which side of the

14

bed was defendant's, and, if the Court allows, where cameras where hidden and in which rooms.  *United States v. Figueroa-Lopez,* 125 F.3d 1241, 1245-1246 (9th Cir. 1997) (explaining that lay witnesses may testify about the implication of an observation when the "observations are common enough and require such a limited amount of expertise, if any, that they can, indeed, be deemed lay witness opinion").  In addition, their testimony will also include the officers' opinions and impressions based on what they observed, including that the cameras were, in fact, hidden.  *United States v. Colwell*, 7 F. App'x 555, 557 (9th Cir. 2001) (citations omitted) ("A lay witness may testify based on visual observations of conduct and may make reasonable inferences regarding that conduct.").  Lay law enforcement witness testimony should be permitted in this case as it will be based on the respective law enforcement officers' perceptions, and helpful to the jury's understanding of the testimony and determination of facts at issue, namely, whether defendant recorded and saved files of the girls naked in the bathroom to produce child pornography.  See Fed. R. Evid. 701; see also United States v. Simas, 937 F.2d 459, 464 (9th Cir. 1991) (the opinion of a law enforcement officer, who testified as a lay witness, "that the defendant's activities match 'the usual criminal modus operandi,'" is helpful to the jury and permissible under Rule 701(b)); United States v. Tello-Carrillo, 516 F. App'x 643, 643 (9th Cir. 2013) ("Because [the officer's] testimony was based on his personal experience and was relevant to assessing the plausibility of [the defendant's] defense theory, it was admissible as lay testimony under Federal Rule of Evidence 701.").

1

       **E.    Audio and Video Recordings**

2           All duly admitted recorded conversations must be played in open

3    court.[2]  The foundation that must be laid for the introduction into

4    evidence of recorded conversations is a matter largely within the

5    discretion of the trial court.  There is no rigid set of foundational

6    requirements.  Rather, the Ninth Circuit has held that recordings are

7    sufficiently authenticated under Federal Rule of Evidence 901(a) if

8    sufficient proof has been introduced "so that a reasonable juror

9    could find in favor of authenticity or identification," which can be

10    done by "proving a connection between the evidence and the party

11    against whom the evidence is admitted" and can be done by both direct

12    and circumstantial evidence.  United States v. Matta-Ballesteros, 71

13    F.3d 754, 768 (9th Cir. 1995), modified by 98 F.3d 1100 (9th Cir.

14    1996).

15           Witnesses may testify competently as to the identification of a

16    voice on a recording.  Here, that witness will be Agent Scott.  A

17    witness's opinion testimony in this regard may be based upon his

18    having heard the voice on another occasion under circumstances

19    connecting it with the alleged speaker.  Fed. R. Evid. 901(b)(5);

20    United States v. Torres, 908 F.2d 1417, 1425 (9th Cir. 1990)

21    ("Testimony of voice recognition constitutes sufficient

22    authentication.").

23           Recorded conversations are competent evidence even when they are

24    partly inaudible, unless the unintelligible portions are so

25

26

27

28

     [2] Pursuant to the Court's previous comments, the government anticipates the child pornography will be shown only to the jurors, and not to the gallery, however.

1  unsubstantial as to render the recording as a whole untrustworthy.

2  United States v. Rrapi, 175 F.3d 742, 746 (9th Cir. 1999).

3      **F.   Business Records and Public Records**

4      The government will seek to introduce business records in the

5  form of certified copies of business records, which do not require

6  extrinsic evidence of authenticity as a condition precedent to

7  admissibility.  Fed. R. Evid. 902(11).  Such records are self-

8  authenticating, Fed. R. Evid. 902(11), and not hearsay, Fed. R. Evid.

9  803(6).  A duplicate is admissible to the same extent as an original

10 unless (1) a genuine question is raised as to the authenticity of the

11 original, or (2) under the circumstances, it would be unfair to admit

12 the duplicate instead of the original.  Fed. R. Evid. 1003; see also

13 United States v. Smith, 893 F.2d 1573, 1579 (9th Cir. 1990).

14      **G.   Reciprocal Discovery**

15     The government has complied with its discovery obligations under

16 Rule 16 of the Federal Rules of Criminal Procedure, and continues to

17 do so.  The government has likewise requested all reciprocal

18 discovery from defendants on multiple occasions in writing.  To date,

19 the government has received no discovery from defendant other than

20 the videos and photos from defendant's home security system on the

21 execution of the day of the search warrant; nor have defendants

22 voiced an objection to the government's requests.

23     Pursuant to Rule 16(b)(1)(A), a defendant should be precluded

24 from introducing any documents that were not produced, in violation

25 of defendant's reciprocal discovery obligations. Fed. R. Crim. P.

26 16(d)(2) ("the court may . . . prohibit the party from introducing

27 evidence not disclosed"); see also Taylor v. Illinois, 484 U.S. 400,

28 415 (1988) (defendant's failure to comply with, or object to,

government's discovery request before trial justified exclusion of unproduced evidence).

### H. Authentication, Identification, and Chain of Custody

Fed. R. Evid. 901(a) provides that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(a) only requires the government to make a prima facie showing of authenticity or identification "so that a reasonable juror could find in favor of authenticity or identification." United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991); United States v. Blackwood, 878 F.2d 1200, 1202 (9th Cir. 1989); United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985). Once the government meets this burden, "the credibility or probative orce of the evidence offered is, ultimately, an issue for the jury." Black, 767 F.2d at 1342.

The government will seek to photos and videos obtained from defendant's digital devices, including a computer and hard drive. In establishing chain of custody as to an item of physical evidence, the government is not required to call all persons who may have come into contact with the piece of evidence. Reyes v. United States, 383 F.2d 734 (9th Cir. 1967); Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960). Moreover, a presumption of regularity exists in the handling of exhibits by public officials. United States v. Kaiser, 660 F.2d 724, 733 (9th Cir. 1981); United States v. De Bright, 730 F.2d 1255, 1259 (9th Cir. 1984) (en banc); United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991). Gaps or defects in chain of custody go to the weight of the evidence rather than its

admissibility.  <u>United States v. Matta-Ballesteros</u>, 71 F.3d 754, 769-70 (9th Cir. 1995); <u>United States v. Robinson</u>, 967 F.2d 287, 292 (9th Cir. 1992).

### I.   Character Evidence

The Supreme Court has recognized that character evidence -- particularly cumulative character evidence -- has weak probative value and great potential to result in confusion of the issues and prejudice the jury.  <u>Michelson v. United States</u>, 335 U.S. 469, 480, 486 (1948).  The Court has thus given trial courts wide discretion to limit the presentation of character evidence.  <u>Id.</u> at 486.  Federal Rule of Evidence 403 also "gives the district court broad discretion in excluding cumulative evidence."  See <u>Hamling v. United States</u>, 418 U.S. 87, 127 (1974).

Rule 404(a) of the Federal Rules of Evidence governs the admissibility of character evidence.  Rule 404(a) permits a defendant to introduce evidence only of a "pertinent" trait of character.  A non-pertinent or misleading character trait is not admissible.  For instance, evidence of defendant's family status is similarly irrelevant to whether defendant is believable and law-abiding, and is thus inadmissible.  See <u>United States v. Santana-Camacho</u>, 931 F.2d 966, 967-68 (1st Cir. 1991) (testimony of defendant's daughter purportedly showing that defendant was a good family man was inadmissible character evidence inasmuch as such character traits were not pertinent to charged crime of illegally bringing aliens into the United States).

As a general rule, character witnesses called by defendant may not testify about specific acts demonstrating a particular trait or other information acquired only by personal observation and

19

interaction with the defendant; the witness must summarize the reputation or opinion of the defendant as known in the community. Fed. R. Evid. 405(a); <u>Michelson</u>, 335 U.S. at 477; <u>United States v. Hedgcorth</u>, 873 F.2d 1307, 1313 (9th Cir. 1989).  On cross-examination of a defendant's character witness, however, the government may inquire into specific instances of defendant's past conduct relevant to the character trait at issue.  Fed. R. Evid. 405(a).  In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past crimes, wrongful acts, and arrests.  <u>Michelson</u>, 335 U.S. at 479, 481 n.18.  The only prerequisites are that: (1) there be a good faith basis that the incidents inquired about occurred; and (2) the incidents are relevant to the character trait at issue.  <u>United States v. McCollom</u>, 664 F.2d 56, 58 (5th Cir. 1981); <u>United States v. Bright</u>, 588 F.2d 504, 512 (5th Cir. 1979).

**VI.  CONCLUSION**

The government respectfully requests leave to file such supplemental memoranda as might become necessary during trial.