1           UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

3               HONORABLE GEORGE WU

4        UNITED STATES DISTRICT JUDGE PRESIDING

5                    – – –

6
United States of America,        )
7                  PLAINTIFF,     )
                                  )
8   VS.                           )  NO. CR 21–338 GW
                                  )
9   Robert Quido Stella,          )
                  DEFENDANT,      )
10  _____)

11

12

13        REPORTER'S TRANSCRIPT OF PROCEEDINGS

14             JURY TRIAL – DAY THREE

15           LOS ANGELES, CALIFORNIA

16           THURSDAY, MAY 18, 2023

17

18

19     _____

20         KATIE E. THIBODEAUX, CSR 9858
           U.S. Official Court Reporter
21                Suite 4311
              350 West 1st Street
22           Los Angeles, CA  90012

23

24

25

```
1    APPEARANCES OF COUNSEL:

2

3    ON BEHALF OF THE PLAINTIFF, UNITED STATES OF AMERICA:

4                        U.S. DEPARTMENT OF JUSTICE
                         U.S. ATTORNEY'S OFFICE
5                        BY: CATHARINE RICHMOND, AUSA
                         -and- LYNDSI CAMILLE ALLSOP
6                        312 North Spring Street
                         Twelfth Floor
7                        Los Angeles, CA  90012

8

9    ON BEHALF OF THE DEFENDANT:

10                       FEDERAL PUBLIC DEFENDER'S OFFICE
                         BY: GABRIELA RIVERA, DFPD
11                       -and- ADITHYA MANI, DFPD
                         321 East 2ND Street
12                       Los Angeles, CA  90012-4202

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                          I N D E X

2

3      WITNESS NAME                              PAGE

4      (None.)

5

6      EXHIBIT                         I.D.      IN EVID.

7      (None.

8

9      CLOSING ARGUMENTS                         PAGE

10     By Ms. Richmond                           52

11     By Ms. Rivera                             66

12     By Ms. Richmond                           84

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        LOS ANGELES, CALIFORNIA; THURSDAY, MAY 18, 2023

 2                      9:44 A.M.

 3                      - - - - -

 4

 5

 6     (The following proceedings were held outside the

 7      presence of the jury:)

 8        THE COURT:  All right.  Let me call the matter of

 9   United States versus Stella.  Let me have appearances

10   starting with government counsel first.

11        MS. RICHMOND:  Good morning, your Honor.

12   Catherine Richmond on behalf of the United States.

13   Joining me at counsel table is my colleague Lindsay

14   Allsop and our case agent, HSI Special Agent Victoria

15   Scott.

16        THE COURT:  All right.  Good morning.  And for the

17   defense.

18        MS. RIVERA:  Good morning, your Honor.  Gabriella

19   Rivera and Adithya Mani on behalf of Mr. Robert Stella,

20   who is present and in custody.

21        THE COURT:  All right.  We are here on the

22   proposed jury instructions and also the motion for

23   judgment on acquittal.

24            Let me provide to the parties my initial

25   response to the written motion for judgment of acquittal.
```

1    It is one page.  I will let you read that.

2             (Brief pause in proceedings.)

3         THE COURT:  Let me ask counsel, have you had an

4    opportunity to read the Court's response to the written

5    motion for judgment of acquittal?

6         MS. RICHMOND:  Yes.

7         MS. RIVERA:  Yes, Your Honor.

8         THE COURT:  Somebody want to argue something?

9         MS. RIVERA:  It is the defense motion so I am

10   happy to argue it, Your Honor.  Thank you for providing

11   the tentative.

12            A couple of things.  I guess I will start with

13   the Court's discussion of Hillie, the DC Circuit case.

14   As we addressed in our motion for judgment of acquittal,

15   those factors are not mandatory.  It is actually

16   extremely confusing.  I think the jury instruction --

17        THE COURT:  Let me stop you.  However, the Dost

18   factors have been approved by the Ninth Circuit in the

19   Overton case.  And so and the Hillie case specifically

20   rejects it.  So that is a problem.  Not an insurmountable

21   problem, necessarily.

22            This is kind of the way I look at it at this

23   point, just to be blunt.  I think the Hillie case is the

24   most like case to this one, but it comes from the DC

25   Circuit, and the DC Circuit doesn't approve the use of

1    the Dost factors, whereas the Ninth Circuit does approve

2    the use of the Dost factors so long as it is indicated

3    that it is not controlling; in other words, the factors

4    are just guidelines and the jury can consider other

5    factors as well.

6           So that is the situation.  And Hillie takes, I

7    think, the position that in order to qualify for being a

8    lascivious exhibition that the language in that decision

9    states, quote:

10         "The minor displayed his or her anus, genitalia or

11          pubic area in a manner connoting that the minor or

12          any person or thing appearing with the minor in

13          the image exhibits sexual desire or an inclination

14          to engage in any kind of sexual activity."

15         So that is the requirement in the DC Circuit.

16   And frankly, I think if this case were tried in the DC

17   Circuit, probably it would not qualify as lascivious

18   exhibition, although I will allow the government to argue

19   that point if it wants to.  But we are not in the DC

20   Circuit.

21         So the question is whether or not this Court,

22   whether or not I will say that, yes, I will adopt the

23   Hillie approach.  But, you know, I understand that if I

24   were to do that, I would have to -- I wouldn't obviously

25   adopt the approach that deals with the Dost factors,

1  saying that you can't utilize the Dost factors, but what

2  I think it would mean is that under the analysis of the

3  DC Circuit, they said given the line of cases in this

4  entire area, that is the reason why they are deeming

5  lascivious exhibition to mean what it says it means.

6           That is the interpretation of the DC Circuit.

7           So it is at this point in time really a

8  question of law.  And so that is the way I sort of view

9  it.  And there really isn't any Ninth Circuit case that

10  really discusses the facts as closely to this present

11  case as Hillie.  In other words, Hillie I think is the

12  closest case we get.

13      MS. RICHMOND:  Your Honor, if I may, the

14  government cited in its brief United States versus Henry,

15  which is at 798 FX, federal appendix 107, and it is a

16  2020 case.  And in that case a man had set up hidden

17  cameras to record his children's babysitter.  And that

18  case says that the government presented evidence that

19  Henry set up hidden cameras in their bathroom and bedroom

20  shortly before their 14-year-old babysitter arrived and

21  that he used those cameras to produce videos depicting

22  the minor undressing and showering.  The Ninth Circuit

23  upheld that case as a lascivious exhibition production

24  case.

25      MS. RIVERA:  Your Honor, may I address that?

1          I think there are a couple of cases cited in

2    the government's footnotes that kind of elide some of the

3    critical factors that led to the Court's finding that

4    there was a lascivious exhibition and that the Dost

5    factors were properly applied in that.

6          With respect to Henry, I will start there.

7    First of all, I believe that was a conspiracy case.  And

8    with respect to the Dost factors I think it is actually

9    important that the Court found that the defendant and his

10   wife had actually been actively involved in sort of

11   setting up this -- setting up how the images would be

12   captured, including by encouraging the minor to try on

13   lingerie and pose in the lingerie.  So that is one of the

14   Dost factors.  Is the attire sexually suggestive.  What

15   is the posing like.

16          And I think those also go to the sixth Dost

17   factor with respect to whether the image was designed to

18   elicit a sexual response.

19          With regards to Johnson, which is not a Ninth

20   Circuit case, it is an Eighth Circuit case regarding a

21   weight lifting or wrestling coach.  That I think is also

22   pretty distinguishable because there again there was very

23   active involvement by the defendant.

24          The defendant there moved the scale where

25   these girls on the wrestling team would be weighed --

1       THE COURT:  Let me stop you.  The Overton case

2   deals with the situation.  In other words, there is

3   actual posing of the minor that can be considered

4   lascivious.

5            That is the reason in my footnote my question

6   for the Hillie Court would be is if -- in other words,

7   they basically found that there was no lascivious

8   exhibition because of the fact that it was just the

9   recording without anything else; just the nudity and the

10  grooming but nothing else.

11           And so the question really is is that in the

12  Overton matter, however, there was actual posing of the

13  minor on the bed and posing suggested by the defendant,

14  which is not what we have here.

15       MS. RIVERA:  Correct.  Your Honor?

16       THE COURT:  Yes.

17       MS. RIVERA:  I was going to ask you if I could

18  address the Court's first footnote regarding Hillie and

19  how it might be --

20       THE COURT:  Well, that is the question.

21       MS. RIVERA:  Well, sure.  I think that the answer

22  is of course that it would have to be the same definition

23  because it is all about what is the statutory definition

24  of section 2256.

25       THE COURT:  That is the question that I don't know

```
 1    if actually the circuit court would reach the same
 2    conclusion.  Although obviously we don't have here --
 3    there is no evidence that the defendant here placed any
 4    of these images on the Internet for other people to see.
 5    Everybody agrees with that, right?
 6         MS. RICHMOND:  There is no evidence of that.
 7         THE COURT:  So it is not that situation.  So my
 8    question was if in Hillie -- had the circuit had the
 9    situation where the defendant there had placed those
10    images on, for example, the dark web and sold them, would
11    the DC circuit have said with the exact same images that
12    there was no lascivious exhibition.
13             I don't know whether or not the circuit would
14    have said any -- technically if they were to be
15    consistent they would say yes, even though the defendant
16    there had placed those images on the web for what you
17    call purposes, that it still would not be lascivious
18    exhibition.
19             The problem with that, however, is that there
20    are other cases that say the manner and what the
21    defendant's intentions at the time were also come into
22    play.
23             You know, this is an area which is kind of
24    like sort of murky.  But in the end, I would say that I
25    probably would not adopt the Hillie decision at this
```

KATIE THIBODEAUX, CSR, RPR, CRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    point in time because it would require further briefing.

2    And this is an issue of law.

3            But then the question is the defendant is

4    proposing that I incorporate the language from Hillie

5    into -- I guess incorporate in some way as part of the

6    Dost factors.

7            I don't have a necessarily strong opinion

8    about that, but let me ask the defense counsel this.

9    Wouldn't you basically more or less waive your argument

10   in this regard if you allow that language to be included

11   as part of the Dost factors?

12        MS. RIVERA:  I am not sure I follow the question,

13   Your Honor.  Waive which argument?

14        THE COURT:  In other words, if we include the

15   language that you are suggesting, which is take some

16   language from the Hillie case and put it into our jury

17   instructions here in this case, and then you -- in other

18   words, in that situation, even though I have not adopted

19   the Hillie opinion and basically dismissed the counts,

20   which is what I think Hillie would require, wouldn't

21   that -- but if I instead incorporate the language and

22   give it to the jury to consider, wouldn't that more or

23   less indicate that the jury has considered those factors

24   in that particular way, and nevertheless if it finds the

25   defendant guilty, then wouldn't you have waived the

```
 1  argument that you are making at this point?

 2        MS. RIVERA:  So were the jury to --

 3        THE COURT:  So in other words, if I include the

 4  language you want, which is the language from Hillie, and

 5  I include it as part of the jury instructions, and if the

 6  jury comes back with a guilty verdict, wouldn't the

 7  appellate court say, well, the jury was allowed to

 8  consider that aspect as to whether or not it constitutes

 9  lasciviousness.

10        MS. RIVERA:  Well, I think that is correct.  I

11  guess I am not sure as I stand here, Your Honor, how that

12  would be reviewed by the Court.

13        THE COURT:  I won't require you to make a decision

14  now because the next thing we are going to do after I

15  allow you to look at the proposed jury instructions is to

16  consider whether or not you want to add that in.

17           I am not taking a position one way or the

18  other.  I think if I simply just reject the defendant's

19  argument that this case should be dismissed under Hillie

20  at this point in time, but without prejudice, and the

21  jury comes back with a guilty verdict, I would allow you

22  to brief the issue.

23           And then if at that latter date I agree that

24  Hillie actually should control this particular situation,

25  then I will make the decision.  And I think it is for all
```

```
 1    intents and purposes an issue of law at that point.  But
 2    then we will have to see.
 3              MS. RIVERA:  Your Honor, may I?
 4              THE COURT:  It will also be a basis upon which
 5    even if I make that decision, the government could appeal
 6    it and then it would go to the circuit and the circuit
 7    could decide the issue, which ultimately actually it
 8    should decide permanently.
 9              MS. RIVERA:  May I address the application of the
10    six Dost factors, Your Honor?
11              THE COURT:  In a moment, but I would prefer you to
12    discuss it in the context of jury instructions, not as a
13    discussion as a motion for acquittal because, again, I
14    don't think it comes into play for the motion for
15    acquittal except to the extent I have discussed it
16    already.
17              MS. RIVERA:  Okay.  So the Court has considered
18    the six Dost factors and finds at this point it is denied
19    without prejudice?
20              THE COURT:  What I am going to do is I have
21    incorporated the Dost factor language as suggested by the
22    government.  And what I am going to do at this point,
23    what I am going to do now is to give each side the
24    Court's initial draft of the final set of jury
25    instructions for you to read.
```

1    What I have done is I have included -- you

2    provided to the Court from docket 166 a list of the jury

3    instructions that each side wanted, including ones that

4    are disputed.

5    If I have checked off next to the

6    instructions, that means I gave it in the proposed draft

7    of the final set of jury instructions.  If I crossed it

8    out, that means I didn't give it.

9    As to some I have some comments and a couple I

10   have some question marks.

11   Also, the mere fact that I include it does not

12   necessarily mean that I have included exactly the same

13   language that the parties are proposing, so you have to

14   read them with care because sometimes I adjusted the

15   language because I thought that something was

16   inapplicable or something of that sort.  But that is the

17   roadmap for what I did.

18   So let me give these to both sides.  I will

19   give you guys about -- it shouldn't take more than half

20   an hour to read it.  Come back in half an hour and we can

21   also discuss it then.  We can also, for example, discuss

22   the Dost factor at that point.

23   Okay?

24   Also, I have received the defendant's filing

25   last night, which was to incorporate certain language in

KATIE THIBODEAUX, CSR, RPR, CRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    the jury instructions, but again, those will concern the

2    Dost factors, and so we will discuss it when we discuss

3    the jury instructions as a whole.

4            All right.  Thank you.  Have a nice half hour.

5        (Recess from 10:30 a.m. to 11:01 a.m.)

6        (The following proceedings were held outside the

7         presence of the jury:)

8        THE COURT:  All right.  Let me ask counsel, did

9    you have an opportunity to look over the initial draft of

10   the proposed final set of jury instructions?

11       MS. ALLSOP:  We did, Your Honor.

12       THE COURT:  The defense as well?

13       MS. RIVERA:  Yes, Your Honor.

14       THE COURT:  Before we start on those, what I will

15   do is I will go page by page.  I think that is the

16   easiest way to do it.  But before I do that, just one

17   other comment about the Hillie case.

18            At least in this circuit, the Ninth Circuit

19   has said that the term lascivious exhibition is not

20   unconstitutionally vague.  And that is cases such as

21   United States versus Adams, 343 F.3d 1024 at pages --

22   sorry, 1035 through 36.  It is a 2003 case.  And also

23   cites another case, United States versus Wiegand,

24   W-I-E-G-A-N-D, 812 F.2nd at 1243, 34.

25            But the Court would note that there is an

1    interesting discussion because of the fact that the

2    districts -- sorry, the DC Circuit in the Hillie case,

3    one of the reasons why it reached its definition as it

4    did is because it reviewed the supreme court cases and

5    concluded that there had to be a higher definition of

6    what constitutes lascivious exhibition in order to void

7    unconstitutional vagueness.

8            And that was the reason why they concluded

9    that the government was required to prove that the

10   captured video had involved overt sexual activity, which

11   probably is not the Ninth Circuit definition, but I just

12   point that out that there is this kind of like struggle

13   in that regard.

14           Finally, insofar as the Hillie case is

15   concerned, the Hillie case, obviously it is a fed ops

16   case.  It is not precedential.  And the discussion in

17   that case really was not, for lack of a better word,

18   fulsome.  It just said, okay, this is what it is.

19           Also the charge there was not per se the

20   actual production of child pornography.  It was the

21   conspiracy to produce.  And the Court there said, well,

22   obviously they set this thing up.  Whether or not they

23   actually accomplished child pornography doesn't make any

24   difference because they conspired to it and they took

25   steps to actually do it.  Whether or not they actually

1  did it, the Court didn't need to determine that because

2  he was convicted of a conspiracy, not the actual

3  accomplishing of child pornography.

4          I just throw that out.

5          All right.  That being said, let's go to the

6  proposed final set of jury instructions.  I am just going

7  to go page by page.

8          Is there any issue in regards to page 1?

9      MS. ALLSOP:  Nothing from the government, Your

10  Honor.

11      THE COURT:  Okay.

12      MS. RIVERA:  Nothing from the defendant, Your

13  Honor.

14      THE COURT:  I want to make sure the initials are

15  correct.  In other words, MS is count 1, MK is count 2

16  and NE is count 3.

17      MS. ALLSOP:  Yes, that's correct, Your Honor.

18      THE COURT:  And the dates are correct also, just

19  to make sure.  Because one thing I did -- I will note now

20  for the record actually in the preliminary set of jury

21  instructions, I took the statute number from you guys and

22  actually you had used an incorrect citation in some

23  places and the correct citation in other places.

24          The one I took for the preliminary was the

25  incorrect one because I said it was maybe -- actually it

```
 1    may be even wrong here.  It is 18 U.S.C., Section 2251 or

 2    22 -- the statute.

 3           MS. ALLSOP:  It is 2251AE.

 4           THE COURT:  So I was wrong here.  That is why you

 5    guys have to catch typos.  I am really bad at this.  So

 6    it should be 2251; right?  That is the violation itself.

 7    And 2256 is the definitional section.  So it is 2251.

 8               Also you guys put down 2251A, E, as if they

 9    were two sections.  It's basically the same statute.

10    While the subsections are different, E only talks about

11    the penalties, but the A is actually the crime.  So I

12    left out E.

13               I presume there is no objection.

14           MS. ALLSOP:  No objection from the government,

15    Your Honor.

16           THE COURT:  Other than that, there are no problems

17    with page 1?

18           MS. ALLSOP:  No, Your Honor.

19           THE COURT:  Okay, great.

20               Page 2.  Any problems?

21           MS. ALLSOP:  No.

22           MS. RICHMOND:  No, Your Honor.

23               Nothing from the government.  No objection,

24    Your Honor.

25           MS. RIVERA:  No, Your Honor.
```

1          THE COURT:  All right.  Page 3.

2          MS. RIVERA:  No objection from the defense.

3          MS. ALLSOP:  No objection from the government,

4     Your Honor.

5          THE COURT:  This is too easy.  Basically because I

6     spent so much time on it last night it is turning out so

7     easy this morning.  Is that what you are saying?

8               Page 4.

9          MS. RIVERA:  The defense has an objection, Your

10    Honor.

11         THE COURT:  Insofar as the instructions as to the

12    crimes is concerned or above that?

13         MS. RIVERA:  As to the crimes.

14         THE COURT:  All right.  Yes.

15         MS. RIVERA:  A couple of things.  First of all,

16    just with respect to the model instruction regarding the

17    production count, and I flagged this for government

18    counsel previously, there is a missing element here with

19    respect to the second prong.

20              The defendant employed use, persuaded or

21    coreced the person -- the second prong.  The defendant

22    employed, used, persuaded or coerced the person named in

23    the count to take part in sexually explicit conduct.

24              The model rule -- this is in the defense

25    proposed instruction No. 45 which was filed yesterday.

1    The model rule adds "for the purpose of producing a

2    visual depiction of such conduct."  That wasn't included

3    in docket No. 166, and I think it is a pretty essentially

4    part of this instruction.

5         THE COURT:  Okay.  Just a part.

6         MS. ALLSOP:  The government has no objection to

7    that modification to align with the model jury

8    instructions.

9         THE COURT:  Okay.  I just want to pull up the

10   model jury instruction to make sure I get the language

11   correct.

12             All right.  I will add that language in.

13             Anything else on page 4?

14        MS. RIVERA:  From the defense, yes, Your Honor.

15             To the extent that the definition of

16   lascivious exhibition -- to the extent that that

17   incorporates the Dost factors, I just want to note again

18   our objection to the Dost factors being applied here.

19             And then without waiving that objection we are

20   still requesting a clarification sort of limiting the

21   scope or the application of the six Dost factors so that

22   the jury doesn't over-rely on it in this already kind of

23   frankly pretty difficult to follow instruction.

24        THE COURT:  All right.  But I think you are

25   talking about stuff on page 5 now rather than on page 4.

1          MS. RIVERA:  It begins at the bottom of page 4.

2     And so that is why I am bringing it up now, but yes, the

3     majority of it is on page 5.

4          THE COURT:  Let me ask the government, anything

5     the government has on page 4?

6          MS. ALLSOP:  The government does not have any

7     issues on page 4.  And when Your Honor would like, I can

8     respond to Ms. Rivera's comments.

9          THE COURT:  Before we do that, let me ask the

10    defense counsel which of those six factors are you

11    thinking that shouldn't be there.

12         MS. RIVERA:  Your Honor, what I am proposing or

13    what we are proposing is the alternative No. 2 that was

14    filed with the court yesterday.  So I am looking at

15    docket No. 194.

16              The factor that I am concerned about here is

17    the sixth factor, which we have discussed somewhat, and

18    it is about -- you could paraphrase it as the subjective

19    intent of the image capture.

20              It reads "whether the visual depiction is

21    intended or designed to elicit a sexual response in the

22    viewer."  And the concern, and several circuit courts

23    have noted this concern, is it sort of threatens to

24    swallow the rest of the test.

25              So what we have proposed is a pretty modest

1    clarification.  It's one sentence only.  It reads:

2         "The sixth factor, however, may not be the only

3          consideration in finding lascivious exhibition and

4          may be considered only to the extent that it is

5          relevant to the analysis of the five other factors

6          and the objective elements of the images."

7         THE COURT:  Wait.

8         MS. RIVERA:  I will stop there.

9         THE COURT:  Let me have response from the

10   government.  What is the government's response?

11        MS. ALLSOP:  So two points.  As an initial matter,

12   I believe -- or the government submits that the defense

13   is sort of wrongly packaging this issue.  The question

14   here for the jury to determine is not whether or not the

15   image itself is lascivious, in that whether or not the

16   child is posing in a certain way, but rather the

17   exhibition of the images such so.

18         And this is what the Ninth Circuit affirmed in

19   Wiegand 812 F.2d 1239, Ninth Circuit, 1987.  And in that

20   case the Ninth Circuit said, quote:

21        "Lasciviousness is not a characteristic of the

22          child photograph but of the exhibition which the

23          photographer sets up for an audience that consists

24          of himself or like-minded pedophiles."

25         And so here the defendant secretly recorded

1    these minors, whose breasts, buttocks and genitalia were

2    showing.  And it is plain that the pictures were an

3    exhibition and that the exhibition -- that it was a

4    lascivious exhibition because the photographer here, the

5    defendant, arrayed these images to suit his particular

6    lust and his prurient sexual interest in children.

7            Next as it relates to the defense argument

8    that there should be some modified language to curb any

9    such over-reliance on any one Dost factor, the Ninth

10   Circuit has actually been pretty clear about this itself.

11           First, the government submits that this is

12   covered in its proposed instruction where it says that

13   jurors can either consider some of these factors or none

14   of them at all or all of them, and that it is up to the

15   juror to determine the weight that each of these factors

16   should have.

17           And so the government submits that this is a

18   factual issue and it is up to the jurors to determine

19   whether or not they want to give some factors more weight

20   than others.

21           And this proposition was upheld in United

22   States versus Arvin, which was a production of child

23   pornography case where the Ninth Circuit affirmed the

24   district court's jury instructions because the district

25   court had included language as follows, quote, "The

```
 1   weight or lack of weight which you give to any one of
 2   these factors is for you to decide."
 3           So the Ninth Circuit has affirmed that as long
 4   as jurors are given the proposition that it is for them
 5   to determine the weight of each factor, this is
 6   sufficient.
 7        THE COURT:  I will hear a response from the
 8   defense.
 9        MS. RIVERA:  Thank you, Your Honor.
10        THE COURT:  No.  Just one second.
11        MS. RIVERA:  Sorry.
12        THE COURT:  Let me ask government counsel, what is
13   the page cite -- internal cite for the Wiegand?
14        MS. ALLSOP:  Wiegand, it is 1244.  Would Your
15   Honor like the quotation again?
16        THE COURT:  No, I am going to pull it up.
17           All right.  Let me hear from the defense.
18           What is your response?
19        MS. RIVERA:  Thank you, Your Honor.  Well, I think
20   government counsel was initially responding to an
21   argument about Hillie, but my understanding is that we
22   have moved on from that and we are talking about --
23        THE COURT:  No.  She was responding to Dost
24   factors.  In other words, she was citing to the Wiegand
25   case as to the sixth factor of Wiegand basically saying
```

1    that -- because Wiegand is indicating that engaged in

2    sexual -- I am quoting now from the decision.

3           Quote, "Engaged in sexually explicit conduct"

4    within the meaning of 18 U.S.C., Section 2251 and 2252

5    ... is a picture of a child's sex organs displayed

6    lasciviously; that is, so presented by the photographer

7    as to arouse or satisfy the sexual cravings of a voyeur.

8        MS. RIVERA:  I was responding to the argument made

9    before that.  But with respect to Wiegand, there is no

10   Ninth Circuit Dost test.  Wiegand I think is the

11   companion case for the Dost test, and that is why Dost

12   has been affirmed sub nom.

13       THE COURT:  Dost was affirmed on appeal.  So it

14   was not sub nom.  It was affirmed because the defendant

15   took it to the Ninth Circuit and the Ninth Circuit

16   affirmed.

17       MS. RIVERA:  So with respect to the sixth Dost

18   factor, Your Honor, I understand this is the model or

19   this is the test that is from Dost that has been applied

20   in different cases.  And the Ninth Circuit has said that

21   in particular cases it is the appropriate instruction to

22   give the jury.

23           What I am pointing out is that it is also kind

24   of confusing.  If we look at Line 19, all six factors

25   need not be present.  Following that it says, "The list

1    of factors isn't mandatory, exclusive or exhaustive."

2            And I think it is a pretty difficult

3    judicially created test to give to a bunch of laypersons.

4    All that we are suggesting is that there be some

5    clarification so that the jury doesn't receive the

6    impression, which I think would be legally incorrect,

7    that they can rely only on the sixth factor and decide,

8    hey, do we think this guy had a sexual interest in

9    children.  If so, it doesn't matter what the focal point

10   is, what the setting is, whether the minor is even fully,

11   partially clothed or nude.

12           I think there does need to be some limiting

13   factor.  And that is why in the proposed jury instruction

14   we cited to several appellate cases, including one from

15   the Second Circuit, one from the Third Circuit and one

16   from the First Circuit and another from the Eighth, where

17   they say, you know, we caution courts in the routine

18   application of the Dost factors.  And we have a lot of

19   concerns about the sixth factor in particular.

20           And so all we are requesting, Your Honor, is

21   not to -- well, preserving our objections with respect to

22   the Dost-based instructions, we are just saying should

23   the Court be inclined to use the Dost factors as part of

24   the instruction.

25           I think it would be appropriate to offer the

1    jury a little additional guidance about the sixth factor.

2          THE COURT:  All right.

3          MS. ALLSOP:  Your Honor, may I just add one extra

4    point.  So the government has no intention of wholly

5    relying on the six factors.  We are arguing that several

6    factors are present.  But again, issues of weight is

7    something that should be going to the jury.  And the

8    government submits that there is nothing confusing about

9    telling laypeople who have seen the evidence in this case

10   that they can either weigh some, all or none of these

11   factors.

12          And if the Court would permit, the government

13   would like to draw the Court's attention to United States

14   versus Arvin 900 F.2d, 1385-1391, Ninth Circuit, 1990.

15          If the Court may permit me to read the

16   following passage.

17          THE COURT:  Give me the cite again.

18          MS. ALLSOP:  United States versus Arvin, 900 F.2d,

19   1385-1391, Ninth Circuit, 1990.  And the Ninth Circuit in

20   that decision states the following:

21          "The judge in this case gave a long list of

22          specific factors that had been present in other

23          child pornography cases to guide the jurors'

24          viewing.  Each one could be relevant, but on the

25          other hand might not be relevant or significant in

1          this particular case.

2          "The judge guarded against the jury's attaching

3          undue significance to any particular factor by

4          instructing that 'the weight or lack of weight

5          which you give to any one of these factors is for

6          you to decide.'

7          "Arvin would have us believe that this instruction

8          allowed the jury to find lasciviousness from the

9          mere presence of one factor only -- for example,

10         nudity or suggested captions on those pictures."

11              And that was the end of the passage.  And the

12     government submits that the defense is making the same

13     argument here that the jury might inappropriately attach

14     to the sixth factor.

15              However, the Ninth Circuit has found that when

16     jurors are cautioned that the weight or lack of weight

17     which they give to one of those factors is for them to

18     decide, this is sufficient to --

19          THE COURT:  I think the defense is asking for

20     something slightly different.  They are basically asking

21     for an instruction that says in essence that the presence

22     of the sixth factor by itself would not be necessarily

23     sufficient.

24          MS. ALLSOP:  Correct, and what we are saying, Your

25     Honor, is that, number one, runs contrary to Dost.  That

KATIE THIBODEAUX, CSR, RPR, CRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    is not in the Dost language, but also that just advising

2    the jury that the weight or lack of weight that they give

3    certain factors is enough is for them to decide is

4    sufficient.

5              And that is what the court in Arvine says,

6    that as long as the district court is advising jurors

7    that they can give as much or as little weight to

8    whatever factors as they so wish, that is sufficient to

9    cure against any juries attaching undue significance to

10   any particular factor.  And the Ninth Circuit says that

11   quite explicitly in the passage that I just read.

12        THE COURT:  All right.  From the defense.

13        MS. RIVERA:  I will just respond briefly, Your

14   Honor.  I am not as familiar with the facts of Arvin, so

15   I don't know if there were other factors.

16              With respect to the images that informed the

17   Court's decision there -- and I think what is important

18   is that it sounds like the holding is, you know, if these

19   are the factors you are giving the jury, maybe that is

20   sufficient.

21              And what we are seeing here in this case is it

22   is not sufficient in this particular case.  The Ninth

23   Circuit did not say in Arvin you can't go beyond this.

24   You can't offer the jury any additional information about

25   how to apply this again this, frankly, very confusing

```
 1    test.
 2            That was not the holding of Arvin.  That is
 3    not the holding of any case I have ever seen with respect
 4    to the Dost factors.
 5            And otherwise I think I have made our argument
 6    about why I think particularly in this case, particularly
 7    considering the images, the jury I think should be
 8    instructed with a little more clarity regarding the
 9    application of the sixth factor.
10        THE COURT:  I will think about it for a little bit
11    more.
12            Anything else in regards to page 5 of the jury
13    instruction?
14        MS. RIVERA:  Nothing from the defense, Your Honor.
15        MS. ALLSOP:  Nothing from the government, Your
16    Honor.
17        THE COURT:  Page 6?
18        MS. RIVERA:  No objection from the defense.
19        THE COURT:  All right.  Anything else from the
20    government on page 6?
21        MS. ALLSOP:  No, Your Honor.
22        THE COURT:  Let me ask the counsel something.
23    Now, if you look at the original set of jury
24    instructions -- a couple of things.  What you have
25    proposed.  I did not include some of the instructions
```

KATIE THIBODEAUX, CSR, RPR, CRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    because I thought, for example, your proposed No. 23 and

2    24, I thought those were duplicative of the ones that you

3    wanted the Court to give the proposed No. 17 and 19.

4           So I didn't give 23 and 24 because they are

5    covered by 17 and 19.

6           I presume nobody has a problem with that.

7        MS. RIVERA:  No objection from the defense.

8        MS. ALLSOP:  Just to clarify what Your Honor is

9    saying is because you already gave those instructions as

10   preliminary instructions?

11       THE COURT:  No, I gave them in here.  In other

12   words, they are included in this set of jury

13   instructions.  In other words, I put 17 and 19 in this

14   final set of jury instructions.  I didn't include 23 and

15   24 because those are duplicative of 17 and 19.

16       MS. ALLSOP:  Yes, Your Honor.  And the reason for

17   the duplicates is just that some of them are preliminary

18   instructions and then others are instructions at the end

19   of the trial.

20       THE COURT:  I understand that but I don't think I

21   will give them both.

22       MS. ALLSOP:  Of course.  Understood, Your Honor.

23       THE COURT:  I like 17 and 19 better than I like 23

24   and 24 so I put 17 and 19, but it covers the same thing.

25           Okay.  Then, I didn't include 25 or 26 because

1    I didn't see any -- I didn't hear any evidence about

2    character of the victim or impeachment evidence, so I

3    didn't include those.

4         MS. ALLSOP:  The government has no objections to

5    that.

6         MS. RIVERA:  No objection.

7         THE COURT:  And then insofar as charts and

8    summaries are concerned, I wasn't quite sure as to how

9    the parties wanted me to do any instruction in regards to

10   charts and summaries.

11            There wasn't a chart per se.  There was a

12   summary, but it turned out not to be a summary.  The

13   exhibit itself is just an entry so it is not a chart or

14   summary.  So I thought it is admitted, but I don't want

15   to say that there was a chart or summary because it is

16   really not.  It is just an excerpt of a larger item.

17            But it came in so I didn't think I needed to

18   give either of these two types of instructions.

19        MS. ALLSOP:  The government agrees with Your

20   Honor.

21        MS. RIVERA:  No objection, Your Honor.

22        THE COURT:  Also the parties at one point in time

23   asked for an instruction as to knowingly and also as to

24   possession, but I didn't see any situation where those

25   would be coming in because I didn't see the knowingly

1    being raised insofar as any of the elements of the count.

2    Am I wrong on that?

3          MS. ALLSOP:  You are not wrong, Your Honor.

4          MS. RIVERA:  No, Your Honor.

5          THE COURT:  And the same thing with possession as

6    well; is that correct?

7          MS. ALLSOP:  You are not wrong, Your Honor.  No,

8    Your Honor.

9          THE COURT:  I love to hear that.  You can say that

10    all the time.  So I guess that is it.  I will come back

11    out in about 15 minutes and let you know if I am going to

12    change the instruction regarding the Dost factor.

13          Although let me just take one quick look.  I

14    thought that -- the problem is that I know that the Ninth

15    Circuit has referenced the Dost factors specifically.  I

16    can't remember if it was either Overton --

17          MS. RIVERA:  Overton cites the Dost factors.

18          THE COURT:  So they cite to the Overton factors,

19    and so they don't say anything other than it is not

20    supposed to be given as a mandatory type of instruction.

21    Just say these are the guidelines that you are to

22    consider.

23          And so it seems that that is what is being

24    proposed by the government already now.  And so I will

25    take a look at those other circuit decisions, but my

1    initial reaction is probably not, but I will see if

2    reading those decisions changes my mind.

3                So I will come back in 15 minutes.

4         MS. RIVERA:  Thank you.

5         MS. ALLSOP:  Thank you, Your Honor.

6         (Recess from 11:36 a.m. to 11:57 a.m.)

7         (The following proceedings were held outside the

8          presence of the jury:)

9         THE COURT:  Let me ask defense counsel.  I have

10   looked over those cases.  Let me ask, I didn't see

11   anything in any of those cases that talked about an

12   actual language for a jury instruction.  They said some

13   cautionary things but they didn't suggest anything.

14                And so that is one problem.  Also, some of

15   those cases, I don't know if they are consistent with the

16   Ninth Circuit viewpoint because, as government counsel

17   pointed out, she pointed out the language from the

18   Wiegand case talking about the exhibition of the image.

19                And so, for example, the Second Circuit, the

20   Spore decision, I don't know whether or not the language

21   in that case would be consistent with the Ninth Circuit's

22   position.

23                However, I do feel that perhaps there might be

24   some element because of placing, I guess -- well, this is

25   I think one of the underlying issues.  Let me ask the

1    government this question.

2          The sixth factor talks about whether the

3    visual depiction is intended or designed to elicit a

4    sexual response in the viewer.

5          So it is not the person who necessarily

6    creates the depiction.  It is the person who creates --

7    in other words, produces the pornography, what their

8    intent is vis-a-vis a viewer.

9          If the target audience is actually the

10   producer himself or herself, well, then that is sort of

11   clear, but if it is not for the creator of the item, then

12   on what basis are we supposed to draw some guidance from

13   the sixth factor?

14       MS. ALLSOP:  So first, Your Honor, I would draw

15   your attention again to the Wiegand case, where it sort

16   of tends to frame the viewer as, in this case, the

17   defendant or like-minded pedophiles.

18          So I believe in this case where the creator

19   had a prurient sexual interest in children, and it is the

20   creator, a pedophile and other like-minded pedophiles.

21       THE COURT:  Let me ask you this.  If it is just a

22   photograph of a naked 13-year-old, that is it, just a

23   naked picture of a 13-year-old, how would that be treated

24   under the Dost factors?

25       MS. RICHMOND:  Your Honor, you have to look to

1    corroborative indicia of why the picture was taken and

2    who the picture was taken for, so to answer the Court's

3    previous question, we have had cases where, for example,

4    there is a parent who is not a pedophile.  She is paid to

5    produce lascivious images of her children and she sends

6    them to someone who is a pedophile who will have a sexual

7    response elicited, immune from looking at the lascivious

8    images.

9          So even though the photographer herself

10   doesn't have a prurient sexual interest in children, she

11   is taking them for the purpose of eliciting a sexual

12   response in the viewier.

13         Now, to the Court's point, a lot of times the

14   producer and the viewer are the same person.  And in this

15   case that is what we have.  The producer and the viewer

16   are the same person.  He produced them so he could view

17   them.

18   THE COURT:  Let me ask you -- in light of that

19   explanation, let me ask the defense counsel, why would

20   this sixth element be a problem if the government is

21   arguing that the viewer here is the defendant, and

22   therefore it is whether or not the picture was intended

23   or designed to elicit a sexual response from the creator

24   of the item, which in this case is the defendant.  Why

25   would there be a problem of a sixth factor?

```
 1          MS. RIVERA:  I think the sixth factor is a problem
 2   in any application, frankly, for the reasons that I have
 3   already laid out, Your Honor.
 4          I think -- well, let me back up a bit.  The
 5   way that the Ninth Circuit has framed it, at least to the
 6   extent that government counsel has framed it, the
 7   question is whether it is designed to elicit a sexual
 8   response in the viewer or like-minded pedophiles.
 9          It already I think presupposes that the
10   defendant is a pedophile.  I think there is a lot of
11   problems with that language.  But in any event here,
12   where the manufacturer or producer and the defendant are
13   the same person, I still think there are issues with
14   respect to -- I mean, we don't need to have any of the
15   Dost factors, but the sixth one is sufficient on its own
16   to find a lascivious exhibition and to, you know, find
17   somebody guilty of a crime that carries a 15-year
18   mandatory minimum sentence.  I think that's a lot of what
19   underlies --
20          THE COURT:  You are attempting to argue something
21   from the punishment -- you're arguing something like that
22   would be -- what do you call it.  Cruel and unusual
23   punishment type thing, which we are not arguing at this
24   point in time.
25          MS. RIVERA:  I think I meant, Your Honor, that
```

1   there would be a real notice issue.  There is a real due

2   process issue.

3        THE COURT:  I frankly feel that there might as

4   well be an issue as to unconstitutional vagueness.  I

5   have already indicated that.  So I think that might be an

6   issue, but it is not going to be resolved by resolving

7   this particular aspect of the instructions, which is the

8   reason why I am allowing whatever instruction I wind up

9   giving, and if the case goes to the jury and the jury

10  comes back with a guilty verdict I am allowing the

11  defense to raise these what I consider to be legal

12  arguments at the end based upon the fact that obviously I

13  am going to use the Dost.

14        As I have indicated, I am using Dost in this

15  particular situation.  There might be some constitutional

16  problems with that, but I can't resolve those at this

17  point in time because it is kind of complicated.

18        And I think there is enough case law in the

19  Ninth Circuit to indicate that I can use Dost without

20  being automatically reversed.  I don't mind being

21  reversed as long as the circuit thinks long and hard

22  about it.

23        MS. RICHMOND:  Your Honor, just one point, which

24  is that the defense doesn't get to shape our case, so we

25  are not solely relying on the sixth Dost factor, which

1    they have said.  So the idea that they are trying to

2    influence how we would present our case or how the Court

3    sees the presentation of our case, just to be crystal

4    clear we are not relying exclusively on the sixth factor.

5         THE COURT:  I understand that.  And also the

6    problem I think with the sixth factor, and I don't know

7    how it can be resolved one way or the other, is the fact

8    that in some ways the visual depiction if it is geared

9    upon eliciting a sexual response from the viewer and the

10   viewer is the creator of the item, you might have a

11   situation where in fact that depiction would not incur or

12   elicit a sexual response of most members of the public,

13   or in some particular way, but the fact that it is done

14   by the particular defendant who is both the producer and

15   the viewer of the item does criminalize it.

16        And so that is I think a problem in my mind,

17   but I don't know whether or not -- and again, this is the

18   problem that I would leave it up to a subsequent motion

19   for judgment of acquittal because at that point in time I

20   could perhaps think about it some more.

21        But I think that the Ninth Circuit wouldn't

22   have a problem with that, which is the reason why I am

23   going to give the sixth factor, but the question is the

24   circuit I think may be wrong on that, because I think it

25   might be a constitutional issue.

1          MS. RIVERA:  Just to be clear, would the Court be

2     inclined to give that additional clarification that the

3     defense proposed?

4          THE COURT:  No.  No.  In other words, the problem

5     that I have is that the defense proposal incorporates

6     some of the things that I think are inconsistent with the

7     established Ninth Circuit.  In other words, I don't think

8     the Spore language is consistent because you have

9     incorporated some of that, but the language that you guys

10    are proposing is I think inconsistent with what the

11    circuit law is at this point in time.

12              Let me find your proposal.

13              You say that, "The sixth factor, however, may

14    not be the only consideration in finding lascivious

15    exhibition and may be considered only to the extent it is

16    relevant to the analysis of the five other factors."

17              I don't know if that is correct.  And then you

18    also put the objective elements of the images.

19              And, again, I don't know if it is only an

20    objective standard.

21         MS. RICHMOND:  Your Honor, the Ninth Circuit, as

22    we said in our brief and yesterday during oral argument,

23    has explicitly said it is not an objective standard.  It

24    is a subjective standard.  So it is about the pedophile

25    viewer and his --

1           THE COURT:  I view it as there are some objective

2    elements, there are some subjective elements.  The

3    problem is that it is not entirely clear, you know, where

4    one line starts and the other line ends, or however that

5    phrase goes.

6                And so again we have language of Dost.  Dost

7    has been approved by the circuit without any

8    restrictions.  And so I do understand that other circuits

9    have problems with it, but then again, it is a test that

10   was developed here in the Ninth Circuit, and so if the

11   other circuits had a problem with it then they should

12   modify it instead of saying these six factors are to be

13   considered.  Then they say, ohm, but we think, blah,

14   blah, blah, but then they don't change the designation of

15   the factors with specific language.

16               So that is the problem I have.

17               I think I have talked about this ad nauseam.

18               Anything else?

19           MS. RIVERA:  Your Honor, just one sort of

20   housekeeping matter.  We have requested –– I wonder if we

21   could get a stipulation on the record that the government

22   preserve Exhibits 9 through 13 for any appeal in this

23   matter, given the nature of the exhibits.

24           THE COURT:  They have to preserve it.  I am going

25   to give all of the exhibits to the government including

```
1    those, all of them.  The government has to preserve them

2    for any notice of appeal, et cetera, et cetera.

3         MS. RIVERA:  Thank you.

4         THE COURT:  And as I have indicated for the

5    record, I have seen the exhibits that were provided.

6              Okay?  All right.

7              Yes.

8         MS. RICHMOND:  Only one other thing just to

9    address is that we would object to any arguments being

10   made about somebody's personal life, their conversations

11   with their friends, their children.

12        THE COURT:  Well, I do indicate that the defense

13   counsel in his opening statement made references to the

14   defendant's military background, et cetera.  There was no

15   evidence of that, so therefore you can't argue that.

16        MS. RICHMOND:  Agreed.  And that is not what I'm

17   talking about.  I'm talking about yesterday there was an

18   argument made about a personal analogy, a conversation

19   with friends about potty training their toddlers.  And I

20   just wanted to put on the record we would object to any

21   such kind of personal stories being told in front of the

22   jury.

23        THE COURT:  I apologize.  I can't remember what

24   context that arose in.

25        MS. RICHMOND:  Defense counsel was raising the
```

1   question what if somebody photographs a picture of their

2   child on the potty and their genitals are captioned, what

3   makes that not child pornography versus an image that is.

4          So we are saying that defense counsel should

5   not be allowed to raise those kinds of personal anecdotes

6   to the jury during their closing argument about

7   conversations they have had with their friends.

8          THE COURT:  I agree insofar as personal stuff,

9   but, again, I think that insofar as the definition of

10  what constitutes lascivious exhibition one could make --

11  I don't think it is problematic for the defense to argue

12  that, well, the question is how far does this go because

13  a photograph -- just any photograph of any 13-year-old

14  girl in her bathroom drying off from a shower, does that

15  automatically mean -- they can make that type of

16  argument.

17         MS. RICHMOND:  A hundred percent.  I am just

18  saying personal anecdotes about conversations with

19  friends and their kids would be an inappropriate subject.

20         THE COURT:  Let me ask defense counsel.  I presume

21  you are not going do that.

22         MS. RIVERA:  No.  I am not going to, Your Honor.

23  I will strike that from my closing.

24         THE COURT:  You weren't planning to do that, were

25  you?

KATIE THIBODEAUX, CSR, RPR, CRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1        MS. RIVERA:  No, I was not.  Thank you.

 2        THE COURT:  She has a sense of humor too.  All

 3   right.  Anything else?

 4             I will get the final set of jury instructions

 5   printed up.  And you are going to come back, let's say,

 6   at five of 1:00.  I don't think I need to give you a new

 7   version since there are so few corrections.

 8        MS. RICHMOND:  That is fine.  Thank you.

 9        THE COURT:  Unless you want one.

10        MS. RIVERA:  We would appreciate printed copies of

11   the jury instructions, Your Honor.

12        THE COURT:  All right.  Not a problem.  I will

13   print out a set for and you for the government as well.

14        (Recess from  12:11 p.m. to 1:00 p.m.)

15        (The following proceedings were held outside the

16         presence of the jury:)

17        THE COURT:  All right.  Let me ask counsel, is

18   there anything else we need to do before I bring in the

19   jury?

20        MS. RICHMOND:  Not for the government.

21        MS. RIVERA:  Not for the defense, Your Honor.

22        THE COURT:  Let me ask Javier, do we have all the

23   jurors?

24             We don't have all the jurors yet, but as soon

25   as they come in we will bring them out.
```

```
 1              Let me also ask counsel.  You have already
 2   confirmed with my clerk the exhibits; right?
 3       MR. MANI:  There was one issue on that.  I can
 4   raise that now or anytime.
 5       THE COURT:  Why don't we wait until later, then.
 6   I just want to make sure they are going to be ready.
 7              We will be back in a moment.
 8       (The following proceedings were held in the
 9        presence of the jury:)
10       THE COURT:  Let me ask counsel, let me ask the
11   government, how long do you expect your closing argument
12   to be?
13       MS. RICHMOND:  Twenty minutes or less.
14       THE COURT:  That is including rebuttal?
15       MS. RICHMOND:  No, including the rebuttal it would
16   be about 30 minutes.
17       THE COURT:  And for the defense?
18       MS. RIVERA:  Pretty quick, Your Honor.  Maybe 10
19   minutes.
20       THE COURT:  Okay.  Let me indicate to counsel, I
21   have an engagement I have to go to so I am only going to
22   be here until 10 after 4:00.  So I will tell the jury and
23   tell them to come back tomorrow -- if they haven't
24   reached a verdict, tell them to come back at 8:30
25   tomorrow.  Okay.
```

```
 1              And you are going to give my clerk your cell
 2   phone numbers so that if he calls you you can be back in
 3   the courtroom within 10 minutes?
 4         MS. RICHMOND:  Yes, Your Honor.
 5         MS. RIVERA:  Yes, Your Honor.
 6         THE COURT:  Okay, great.
 7         (Recess from 1:11 p.m. to 1:15 p.m.)
 8         (The following proceedings were held outside the
 9          presence of the jury:)
10         THE COURT:  Let me indicate to counsel, my clerk
11   tells me that the one absent juror did not realize that
12   we were starting at 1:00 o'clock.  He is approximately a
13   half an hour away.
14              If you want to, I could substitute one of the
15   alternates or we could wait for him.  The choice of the
16   parties is fine with me.  I have no preference one way or
17   the other.
18         MS. RICHMOND:  The government is fine with taking
19   an alternate.
20         MS. RIVERA:  We prefer to wait, Your Honor.
21         THE COURT:  Okay.  Not a problem.  We will wait.
22         (Recess from 1:15 p.m. to 1:19 p.m.)
23         (The following proceedings were held outside the
24          presence of the jury:)
25         THE COURT:  All right.  Let me ask counsel,
```

1    defense counsel wants to bring something to the Court's

2    attention.

3         MR. MANI:  Yes, Your Honor.  Regarding Exhibits

4    4A, B and C, obviously I don't have a transcript from

5    yesterday, but I thought I had heard only 4A and 4B --

6    excuse me -- being admitted, and not 4C.  And so there is

7    a dispute about that.  That is as far as we remember.

8         THE COURT:  Let me ask you, those are the

9    recordings?

10         MS. ALLSOP:  No, 4A and 4B and 4C were the

11    screenshots from the Excel sheet.  From my memory, Your

12    Honor, we discussed over at sidebar that we would admit

13    Exhibit 4, but subject to the fact that we would be

14    cropping 4A, 4B, 4C.  So when I was up at the lectern, I

15    asked if we can admit Exhibit 4.  Defense counsel did not

16    object.  And actually during the trial we published 4C to

17    the jury and I don't recall defense counsel ever lodging

18    an objection then.

19         THE COURT:  My clerk indicates he has all three,

20    4A, B and C, as exhibits.  So they are in.

21         MR. MANI:  Understood.

22         THE COURT:  Was that the only item?

23         MR. MANI:  Yes.

24         THE COURT:  Actually as to the verdict form, might

25    I make one suggestion.  Do you have a copy that you can

```
1    make changes to it?

2         MS. RICHMOND:  Yes.

3         THE COURT:  The only thing is you simply have

4    count 1, count 2 and count 3.  You might want to put

5    count 1 and just identify the minor as being MS and count

6    2 being MK and count 3 being NE.

7         MS. RICHMOND:  Will do.

8         THE COURT:  Okay, great.  Otherwise it is fine.

9         (Recess from 1:23 p.m. to  2:00 p.m.)

10        THE COURT:  Let me ask government counsel, did you

11   amend the verdict form?

12        MS. ALLSOP:  We did, Your Honor.  And we e-mailed

13   a copy to the courtroom deputy.

14        THE COURT:  Okay.  Thank you.

15        (The following proceedings were held in the

16         presence of the jury:)

17        THE COURT:  All right.  Good afternoon, ladies and

18   gentlemen.

19             I will be reading you the final set of jury

20   instructions.  These are the instructions that are going

21   to control your deliberations in the jury room.  After I

22   have read them, if you have any questions let me know and

23   I will answer them if they are not otherwise answered in

24   the instructions themselves.

25             Let me ask the counsel, can I get a waiver of
```

 1    the court reporter transcribing the jury instructions

 2    because the jury has a written copy?

 3          MS. RICHMOND:  Yes, Your Honor.

 4          MS. RIVERA:  Yes, Your Honor.

 5          THE COURT:  Thank you.  All right.

 6          (The Court reads the instructions.)

 7          THE COURT:  Ladies and gentlemen, any questions as

 8    to those instructions?

 9          No one?  Okay.

10          At this point in time.  We will start the

11    closing arguments of counsel.  And as I have told you

12    just now and throughout the course of the case,

13    statements by attorneys are not evidence.

14          What a closing argument is is an attempt to

15    persuade you as to how you should view the evidence, but

16    it is not evidence.  So therefore, if the attorney makes

17    a representation as to a fact or as to an item of

18    evidence and that is inconsistent with what you recall,

19    your memory of what you recall obviously controls.

20          However, if at any point in time an attorney

21    does make a statement that you think is incorrect about

22    the evidence or about a particular fact, don't assume

23    that the attorney is intentionally trying to mislead you.

24          Ofttimes during the trial the attorneys are

25    thinking about a lot of different things while the

1   testimony is going on.  They are thinking about their

2   next question.  They are thinking about their strategies.

3   They may be thinking about other factors in the case.  So

4   they may perceive the evidence differently than you do.

5           Don't assume that if an attorney

6   mischaracterizes an item of evidence or fact that that

7   was being done intentionally.

8           Also, in terms of the way that the closing

9   arguments are done, the government gets the first

10  opportunity to make a closing argument, and once the

11  government is done the defendant gets to make a closing

12  argument.  Once the defendant is done, then the

13  government gets a chance to make kind of a closing

14  closing argument.  In other words, they get two bites at

15  the apple.

16          The reason why the government is allowed to

17  get two bites at the apple is because -- in a criminal

18  case it is two things.  One is that the burden of proof

19  is always on the government, as I have indicated.  It

20  never leaves the government.  The government bears the

21  burden of proof as to all the elements of the crime

22  charged.

23          And secondly, the government has to meet that

24  burden of proof by a very high standard.  In other words,

25  it is proof beyond a reasonable doubt.

1          Therefore because of those two factors the
2    government gets two opportunities to make a closing
3    argument.
4          Also, lastly, if at some point in time during
5    a closing argument an attorney on one side makes a
6    representation about a fact or about the evidence and the
7    attorney on the other side disagrees with that and
8    objects, I don't make a determination as to that.
9          In other words, if the attorney, for example,
10   says the evidence will show that the light was green at
11   the intersection at the time and the other attorney
12   objects and says that is not true, I don't tell you what
13   I think of the evidence.
14         In other words, it is up to you to decide what
15   the evidence was.  I don't resolve factual disputes.  I
16   will simply respond to the attorney making the objection
17   saying that the jury heard the evidence and it is up to
18   the jury to decide what the facts are based on that
19   evidence.
20         Similarly, if an objection is made as to an
21   issue of law, if that issue is covered by the jury
22   instructions I presume that the jury understands those
23   instructions and I therefore will not make any further
24   comment.
25         If however when you go back to the jury room

1    there is a disagreement as to what the instructions mean

2    or how you should interpret those instructions, feel free

3    to pass out a note and I will give you further

4    information if you desire as to any item of evidence --

5    or sorry, any issue law that is contained in the jury

6    instructions.

7             So generally I won't respond to objections.

8    There may be a rare instance where an objection is made,

9    and I feel it is not covered by the jury instructions or

10   something of that sort.  I might at that point in time

11   interject myself, but for the most part I will not join

12   the fray insofar as competing arguments are concerned.

13            Okay.  All that being said, let me ask the

14   government counsel, are you ready to make your opening

15   closing?

16        MS. RICHMOND:  Yes, Your Honor.  May I remove my

17   mask?

18            THE COURT:  Yes.

19        MS. RICHMOND:  Thank you.

20            Teen porn.  Defendant likes it so he produced

21   it.  And that is what you are here to decide, whether

22   defendant produced child pornography of three different

23   minor victims.

24            The government has charged the defendant in

25   three counts for his conduct.

1          First, count 1, victim MS, who as you heard is

2    his daughter, which was produced on March 5th, 2018.

3          Second, count 2 of victim MK, which was

4    produced on April 5th, 2018.

5          And third, victim NE, which was produced on

6    March 14th, 2018.

7          For the government to prove this to you, it

8    needs to establish three different elements beyond a

9    reasonable doubt, and the government embraces that

10   burden.

11         First, that the victims were under 18 when the

12   images and videos were produced.

13         Second, that defendant used the victims to

14   produce sexually explicit conduct -- excuse me, he used

15   the victims to produce sexually explicit conduct for the

16   purpose of creating a visual image.

17         And third, that he caused the production using

18   materials that had traveled in interstate or foreign

19   commerce.

20         I will go over the evidence that the

21   government believes proves each and every one of these

22   elements beyond a reasonable doubt.

23         I will start with element 1, which is the age.

24   I will then go to element 3, which is interstate and

25   foreign commerce.  And we will end on element 2, which is

```
 1    where we will focus much of the government's evidence.
 2              First, the age.  In count 1, the victim is MS.
 3     You heard testimony from Agent Scott that she had
 4    reviewed MS' California ID and confirmed that MS was a
 5    minor at the time of production.
 6              In count 2, you have victim MK and her dad,
 7    Mr. Kelly, came here and testified that she was under 18
 8    at the time that the images were produced.
 9              In count 3, you have victim NE.  Her mom,
10    Ms. Galvan, came here and testified that she was under 18
11    at the time of production.
12              The government submits that that evidence
13    establishes beyond a reasonable doubt the first element
14    that the three victims in the three counts were under 18
15    when the images were produced.
16              We will move on to the third element, whether
17    the images and videos were produced using materials that
18    have traveled in interstate or foreign commerce.
19              First you heard testimony from Agent Scott
20    that she reviewed three digital devices that were
21    associated with the production of the images charged in
22    the indictment:  The USB camera that was hidden in the
23    bathroom where the production occurred, the micro SD card
24    that was compatible with that USB camera and its adapter,
25    and also the hard drive where the images were found.
```

1          Agent Scott explained to you that there were

2    three different ways that data could be transferred from

3    that USB camera in the bathroom into the hard drive where

4    the images were eventually found.

5          So first, starting with the micro SD card,

6    that was government's Exhibit 31.  If you remember, it is

7    a physical exhibit that Agent Scott held up for you and

8    it bears an inscription "Made in Taiwan."

9          Second was the micro SD card and its adapter.

10   That was government's Exhibit 31.  You saw a picture of

11   it in government's Exhibit 32.  The actual SD card

12   itself -- the adapter bore an inscription "Made in

13   China."

14         And finally government's Exhibit 8, which was

15   the hard drive -- again, Agent Scott held that up for you

16   to see as a physical exhibit -- also bore a trade

17   inscription "Made in Thailand."

18         Agent Scott showed these to you.  She can

19   bring them out anytime if you would like to inspect or

20   examine them for yourselves.  All you need to do is write

21   a jury note.  You will be called back in here and you can

22   review the physical evidence.  And there is the slide

23   that I was missing that it was made in Thailand.

24         So that was the micro SD card and its adapter.

25   She also explained to you that the USB camera was

1    Internet-capable, meaning it could have transmitted data

2    or images from the USB camera to the hard drive where the

3    images were found.

4              You don't check your common sense at the door.

5    It is 2023.  You are allowed to rely on your own personal

6    anecdotal experiences and knowledge in determining that

7    the interstate is a means and facility or interstate or

8    foreign commerce.

9              And third and finally, she told you that the

10   USB camera had the capability to have a hard drive

11   plugged into it to receive data from it.

12             If that is not enough, you also heard

13   testimony from Agent Parker, who was the digital forensic

14   agent in this case, about digital cameras.  He testified

15   that digital cameras contained numerous components, tiny

16   complicated little parts like circuit boards, and that

17   circuit boards are almost exclusively manufactured

18   overseas for cost production reasons.

19             He also testified to you that because digital

20   cameras contain so many components and many of those

21   components are known to be manufactured outside of the

22   United States, that in all his years of experience as a

23   forensic agent he has never seen a digital camera that

24   was made with parts that were manufactured and assembled

25   exclusively in the State of California.

1            And in fact he told you that he doesn't know

2    any other forensic examiners who have seen such a camera

3    either.

4            To recap, we have the micro SD card with the

5    inscription Taiwan, the micro SD card adapter with the

6    inscription Made in China, and the hard drive with the

7    inscription of Made in Thailand.

8            And then in addition to that, you have the

9    nature of the Internet and digital cameras.

10           The government submits that that evidence

11   proves for all three counts beyond a reasonable doubt

12   that the defendant produced the images and videos in this

13   case using materials that traveled in interstate or

14   foreign commerce.

15           So again that is the first prong and the third

16   prong.  Now we are moving on to the second prong, which

17   is where we will be focusing much of our discussion.

18           The second prong is that defendant used a

19   victim to engage in sexually explicit conduct for the

20   purpose of creating a visual depiction.

21           Under the laws the judge just instructed you,

22   a lascivious exhibition of the genitals qualifies as

23   sexually explicit conduct.  That might sound like a

24   difficult inquiry, and there are some factors you can

25   consider under the law in determining whether an

1  exhibition of the genitals is lascivious.

2          But remember, ultimately, as the judge

3  instructed you, this is up to you.  It is your own

4  determination to consider all the facts and evidence in

5  this case in weighing whether the government has proved

6  beyond a reasonable doubt that the images presented for

7  counts 1, 2 and 3 qualify as lascivious exhibit of the

8  genitals.

9          So you should consider the factors as a guide,

10  but not that you need to check off every single factor or

11  even check off most of the factors, just that you need to

12  consider all of the evidence including the factors.

13          The judge just read the six factors to you.

14  Here they are again.  We are going to go through three of

15  them as I present the government's evidence.

16          The first one is whether the defendant took

17  the pictures and viewed them for the purpose of eliciting

18  a sexual response in himself.  We are going to talk about

19  all the evidence the government presented to you so you

20  can reach your own conclusion that defendant produced and

21  viewed these images to elicit a sexual response in

22  himself.

23          So how do you know that?  First, he told you

24  himself.  He likes teen porn and he likes younger bodies.

25          Well, despite testing the audio about 15 times

1    before you got in here of course it is not working.  As

2    the judge instructed you, the audio is the exhibit.  Your

3    memory of the audio controls, but you are allowed to look

4    at this demonstrative that is on the government's screen.

5           This demonstrative was used in association

6    with government's Exhibit 1A, where defendant admitted to

7    the agents that what he likes is teen porn and younger

8    bodies.

9           How else do you know?  Defendant kept these

10   materials close to him.  He kept them in his bag, which

11   you saw in government's Exhibit 5, on his side of the

12   bed.  And of course the audio won't work, but this was

13   government's Exhibit 1D, where defendant unequivocally

14   told the agents that that was his side of the bed and his

15   bag -- with his other important items like his passport

16   and his work IDs.  You saw that in government's Exhibit

17   6.

18          How else do you know the defendant produced

19   these images to elicit a sexual response in himself?  He

20   had them very deep in his digital devices, in places that

21   appeared to be innocuous folder paths so that the average

22   or casual viewer who stumbled onto his computer would not

23   know that the folders contained child pornography.

24          In government's Exhibit 4C, you saw that long

25   file path that came off of the hard drive for counts 1

1  through 3, where the images were saved.  And that file

2  path purported to be for his course work.  And it was

3  nested six subfolders deep so that someone else coming on

4  to the computer would have to take a lot of different

5  steps to get there.

6          How else do you know?  He hid his other child

7  pornography collections the exact same way.

8          So in Exhibit 4A, you saw similarly misleading

9  and very long file paths where he had buried his other

10 child pornography collection.  In that case it purported

11 to be for work and for taxes.  Again multiple subfolders

12 deep.  And it ended with a misleading folder like

13 "Vampire, untitled."

14         In Exhibit 4B you saw those same long file

15 paths where the child pornography was buried deep within

16 that foldering structure for the hard drive where a

17 different collection of child was saved.  Again, multiple

18 subfolders deep.

19         This evidence establishes that defendant

20 wanted to hide his child pornography, that the long file

21 paths of subfolders were a purposeful choice on his part

22 to keep those images away from other people because he

23 knew that what they depicted was child pornography.

24         How else do you know?  He set up and left up

25 the USB camera in the bathroom.  He interacted with it

1    multiple times, as you saw in government's Exhibits 24

2    through 27.

3            How else do you know?  That wasn't the only

4    hidden camera in the house.  There wasn't just one.  And

5    where were these hidden cameras?  In places where he knew

6    that his daughter and her minor friends would be naked,

7    the most intimate places of a person's home, in the

8    children's bedroom and bathroom -- and not the

9    children's, his daughter's bedroom and the bathroom that

10    she used.

11            Another factor you can consider is whether the

12    images were in an area associated with sexual conduct,

13    like a bedroom or a bathroom.  The government showed you

14    evidence in this case that one of the other hidden

15    cameras was in a smoke detector.  Where was that smoke

16    detector?  In his daughter's bedroom.  You saw that in

17    government's Exhibit 14 and in government's Exhibit 15.

18            Agent Scott testified that she personally took

19    that smoke detector husk or shell off the ceiling and

20    there were zero smoke detecting components in that smoke

21    detector.  Defendant had rendered it functionally

22    incapable.  Instead of smoke detecting components what

23    was inside was a camera, a secret hidden camera.

24            Why was there a camera in there?  So that he

25    could have a live stream, as you saw in government's

1  Exhibit 18, right onto his cell phone, as you saw in

2  government's Exhibit 17.

3          Can defendant say he put it up and forgot

4  about it?  He can't say that with the bathroom cameras we

5  just went over.  He also can't say that for the smoke

6  detector.  You know that because you saw evidence in this

7  case and government's Exhibits 19 and 20 that he had

8  tested it.

9          You also heard testimony from Agent Scott that

10 it needed a battery to be operational.  And as we know,

11 batteries run low and have to be replaced.  How long was

12 that camera up?  Agent Scott told you two years.

13          How else do you know the cameras in the

14 bedroom and bathroom were hidden.  Agent Scott testified

15 that the camera hidden in the bathroom was designed to

16 look like a cell phone charger and the camera hidden in

17 the smoke detector, as you can see in Exhibit 16, is

18 intentionally meant to be concealed so that the average

19 viewer couldn't see it.

20          Now, contrast that to the cameras that were

21 outside.  Agent Scott testified that those cameras were

22 in plain view.  Defendant wasn't hiding those at all.

23 The ones he hid were the cameras in his daughter's

24 bedroom and bathroom.

25          Were there any other cameras and smoke

 1    detectors in the house?  No.  What about hidden cameras
 2    in the other bathrooms?  No.  Not in the parents'
 3    bathroom and bedroom and not in their other adult son's
 4    bedroom and bathroom.  They were not in any other area of
 5    the home.
 6            How else do you know?  Did defendant delete
 7    these images right away upon realizing what they are?
 8    No.  He carefully saved them in the multiple nested
 9    subfolders, and then he created backups of them on
10    external drivers.
11            And did he save just one video?  No.  He saved
12    17 videos.  And not just videos.  He saved over a hundred
13    still images, of what?  Of girls getting unaddressed and
14    naked in his family's bedroom and bathroom.
15            We are going to be reshowing the contraband
16    evidence right now.  I am going to make it as quick as
17    possible.  We are going to go through count 1 which was
18    charged on March 5th, 2018, which is government's
19    Exhibits 9 and 10.
20            Count 2 for victim MK, which was charged on
21    April 5th, 2018, which is government's Exhibits 11 and
22    12.
23            And count 3 for victim NE, which was charged
24    for March 14th, 2018 which is Exhibit 13.
25            Again despite the multiple tasks -- Your

                  KATIE THIBODEAUX, CSR, RPR, CRR
         UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   Honor, may I walk in front of the bench just to show them

2   this on my screen because the cords aren't working.

3           THE COURT:  All right.

4           MS. RICHMOND:  I apologize to the jury for the

5   technical inconvenience, but hopefully this screen is big

6   enough for you to see.

7               So this is the video of MS.

8               (Video played.)

9           MS. RICHMOND:  This is Exhibit 10, which is a

10  still from that video.

11              (Video played.)

12          MS. RICHMOND:  This is government's Exhibit 12,

13  which is victim MK.

14              (Video played.)

15          MS. RICHMOND:  Sorry.  That was Exhibit 11.

16              This is 12, which is the still from that

17  video.

18              (Video played.)

19          MS. RICHMOND:  And finally, this is Exhibit 13 of

20  minor NE.

21              (Video played.)

22          MS. RICHMOND:  Javier, is the system all set up to

23  be shown from the lectern?

24              You all are my witnesses.  This was working

25  just a moment ago.

1                When I was plugged in earlier, could they see?

2          THE COURT:  They just didn't want to give you any

3    hand.

4          MS. RICHMOND:  That is okay.

5                Javier, would you mind confirming that they

6    can see?

7          THE CLERK:  Not now.

8          MS. RICHMOND:  So you just reviewed the

9    government's exhibits that depicted the child pornography

10   in this case.  Again going back to the factors --

11         JUROR:  We don't see the slide show.

12         MS. RICHMOND:  Again let's go back to the factors.

13   One of them is whether the focus is on the genitals.  And

14   in those images you just viewed, the government argues

15   that the focus is on the genitals.  The minors are naked.

16   Their vaginas were clearly exposed.  And there is no

17   other activity going on in the bathroom.

18               They are not putting on their makeup or

19   curling their hair or getting dressed for cheerleading

20   practice or chatting with friends.  They are naked and

21   the focus is on their genitals.

22               He saved those videos carefully and kept them

23   near him.  What didn't he save?  Files of his naked wife

24   and adult son.  How do you know that?  From government's

25   Exhibit 30, which is a cell from a spreadsheet that

KATIE THIBODEAUX, CSR, RPR, CRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1     Agents parker and Scott introduced to you showing that he

2     had deleted those videos of his wife and adult son.

3            Why?  Because he likes younger bodies.  He

4     likes teen porn.  He likes child pornography.  So he

5     created the child pornography he most wanted, which was

6     teen porn.

7            The government submits that all of that

8     evidence proves beyond a reasonable doubt the second

9     prong, which was that defendant used the victims to

10    engage in sexually explicit conduct to create a visual

11    depiction.

12           The government believes that all of the

13    evidence in this case establishes for count 1, 2 and 3

14    beyond a reasonable doubt the defendant is guilty of

15    producing child pornography of minor victims MS, MK and

16    NE

17           Thank you for your time and thank you for

18    sticking with me during the difficulties with the

19    technology.

20        THE COURT:  All right.  For the defense.

21        MS. RIVERA:  Thank you, Your Honor.

22           I am going to keep mine fairly low tech or no

23    tech.

24           I want to get this out of the way at the

25    outset and I want to acknowledge -- let me rearrange this

KATIE THIBODEAUX, CSR, RPR, CRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   stuff.  I want to acknowledge that while this has been a

2   relatively short trial, it has also been pretty

3   upsetting, I imaging.

4           You have had to hear and see some upsetting

5   things over the last couple of days.  And I have no doubt

6   that you find the conduct here, recording teenage girls

7   using the toilet, stepping out of the shower, that you

8   find all of those things distressing, disgusting,

9   despicable.

10          And it is all of those things; right?  But it

11  isn't criminal under the statute that the prosecutors

12  chose to charge Mr. Stella with.  And you don't have to

13  condone his behavior as to these particular counts to

14  acknowledge that the government simply hasn't proven

15  their case with respect to the statute that they chose to

16  charge him under.

17          It is the government's burden and obligation

18  to show you beyond a reasonable doubt that Mr. Stella

19  recorded images, photographs and videos of minors and

20  that those images depict sexually explicit conduct.

21          But they haven't done that.  And that is

22  because when you look at the four corners of those images

23  that were shown to you -- and only the images that were

24  shown to you are at issue in this case -- when you look

25  at those images it is clear that there is nothing sexual

1    about them.  And your common sense tells you that.

2           And the law tells you that as well.

3           So Mr. Stella's conduct here, no mistake about

4    it, it was inappropriate.  It was offensive.  It was an

5    invasion of the privacy of these young girls and it was a

6    breach of the trust that they had in him and that their

7    parents had in him.

8           It never should have happened.  And you have

9    every right to feel disturbed and upset that it did.  But

10   you are not tasked here today with deciding whether you

11   approve or disapprove of what did he with respect to the

12   conduct that is at issue in this case.

13          You are here today and you are tasked today

14   with deciding and applying this highly technical law that

15   has very specific, exacting requirements and a very

16   specific definition.

17          This is the law that the prosecutors chose to

18   charge Mr. Stella with.  It is your decision to decide --

19   or your responsibility to decide whether they have met

20   their burden.  They simply haven't and Mr. Stella is not

21   guilty.

22          I am going to refer to some of the jury

23   instructions that I think you have all received.

24   Occasionally I will refer to them by page number.  But

25   you have been instructed you ever already taken an oath

1    that you are not going to rely on any biases or

2    sympathies that you might have when you go back to the

3    jury room to deliberate.

4         And another thing you can't think about and

5    you can't take into your decision is any desire to punish

6    Mr. Stella.  You know, some of you -- one or some of you

7    might find yourselves thinking, well, I don't know if the

8    government has exactly met this exacting requirement.  I

9    am not really sure that they have met their burden.

10        I just don't know, but I don't like what did

11   and I think he should be punished for it.  But you can't

12   consider his punishment on these particular three counts

13   or the other very serious convictions which you heard he

14   already sustained because the judge will be deciding

15   that.  That is not for you to decide.

16        The other thing you can't really think

17   about -- the other thing that can't go into your decision

18   is sympathy, whether you might feel any sympathy for the

19   girls or the parents who we heard from in this trial.

20        It is understandable if you feel that

21   sympathy, but it cannot factor into your decision in the

22   jury deliberation room.

23        Again, it is understandable if you feel

24   disgusted or disturbed by what Mr. Stella has done here.

25   He hid cameras in the family bathroom and he captured

1    recordings of these girls in very private moments.

2          I don't think it is a stretch to say that that

3    did nothing to endear him to any of you.  Okay.  But you

4    cannot use any bias you feel against him in applying the

5    facts to the law in this case.

6          Instead you are required to be fair, neutral

7    and impartial and apply the facts to the law here.

8          You have taken an oath to do that.  We are

9    counting on you to do that and we are trusting you to do

10   that.

11         Mr. Stella, as you know, is presumed a hundred

12   percent innocent on each of the three counts that are at

13   issue here.  And I know we already heard -- you know,

14   government is not going to get up here and tell you any

15   differently.  They are not going to tell that you

16   Mr. Stella is required to prove his innocence.  He is

17   not.

18         Mr. Stella is also not required to put on an

19   affirmative case and explain his innocence to you.

20         And we didn't do that.

21         Mr. Stella and the defense team, we are not

22   required to cross-examine any of the witnesses in this

23   case.  And you saw that we didn't do that.  Nor was

24   Mr. Stella required to testify in his own defense and try

25   to help you understand what was going on in his mind and

1     his life during this period of time where all of this

2     happened.

3             And in fact, he didn't do that.  And

4     essentially Mr. Stella is taking responsibility for his

5     conduct and his actions here.

6             It is sort of similar to how you heard the

7     case agent testify, that in this same case with respect

8     to other counts Mr. Stella took responsibility there.

9     When he came into this courtroom, stood up, raised his

10    hand and said I am pleading guilty to the possession

11    counts.  I possessed child pornography.

12            He stood up and it was hard but he did it when

13    he was actually guilty.

14            When the images met the legal definition that

15    they must meet to convict somebody of possession of child

16    pornography, he accepted responsibility for his actions.

17            But these images don't.  And that is really

18    the narrow issue in dispute in this case.  And so we

19    didn't put on any sort of affirmative this case.  We

20    didn't have to cross-examine witnesses.  It is not this

21    kind of case.

22            We are not disputing the facts.  The facts

23    show that Mr. Stella hid cameras in the family bathroom.

24    They show that using that camera he recorded photographs

25    and videos of three separate minors using the bathroom

1    and then he hid these images on his computer.

2              Common sense leaves you to find that of course

3    he hid them.  It was a shameful, terrible thing.  And he

4    wasn't really trying to advertise it to his family or

5    anybody else.

6              And then the fourth fact I think is that he

7    has this conviction for possession of child pornography.

8    And that happened in this case.

9              So none of those facts are in dispute.  This

10   is a narrow technical legal question, and what it comes

11   down to is whether the images portray any sexually

12   explicit conduct.  And they don't.

13             You have the definition of sexually explicit

14   conduct with you.  It is at page 4 of the jury

15   instruction.  All right.  It is maybe the bottom third of

16   the page.

17             There are five different definitions of

18   sexually explicit conduct.  I will read it out loud and

19   then we will discuss why none of these apply.

20             First, sexually explicit conduct means actual

21   or simulated sexual intercourse, bestiality,

22   masturbation, sadistic or masochistic abuse or lascivious

23   exhibition of the genitals or pubic area.

24             Again, you didn't check your common sense at

25   the door, and in fact you are encouraged to rely on your

KATIE THIBODEAUX, CSR, RPR, CRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

 1    common sense in reaching your verdict in this case.

 2            So this is a list.  I didn't come up with this

 3    list.  The judge didn't come up with this list.  Congress

 4    came up with this list.  This is what sexually explicit

 5    it conduct is defined as.  And when you just heard me

 6    read that, I think you heard and you are able to put

 7    together that this is pretty graphic stuff.

 8            This isn't just anything, bestiality is on

 9    this list.  Sadistic or masochistic abuse.  This is meant

10    to include and prohibit really graphic stuff.

11            So obviously we didn't see any simulated

12    sexual intercourse.  We didn't see real or stimulated

13    bestiality, masturbation, sadistic or masochistic abuse.

14    And we didn't see lascivious exhibit of the genitalia.

15    But the government's theory is that the images you saw,

16    those couple of photos, those very brief videos, that

17    those included lascivious exhibition of the genitals or

18    pubic area.

19            That is another term of art.  And I want to

20    talk about how we define that.

21            So if you go down a couple of paragraphs on

22    this page, this is what the Court already read to you.

23            "The term all lascivious exhibition means a

24            depiction that displays or brings to view to

25            attract notice to the genitals of a minor to

1          excite lustfulness or sexual stimulation in the

2          viewer."

3          And here is something that I think is really

4    important, and I have highlighted it on mine.

5          "Not every exposure of the genitals or public area

6          lascivious exhibition."

7          That was really important.  You already knew

8    that, right?  Who hasn't seen nude photos and thought

9    this isn't lascivious exhibition?  Not every nude

10   photograph, not every nude video is going to meet this

11   requirement.

12         The other thing I want to note is the

13   following sentence.  It says:

14         "In determining whether an exhibition of the

15         genitals or pubic area of the minor is lascivious,

16         you may consider the following factors,"

17         And that is where we get into this six-part

18   test.  But I am going to skip to the bottom that

19   paragraph following the sixth factor because I think this

20   is actually so critical because it says that this list of

21   factors is not mandatory, meaning you can use your own

22   common sense about what you think is sexually explicit

23   conduct, about what you think is lascivious exhibition.

24         Then I want to draw your attention to the

25   following sentence, "You must determine whether the

1    visual depiction is lascivious based on its overall

2    content."

3                 So you need to assess these images in

4    determining whether they meet any of these factors or

5    none of these factors.  And you need to think about how

6    much weight to give each factor.  That is up to you.

7                 But I do want to work through them.  They are

8    suggested here as a guide as general principles.  I want

9    to go through them with respect to all of the images we

10   saw for count 1, count 2 and count 3.

11                So first, whether the focal point of the

12   depiction is on the minor's genitals or pubic area.  What

13   does that mean?

14                Well, what we saw was a camera that was set

15   up -- looked like it was set on a counter in a bathroom.

16   What it captured was almost the entirety of the bathroom.

17   It is hard to say that there was any focal point

18   whatsoever.  We could see part of the toilet.  You can

19   see the area in front of the counter and mirror.  You can

20   see the window.  You can see towels.  You can see stuff

21   on the counters.  You can see a comb and hair spray.  You

22   can see the shower curtain.  What is the focal point?

23                You can see a person.  You can see a person

24   from their head down to their knees or ankles sometimes.

25                The focal point is not on anybody's private

1    parts.  There is no zooming in.  Nothing has been closely

2    cropped.  Nothing has been edited in such a way as to

3    highlight anybody's private parts in these videos.  And I

4    think you would be hard pressed to say that the focal

5    point of any of these images are somebody's genitalia or

6    pubic area.

7            So the second factor, whether the setting is

8    sexually suggestive; that is, a place or pose generally

9    associated with sexual activity.  So if you are a person

10   who happens to associate a garage with sexual activity, I

11   guarantee that doesn't really meet the test here.  It has

12   to be somewhere generally associated with sexual

13   activity.

14           You know, what comes to mind, perhaps the

15   bedroom.  The bathroom with the toilet in front of the

16   mirror?  I don't think so.  I don't think they get there.

17           Again, you have to consider the overall

18   content of the image too.

19           So the overall content, I think when we look

20   at how the bathroom was being used here perhaps somebody

21   could engage in some sort of sexual conduct in the

22   bathroom.  It is not a crazy idea.  We didn't see any of

23   that here.

24           We only saw a couple of young women either

25   standing in front of the mirror, having just gotten out

1    of the shower, or perhaps somebody who had just finished

2    using the toilet.  Not particularly sexual.  Not an area

3    that is associated with sexual activity.  And certainly

4    not as it was being used in these particular images.

5              And then third, the second factor does not

6    suggest that these images depicted sexually explicit

7    conduct.

8              The third factor, whether the minor is

9    depicted in an unnatural pose or inappropriate attire.

10   Well, there is no posing whatsoever.  It makes sense why

11   this might be part of the test if we are talking about

12   the production of child pornography, if it is designing

13   the scene in such a way where they are posing people or

14   asking persons or minors to position themselves for a

15   camera.

16             Perhaps this makes sense in a different kind

17   of case, but here there is no posing.  Nobody is

18   positioning themselves for the camera.

19             This third factor simply doesn't suggest that

20   these images showed any sexually explicit conduct.

21             The fourth factor, and again, we need to

22   consider this based on the overall content of the image,

23   whether the minor is fully clothed, partially clothed or

24   nude.

25             Counts 1 and 2 -- the minors depicted in

1    counts 1 and 2 are nude, but you need to consider the

2    overall content and whether they were nude in an

3    unnatural way or way that really drew attention to that.

4         Well, they appeared to be just getting out of

5    or just getting into the shower, and so it is not

6    unnatural that they would be nude.

7         And so I think this fourth factor just does

8    not weigh in favor of finding that these images, though

9    disturbing, though inappropriate, though completely

10   wrong, this doesn't weigh in favor of finding that these

11   images contain sexually explicit conducted.

12        Fifth factor, whether the depiction suggests

13   sexual coyness or a willingness to engage in sexual

14   activity.  This one has to be pretty uncontroversial.

15   This simply doesn't apply.  Nothing that these young

16   girls were doing in these videos or these photos suggest

17   whatsoever that they were willing to engage in any sort

18   of sexual activity of any kind.

19        And then six, the sixth one is where the

20   government's theory of the case rests.

21        The sixth one is whether the visual depiction

22   was designed or intended to elicit a sexual response in

23   the viewer.  And again, this is where I think it is

24   critically important that you use your common sense here

25   in determining whether you even need these factors

1    whatsoever to determine whether something depicts

2    sexually explicit conduct because the government's case

3    rests almost entirely on the sixth factor.

4              So I need you to use your common sense and

5    think about why that doesn't work, why that is

6    problematic, why the sixth factor cannot transform an

7    otherwise nonpornographic image into something

8    pornographic.

9              I was trying to think of some examples of

10   this.

11             What I am saying it is not enough to say,

12   well, Mr. Stella has admitted, and he did, that he had an

13   interest in teen bodies.  He has already admitted and

14   taken responsibility for having possessed child

15   pornography.

16             He hid the child pornography deep in some

17   subfolders on his computer.  Right.  But that can't be

18   enough to transform this image into something else.  It

19   can't be enough to transform an image that doesn't show

20   sexually explicit conduct into one that does and one that

21   would criminalize Mr. Stella for his conduct here.

22             And so, like I was saying, use your common

23   sense.  Think about why that is so deeply problematic.  I

24   am thinking to think of some illustrations of this,

25   something that shouldn't change or doesn't change based

1    on the beholder.

2              One illustration of an issue with this would

3    be imagine a photographer for a medical anatomy textbook

4    in child development.  It might meet one of these

5    factors, right.  Perhaps this person is photographing

6    people who are fully or partially clothed or nude.  That

7    is the fourth factor suggested here.

8              Perhaps it would actually meet that first

9    factor as well with respect to the focal point.  Perhaps

10   there is a photograph and somebody's face isn't even

11   depicted in it.

12             You know, I would probably concede that that

13   would be something where the focal point actually is on

14   the pubic area, unlike here, where we can see the

15   entirety of the bathroom and we can see the entirety of

16   each of the subjects.

17             If that were the case and the photographer was

18   just a normal person with no sexual interest in children,

19   it is not a pornographic image.  But then if this person

20   has sustained a conviction, or has said I like teen

21   bodies, suddenly the nature of this image changes?  That

22   doesn't make sense.

23             It doesn't make sense, and you cannot

24   over-rely, is what I am saying, on this sixth factor.

25   You should be considering, it if at all -- if you are

1    considering the Dost factors whatsoever, I am asking that

2    you don't over-rely on this sixth factor.

3            I was thinking of another example of something

4    that doesn't change just based on who is looking at it or

5    who is possessing it.  I always use a green pen.  This

6    pen is green.  That is an objective fact.  That is not

7    going to change.

8            But if I give it to somebody who is color

9    bind, they might tell me the pen is brown because they

10   see it as brown.  But the pen is still green.  The pen is

11   not changing depending on who is looking at it.  There

12   are certain objective facts that don't change.

13           And that is I think the problem about the

14   sixth factor.  If we are talking about whether or not

15   Mr. Stella had a sexual interest in children and whether

16   that is enough to change these characteristics, it simply

17   doesn't change certain immutable things about these

18   images.

19           So what you need to be doing is I am asking

20   you to look at the four corners of these images and

21   evaluate them based on your common sense.  Start at the

22   definition of sexually explicit conduct that contains

23   really graphic stuff.  Bestiality, sadistic conduct.

24           This isn't that type of thing.  These images

25   are not that.

1          And then even if you apply that six-part

2     test -- and again, it is up to you to decide to apply

3     that or not apply that.  Those aren't mandatory.  I know

4     it is confusing.  Those factors aren't mandatory.  It is

5     up to you to decide how much weight to give them or not

6     give them, but I think and I hope that when you look at

7     this stuff, when you are cold and neutral and detached,

8     when you are impartial, when you are not biased against

9     Mr. Stella for what he has done, for what he has already

10    accepted responsibility for having done, I hope you will

11    see that these images, though disturbing, just don't meet

12    the very specific statute that the prosecutors chose to

13    charge him with.

14          I am about to wrap up.  And it is going to be

15    difficult for me because I am not going to get another

16    chance to talk to you.  The government because they bear

17    the burden of proof beyond a reasonable doubt as to every

18    single element on each count, they get to talk to you

19    again.  I don't.

20          So I am asking you to remember that we didn't

21    waste your time trying to excuse what Mr. Stella has

22    done.  We are not trying to minimize what he has done.

23    You know, there was no attempt to say maybe it wasn't him

24    but the camera up there.  Maybe it was someone else.

25    Maybe he had no idea.  Maybe the hard drive belonged to

1    somebody else.  Maybe it wasn't in interstate commerce.

2              That is not what we did.  There is no disputes

3    as to the facts.  We are not minimizing his behavior

4    because what this case comes down to is a highly

5    technical legal issue.  And so we are trusting you to set

6    aside how disturbing this all is.  We are asking you to

7    set aside the inappropriate behavior, to look past that

8    for now.  You are not condoning it, but your duty as a

9    jury is to actually apply the law to the facts that were

10   presented to you.

11             There was one more thing I wanted to say -- I

12   apologize.  I am thinking through those six factors and

13   the setting and where they were taken.  I am thinking

14   about the images that were actually in evidence.  I think

15   it is possible that somebody could have understood the

16   government to be suggesting that there were images from

17   the bedroom.  I want to confirm the only images at issue

18   here that the government thinks support its case -- and

19   you know they have brought you their best evidence -- the

20   only images here are the ones that took place in the

21   bathroom.

22             And again, it was offensive.  It was a

23   violation of these girls' trust.  And we are trusting you

24   to put that aside and make an impartial decision.

25             There are other crimes that capture what

KATIE THIBODEAUX, CSR, RPR, CRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    Mr. Stella has done.  But the government chose not to
 2    charge him with those.  They chose to charge him with
 3    this very serious crime and it has very serious specific
 4    technical requirements.
 5         MS. RICHMOND:  Your Honor --
 6         THE COURT:  Was that an objection?
 7         MS. RICHMOND:  Yes, that was an objection, Your
 8    Honor, talking about other laws that are not applicable
 9    in this case.
10         THE COURT:  Well, the instructions indicate that
11    the defendant is not on trial for any crimes other than
12    the ones alleged in counts 1 through 3.  So I don't
13    understand what the nature of the objection is.
14         MS. RIVERA:  I am about to wrap up, Your Honor.  I
15    was just going to say, highly technical, highly specific,
16    and that is what he is charged with.  And we are trusting
17    you to do your duty in this case, set aside any biases,
18    set aside any feels of disgust that you might have, and
19    just do what we are asking to you do, which is remain
20    impartial, remain neutral.  Listen to the whole case.
21    Use your common sense.  We are asking you to find
22    Mr. Stella not guilty.
23         THE COURT:  All right.  For the government?
24         MS. RICHMOND:  Yes, Your Honor.  Thank you.
25              The government embraces its burden, and it
```

1    believes that the evidence it has presented to you proves

2    all three elements for all three counts beyond a

3    reasonable doubt.  And don't worry my rebuttal, won't

4    have any technology in it, nor will I be reshowing you

5    the images.

6            To be clear, defendant is totally right.  He

7    is note required to put on any kind of a case at all.

8    And that is not what the government is suggesting.

9            What defense counsel just argued is that what

10   defendant did is disgusting but not criminal, but you

11   heard what the law is from the judge.  The law says that

12   a lascivious exhibition of the genitals counts for

13   sexually explicit conduct in the statute that the

14   government used to charge this case.

15           Defense counsel also asked you to only look

16   within the four corners of the images and videos, but

17   again, the judge instructed you what the law says.  And

18   the law says that you can consider the images and every

19   other piece of evidence -- pictures, testimony,

20   physical -- that the government introduced to you in this

21   case.

22           So how do you know that it wasn't just bad

23   judgment or a violation of trust or disgusting but not

24   criminal conduct?  Because of all the corroborating

25   indicia that the government presented to you that shows

1    that the defendant has a prurient sexual interest in

2    children -- specifically teen bodies -- and that he

3    produced child pornography to elicit a sexual response in

4    himself.

5              Defense counsel spent a lot of time talking

6    about the other prongs of the statute, but those are

7    inapplicable here.  The government did not charge this

8    case under those prongs because they don't fit.  The

9    government charged this case under the prong that fits,

10   and that is lascivious exhibition of the genitals.

11             The government isn't asking you to find that a

12   picture that grandma has on her cell phone of her little

13   baby granddaughter in the bathtub is child pornography.

14   It is not.

15             So how do you figure out whether the images in

16   this case constitute child pornography under the law?

17   Again, the judge instructed you that you are allowed to

18   look at the six factors, which are not exclusive, they

19   are just a guide for you, and all the evidence in this

20   case.

21             One of those factors, as I discussed in my

22   closing, and defense counsel did in hers as well, is

23   whether the focus is on the genital region.  So she

24   talked about the combs that were on the counter, the

25   towels that were in the foreground, the shower curtain.

1    But this image wasn't of a beautiful sunset or a Palomino

2    horse riding on the beach or a dog or someone's backyard

3    that they were showing.  It was in a basic bathroom.  The

4    background was not the focus of the image.

5            What was the focus of the image?  The people

6    that were in the image.  And how were the people in the

7    images depicted?  Having their vaginas clearly exposed,

8    because that was the focus of the image, was to see naked

9    girl with their vaginas exposed.

10           Another factor you can consider besides

11   whether the focus is the genitals is whether the images

12   were taken in an area associated with sex.  To be clear,

13   the government is not alleging that we introduced images

14   to you that were taken in the bedroom.  I was merely

15   trying to draw a corollary for you that the defendant hid

16   cameras in areas where he knew his daughter and her

17   friends would be naked in the home, in the bedroom and

18   the bathroom.

19           As you have heard many times by now, you don't

20   check your common sense at the door.  The government is

21   not asking you whether you personally find the bathroom

22   sexually exciting or you would consider it an area

23   commonly associated with sex.  The inquiry is whether

24   people in the general public could consider the bathroom

25   an area associated with sex.

1          And the government submits to you that if you

2    use your common sense, you could reach a decision that,

3    yes, there are people who associate bathrooms with sexual

4    conduct, in part because people are often naked there.

5          And finally, and this is where the government

6    rested most of its case, is whether the defendant took

7    the images to elicit a sexual response in himself.  So

8    the viewer we are talking about is not the average

9    viewer, because the average viewer would not have a

10   sexual response elicited in themselves.  It is whether

11   the person who took or viewed the image took it for the

12   purpose of eliciting a sexual response in themselves.

13         So how do you know that that is why defendant

14   did this?  Because of all the corroborating indicia.  He

15   had two other child pornography collections nested many

16   subfolders deep under misleading file titles like taxes

17   or course work, and that is exactly how he hid these

18   images here.

19         He kept those on his hard drive, in his

20   backpack, on his side of the bed, with all his

21   supervaluable and important stuff like his passports and

22   IDs because this was valuable to him.  Why?  Because he

23   liked teen bodies so he produced child pornography of it.

24         The government has presented evidence to you

25   in this case that will allow you to conclude for all

1    three elements on all three counts that defendant

2    produced child pornography of victims MS, MK and NE.

3              Thank you.

4         THE COURT:  All right.  Let me ask, do we have the

5    bailiff?

6         THE CLERK:  Yes, sir.

7         THE COURT:  Let me have the clerk swear the

8    bailiff.

9         THE CLERK:  Please state and spell your name.

10        THE BAILIFF:  Miguel Espinal, E-S-P-I-N-A-L.

11              (The bailiff was sworn.)

12        THE BAILIFF:  I do.

13        THE CLERK:  Thank you.

14        THE COURT:  All right.  Ladies and gentlemen, you

15   can follow the bailiff.

16              Just a couple of things.  I have to leave

17   today at 4:10 so I will be gone.  You can deliberate

18   until five o'clock or you can leave at 4:10.  I will

19   leave it up to you.

20              We are going to start tomorrow at 8:30.

21   Please remember when you are on these breaks do not

22   discuss this case with anyone.  Do not do any independent

23   investigation.  Have a very pleasant evening and I will

24   see you all back here at 8:30.

25              (The following proceedings were held outside the

```
 1              presence of the jury:)
 2         THE COURT:  All right.  Let me ask counsel, have
 3    you given the clerk your contact number?
 4         MS. RICHMOND:  We will do that right now.
 5         THE COURT:  And do you have a copy of the verdict
 6    form?
 7         MS. RICHMOND:  The new one, no.  But we can get it
 8    printed.  We have been in here since we last submitted
 9    it.
10         THE COURT:  My clerk did it for you.
11              All right.  That seems to be fine.  Let me ask
12    the defense, anything else till we get the verdict from
13    the jury?
14         MS. RIVERA:  No, Your Honor.
15         THE COURT:  Okay.  All right.  Thank you
16    everybody.  Have a very pleasant evening.
17         (The following proceedings were held in the
18              presence of the jury:)
19         THE COURT:  Let me ask counsel, both sides have
20    seen the juror's note?
21         MS. ALLSOP:  Yes, Your Honor, for the government.
22         MS. RIVERA:  Yes, Your Honor.
23         THE COURT:  What is the response?
24         MS. ALLSOP:  Ms. Richmond has gone to get the
25    trial laptop so we can make it available for the jurors
```

1    to review again.

2         THE COURT:  Do they have any equipment in the jury

3    room to play it?  I presume not.

4         MS. RICHMOND:  No.  Because it is contraband we

5    have to keep custody and control of it, which is why --

6         THE COURT:  Not so much that.  Are you going to

7    leave the computer in the jury room?

8         MS. RICHMOND:  No, no.  We display it on the

9    screens for as long as they want to see it and then once

10   they are done they go back to the room.

11        THE COURT:  So it is going to be shown only in the

12   courtroom?

13        MS. RICHMOND:  Correct.

14        THE COURT:  All right.  Let me ask the defense

15   counsel.  Any problem with that?

16        MS. RIVERA:  No, Your Honor.  I assume we will all

17   be here or none of us will be here.

18        THE COURT:  I think we all are going to be here.

19   In other words -- how long is it?

20        MS. RICHMOND:  Exhibit 12, the video of MK or MS.?

21        MS. RIVERA:  I thought that was a still.  I think

22   it is a still photo.

23        THE COURT:  Didn't you put it on another disk?  In

24   other words, the jury may want to see it and play it back

25   and forth.

```
 1          MS. RICHMOND:  We can do whatever they would like
 2   us to do.  And if you don't want me doing it my case
 3   agent can do it, but because this is contraband we can't
 4   he send it back with the jury.
 5          THE COURT:  Exhibit 12 is contraband, right?
 6          MS. RICHMOND:  Yes.
 7          THE COURT:  But I presume they could get it and
 8   give it back to us.  In other words, we could give them a
 9   laptop from IT.
10          MS. RICHMOND:  Unfortunately no, because it is
11   contraband, just like guns or drugs.  We can't send it
12   back with the jury.
13          MS. RIVERA:  Can I just inquire where this rule
14   comes from, what it is based on, whether it is just norms
15   or something?  My concern, Your Honor, is that there is
16   this additional -- first of all, it is kind of a
17   logical -- it is a legal question whether it actually is
18   sexual abuse material.
19          THE COURT:  As I have indicated, I have to go.  So
20   this is what I am going to tell them.  I am telling the
21   jury that we will respond to them tomorrow, but that we
22   will -- unless both sides agree that you guys can sit
23   here and it can be played back to the jury one time, or
24   if anyone wants to do it more than one time, then
25   whatever.  But I have to go at this point.
```

```
1              MS. RICHMOND:  Exhibit 12 is actually just an

2    image.

3              THE COURT:  Oh, it's just an image?  Oh, I thought

4    you said it was a video.

5              MS. RICHMOND:  I thought it was and then when I

6    clicked on it I realized it was an image.  I apologize.

7              THE COURT:  In that case then we will just bring

8    them out so they can see it.  That is not going to be a

9    problem.

10             MS. RICHMOND:  Thank you.

11             THE COURT:  Let me ask the government, I presume

12   you are just going to bring the image up.  It will be on

13   the laptop and jurors can look at your laptop.

14             MS. RICHMOND:  I would like to display it on the

15   screens, which I tried doing during my closing and for

16   some reason -- I don't know if these screens were off and

17   I couldn't tell them it was on those screens, but

18   preferably --

19             THE COURT:  Why don't you just try to put it on

20   now and see if your cohort can see if it is on the screen

21   as well.  Is it on?

22                  I see it on mine.

23             MS. RICHMOND:  Okay.

24             THE COURT:  It is on the screen.  Okay.  Why don't

25   you turn it off, and then I will allow them to see it.
```

```
 1          (The following proceedings were held in the

 2       presence of the jury:)

 3          THE COURT:  All right.  Ladies and gentlemen, I

 4   have received a note indicating that the jury would like

 5   to see Exhibit 12 to review if possible.

 6              What we are going to do, we are going to put

 7   Exhibit 12, which our understanding is Exhibit 12 was

 8   just a photo.  That is everybody's understanding.

 9              We are going to put it on the screen in front

10   of you and you can take a moment to look at it.  It is

11   not going to be taken back into the jury room, but it

12   will be shown here.  If you need to see it again even

13   after this time, you feel free to ask for it another

14   time.  We will bring you back out here and we will show

15   it to you again if necessary.  But here it is at this

16   point in time.

17              Let me ask, does any juror need to see it any

18   longer or is everybody done seeing it?

19              Everybody is done seeing it.  Okay, great.

20              At this point in time, we will take it off and

21   you can go back down to the jury room.  As I have

22   indicated to the jury, I will not be here because I am

23   leaving, but tomorrow at 8:30.  Again, if you need to see

24   anything else, feel free to make whatever request you

25   want and we will endeavor to provide to you whatever you
```

1    need.

2          Okay.  Have a very pleasant evening.

3        (The following proceedings were held outside the

4        presence of the jury:)

5        THE COURT:  All right.  Thank you, counsel.

6        (Proceedings concluded.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                              CERTIFICATE

2

3

4    I hereby certify that pursuant to Section 753, Title 28,

5    United States Code, the foregoing is a true and correct

6    transcript of the stenographically reported proceedings held

7    in the above-entitled matter and that the transcript page

8    format is in conformance with the regulations of the

9    Judicial Conference of the United States.

10   Date:  June 27, 2023

11

12    /s/ Katie Thibodeaux, CSR No. 9858, RPR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25
```

JUROR: [1]   65/10
MR. MANI: [4]   45/2 47/2
47/20 47/22
MS. ALLSOP: [30]   15/10 17/8
17/16 18/2 18/13 18/17 18/20
19/2 20/5 21/5 22/10 24/13
27/2 27/17 28/23 30/14 30/20
31/7 31/15 31/21 32/3 32/18
33/2 33/6 34/4 35/13 47/9
48/11 90/20 90/23
MS. RICHMOND: [49]
MS. RIVERA: [58]
THE BAILIFF: [2]   89/9 89/11
THE CLERK: [4]   65/6 89/5
89/8 89/12
THE COURT: [131]

'

'the [1]   28/4

—

-and [2]   2/5 2/11

/

/s [1]   96/12

1

10 [5]   45/18 45/22 46/3
63/19 64/9
1024 [1]   15/21
1035 [1]   15/22
107 [1]   7/15
10:30 [1]   15/5
11 [2]   63/21 64/15
11:01 [1]   15/5
11:36 [1]   34/6
11:57 [1]   34/6
12 [9]   63/22 64/12 64/16
91/20 92/5 93/1 94/5 94/7
94/7
1239 [1]   22/19
1243 [1]   15/24
1244 [1]   24/14
12:11 [1]   44/14
13 [3]   41/22 63/24 64/19
13-year-old [3]   35/22 35/23
43/13
1385-1391 [2]   27/14 27/19
1391 [2]   27/14 27/19
14 [1]   61/17
14-year-old [1]   7/20
14th [2]   53/6 63/24
15 [4]   33/11 34/3 58/25
61/17
15-year [1]   37/17
16 [1]   62/17
166 [2]   14/2 20/3
17 [8]   31/3 31/5 31/13 31/15
31/23 31/24 62/2 63/12
18 [9]   1/16 4/1 18/1 25/4
53/11 54/7 54/10 54/14 62/1
19 [8]   25/24 31/3 31/5 31/13
31/15 31/23 31/24 62/7
194 [1]   21/15
1987 [1]   22/19
1990 [2]   27/14 27/19
1:00 [2]   44/6 44/14
1:00 o'clock [1]   46/12
1:11 [1]   46/7
1:15 [2]   46/7 46/22
1:19 [1]   46/22
1:23 [1]   48/9
1A [1]   59/6
1D [1]   59/13
1st [1]   1/21

2

20 [1]   15/22
2003 [1]   15/22
2018 [6]   53/2 53/4 53/6
63/18 63/21 63/24
2020 [1]   7/16
2023 [4]   1/16 4/1 56/5 96/10
21-338 [1]   1/8
22 [1]   18/2
2251 [4]   18/1 18/6 18/7 25/4
2251A [1]   18/3
2251AE [1]   18/3
2252 [1]   25/4
2256 [2]   9/24 18/7
23 [4]   31/1 31/4 31/14 31/23
24 [5]   31/2 31/4 31/15 31/24
61/1
25 [1]   31/25
26 [1]   31/25
27 [2]   61/2 96/10
28 [1]   96/4
2:00 [1]   48/9
2ND [1]   2/11

3

30 [2]   45/16 65/25
31 [2]   55/6 55/10
312 [1]   2/6
32 [1]   55/11
321 [1]   2/11
338 [1]   1/8
34 [1]   15/24
343 [1]   15/21
350 [1]   1/21
36 [1]   15/22

4

4202 [1]   2/12
4311 [1]   1/21
45 [1]   19/25
4:00 [1]   45/22
4:10 [2]   89/17 89/18
4A [6]   47/4 47/5 47/10 47/14
47/20 60/8
4B [4]   47/5 47/10 47/14
47/16
4C [5]   47/6 47/10 47/14
47/16 59/24

5

52 [1]   3/10
5th [4]   53/2 53/4 63/18
63/21

6

66 [1]   3/11

7

753 [1]   96/4
798 [1]   7/15

8

812 [2]   15/24 22/19
84 [1]   3/12
8:30 [4]   45/24 89/20 89/24
94/23

9

900 [2]   27/14 27/18
90012 [2]   1/22 2/7
90012-4202 [1]   2/12
9858 [2]   1/20 96/12
9:44 [1]   4/2

A

a.m [5]   4/2 15/5 15/5 34/6
34/6
able [1]   73/6

about [69]
above [2]   11/11 96/7
above-entitled [1]   96/7
absent [1]   46/11
abuse [4]   72/22 73/9 73/13
92/18
accepted [2]   71/16 82/10
accomplished [1]   16/23
accomplishing [1]   17/3
acknowledge [3]   66/25 67/1
67/14
acquittal [7]   4/23 4/25 5/5
5/14 13/13 13/15 39/19
actions [2]   71/5 71/16
active [1]   8/23
actively [1]   8/10
activity [9]   6/14 16/10
65/17 76/9 76/10 76/13 77/3
78/14 78/18
actual [7]   9/3 9/12 16/20
17/2 34/12 55/11 72/20
actually [25]   5/15 8/8 8/10
10/1 12/24 13/7 16/23 16/25
16/25 17/20 17/22 17/25
18/11 23/10 35/9 47/16 47/24
71/13 74/20 80/8 80/13 83/9
83/14 92/17 93/1
ad [1]   41/17
Adams [1]   15/21
adapter [5]   54/24 55/9 55/12
55/24 57/5
add [3]   12/16 20/12 27/3
addition [1]   57/8
additional [4]   27/1 29/24
40/2 92/16
address [4]   7/25 9/18 13/9
42/9
addressed [1]   5/14
adds [1]   20/1
ADITHYA [2]   2/11 4/19
adjusted [1]   14/14
admit [2]   47/12 47/15
admitted [5]   32/14 47/6 59/6
79/12 79/13
adopt [3]   6/22 6/25 10/25
adopted [1]   11/18
adult [3]   63/3 65/24 66/2
advertise [1]   72/4
advising [2]   29/1 29/6
affirmative [2]   70/19 71/19
affirmed [7]   22/18 23/23
24/3 25/12 25/13 25/14 25/16
after [4]   12/14 45/22 48/21
94/13
afternoon [1]   48/17
again [36]   8/22 13/13 15/1
20/17 24/15 27/6 27/17 29/25
35/15 39/17 40/19 41/6 41/9
43/9 55/15 57/15 58/14 60/11
60/17 63/25 65/10 65/12
69/23 72/24 76/17 77/21
78/23 82/2 82/19 83/22 85/17
86/17 91/1 94/12 94/15 94/23
against [4]   28/2 29/9 70/4
82/8
age [2]   53/23 54/2
agent [18]   4/14 4/14 54/3
54/19 55/1 55/7 55/15 55/18
56/13 56/14 56/23 61/18 62/9
62/12 62/14 62/21 71/7 92/3
agents [3]   59/7 59/14 66/1
ago [1]   64/25
agree [3]   12/23 43/8 92/22
Agreed [1]   42/16
agrees [2]   10/5 32/19
align [1]   20/7
all [83]
alleged [1]   84/12
alleging [1]   87/13

**A**

**allow [6]**   6/18 11/10 12/15
12/21 88/25 93/25
**allowed [7]**   12/7 28/8 43/5
50/16 56/5 59/3 86/17
**allowing [2]**   38/8 38/10
**ALLSOP [2]**   2/5 4/14
**almost [3]**   56/17 75/16 79/3
**already [15]**   13/16 20/22
31/9 33/24 37/3 37/9 38/5
45/1 68/25 69/14 70/13 73/22
74/7 79/13 82/9
**also [33]**   4/22 8/16 8/21
10/21 13/4 14/11 14/21 14/21
14/24 15/22 16/19 17/18 18/8
25/23 29/1 32/22 32/23 34/14
39/5 40/18 45/1 50/8 51/4
54/25 55/16 55/25 56/12
56/19 62/5 62/9 67/2 70/18
85/15
**alternate [1]**   46/19
**alternates [1]**   46/15
**alternative [1]**   21/13
**although [3]**   6/18 10/2 33/13
**always [2]**   50/19 81/5
**am [48]**   5/9 11/12 12/11
12/17 13/20 13/22 13/23 17/6
18/5 21/2 21/12 21/14 21/16
24/16 25/2 25/23 29/14 33/2
33/11 38/8 38/10 38/13 38/14
39/22 41/24 43/17 43/22
45/21 63/16 66/22 68/22 69/9
71/10 74/18 79/11 79/24
80/24 81/1 81/19 82/14 82/15
82/20 83/12 83/13 84/14
92/20 92/20 94/22
**amend [1]**   48/11
**America [2]**   1/6 2/3
**analogy [1]**   42/18
**analysis [3]**   7/2 22/5 40/16
**anatomy [1]**   80/3
**anecdotal [1]**   56/6
**anecdotes [2]**   43/5 43/18
**ANGELES [5]**   1/15 1/22 2/7
2/12 4/1
**ankles [1]**   75/24
**another [10]**   15/23 26/16
61/11 69/4 73/19 81/3 82/15
87/10 91/23 94/13
**answer [3]**   9/21 36/2 48/23
**answered [1]**   48/23
**anus [1]**   6/10
**any [71]**
**anybody [1]**   72/5
**anybody's [2]**   75/25 76/3
**anyone [2]**   89/22 92/24
**anything [14]**   9/9 20/13 21/4
30/12 30/19 33/19 34/11
34/13 41/18 44/3 44/18 73/8
90/12 94/24
**anytime [2]**   45/4 55/19
**apologize [4]**   42/23 64/4
83/12 93/6
**appeal [4]**   13/5 25/13 41/22
42/2
**appearances [2]**   2/1 4/9
**appeared [2]**   59/21 78/4
**appearing [1]**   6/12
**appellate [2]**   12/7 26/14
**appendix [1]**   7/15
**apple [2]**   50/15 50/17
**applicable [1]**   84/8
**application [5]**   13/9 20/21
26/18 30/9 37/2
**applied [3]**   8/5 20/18 25/19
**apply [8]**   29/25 70/7 72/19
78/15 82/1 82/2 82/3 83/9
**applying [2]**   68/14 70/4

**appreciate [1]**   44/10
**approach [2]**   25/21 26/25
**appropriate [2]**   25/21 26/25
**approve [2]**   5/25 6/1 68/11
**approved [2]**   5/18 41/7
**approximately [1]**   46/12
**April [2]**   53/4 63/21
**April 5th [2]**   53/4 63/21
**are [155]**
**area [17]**   6/11 7/4 10/23
61/12 63/4 72/23 73/18 74/5
74/15 75/12 75/19 76/6 77/2
80/14 87/12 87/22 87/25
**areas [1]**   87/16
**aren't [3]**   64/2 82/3 82/4
**argue [6]**   5/8 5/10 6/18
37/20 42/15 43/11
**argued [1]**   85/9
**argues [1]**   65/14
**arguing [4]**   27/5 36/21 37/21
37/23
**argument [20]**   11/9 11/13
12/1 12/19 23/7 24/21 25/8
28/13 30/5 40/22 42/18 43/6
43/16 45/11 49/14 50/10
50/12 50/14 51/3 51/5
**arguments [6]**   3/9 38/12 42/9
49/11 50/9 52/12
**arose [1]**   25/7
**arouse [1]**   25/7
**arrayed [1]**   23/5
**arrived [1]**   7/20
**art [1]**   73/19
**Arvin [7]**   23/22 27/14 27/18
28/7 29/14 29/23 30/2
**Arvine [1]**   29/5
**as [117]**
**aside [5]**   83/6 83/7 83/24
84/17 84/18
**ask [33]**   5/3 9/17 11/8 15/8
21/4 21/9 24/12 30/22 34/9
34/10 34/25 35/21 36/18
36/19 43/20 44/17 44/22 45/1
45/10 45/10 46/25 47/8 48/10
48/25 52/13 89/4 90/2 90/11
90/19 91/14 93/11 94/13
94/17
**asked [3]**   32/23 47/15 85/15
**asking [11]**   28/19 28/20
77/14 81/1 81/19 82/20 83/6
84/19 84/21 86/11 87/21
**aspect [2]**   12/8 38/7
**assembled [1]**   56/24
**assess [1]**   75/3
**associate [2]**   76/10 88/3
**associated [8]**   54/21 61/12
76/9 76/12 77/3 87/12 87/23
87/25
**association [1]**   59/5
**assume [3]**   49/22 50/5 91/16
**attach [1]**   28/13
**attaching [1]**   28/2 29/9
**attempt [2]**   49/14 82/23
**attempting [1]**   37/20
**attention [5]**   27/13 35/15
47/2 74/24 78/3
**attire [2]**   8/14 77/9
**attorney [9]**   49/16 49/20
49/23 50/5 51/5 51/7 51/9
51/11 51/16
**ATTORNEY'S [1]**   2/4
**attorneys [2]**   49/13 49/24
**attract [1]**   73/25
**audience [2]**   22/23 35/9
**audio [4]**   58/25 59/2 59/3
59/12
**AUSA [1]**   2/5
**automatically [2]**   38/20
43/15

**available [1]**   90/25
**average [4]**   59/2 62/8 88/8
88/9
**away [3]**   46/13 60/22 63/7

**B**

**baby [1]**   86/13
**babysitter [2]**   7/17 7/20
**back [27]**   12/6 12/21 14/20
33/10 34/3 37/4 38/10 44/5
45/7 45/23 45/24 46/2 51/25
55/21 65/10 65/12 69/2 89/24
91/10 91/24 92/4 92/8 92/12
92/23 94/11 94/14 94/21
**background [2]**   42/14 87/4
**backpack [1]**   88/20
**backups [1]**   63/9
**backyard [1]**   87/2
**bad [2]**   18/5 85/22
**bag [2]**   59/10 59/15
**bailiff [4]**   89/5 89/8 89/11
89/15
**based [3]**   26/22 38/12 51/18
75/1 77/22 79/25 81/4 81/21
92/14
**basic [1]**   87/3
**basically [7]**   9/7 11/9 11/19
18/9 19/5 24/25 28/20
**basis [2]**   13/4 35/12
**bathroom [30]**   7/19 43/14
54/23 55/3 60/25 61/8 61/9
61/13 62/4 62/14 62/15 62/24
63/3 63/4 63/14 65/17 69/25
71/23 71/25 75/15 75/16
76/15 76/20 76/22 80/15
83/21 87/3 87/18 87/21 87/24
**bathrooms [2]**   63/2 88/3
**bathtub [1]**   86/13
**batteries [1]**   62/11
**battery [1]**   62/10
**be [113]**
**beach [1]**   87/2
**bear [1]**   82/16
**bears [2]**   50/20 55/8
**beautiful [1]**   87/1
**because [62]**
**bed [4]**   9/13 59/12 59/14
88/20
**bedroom [14]**   7/19 61/8 61/9
61/13 61/16 62/14 62/24 63/3
63/4 63/14 76/15 83/17 87/14
87/17
**been [13]**   5/18 8/10 23/10
25/12 25/19 27/22 41/7 67/1
67/2 68/25 76/1 76/2 90/8
**before [7]**   7/20 15/14 15/16
21/9 25/9 44/18 59/1
**begins [1]**   21/1
**behalf [4]**   2/3 2/9 4/12 4/19
**behavior [3]**   67/13 83/3 83/7
**beholder [1]**   80/1
**being [17]**   6/7 17/5 20/18
33/1 33/23 38/20 38/20 42/9
42/21 47/6 48/5 48/6 48/6
50/7 52/13 76/20 77/4
**believe [4]**   8/7 22/12 28/7
35/18
**believes [3]**   53/21 66/12
85/1
**belonged [1]**   82/25
**bench [1]**   64/1
**besides [1]**   87/10
**best [1]**   83/19
**bestiality [4]**   72/21 73/8
73/13 81/23
**better [2]**   16/17 31/23
**beyond [12]**   29/23 50/25 53/8
53/22 54/13 57/11 58/6 66/8
66/14 67/18 82/17 85/2

**B**

bias [1]   70/4
biased [1]   82/8
biases [2]   69/1 84/17
big [1]   64/5
bind [1]   81/9
bit [2]   30/10 37/4
bites [2]   50/14 50/17
blah [3]   41/13 41/14 41/14
blunt [1]   5/23
boards [2]   56/16 56/17
bodies [7]   58/24 59/8 66/3
 79/13 80/21 86/2 88/23
bore [2]   55/12 55/16
both [5]   14/18 31/21 39/14
 90/19 92/22
bottom [3]   21/1 72/15 74/18
breach [1]   68/6
breaks [1]   89/21
breasts [1]   23/1
brief [5]   5/2 7/14 12/22
 40/22 73/16
briefing [1]   11/1
briefly [1]   29/13
bring [7]   44/18 44/25 47/1
 55/19 93/7 93/12 94/14
bringing [1]   21/2
brings [1]   73/24
brought [1]   83/19
brown [2]   81/9 81/10
bunch [1]   26/3
burden [5]   50/18 50/21 50/24
 53/10 67/17 68/20 69/9 82/17
 84/25
buried [2]   60/9 60/15
buttocks [1]   23/1

**C**

CA [3]   1/22 2/7 2/12
CALIFORNIA [5]   1/2 1/15 4/1
 54/4 56/25
call [3]   4/8 10/17 37/22
called [1]   55/21
calls [1]   46/2
came [6]   32/17 54/7 54/10
 59/25 71/9 73/4
camera [21]   54/22 54/24 55/3
 55/25 56/2 56/10 56/23 57/2
 60/25 61/4 61/23 61/23 61/24
 62/12 62/15 62/16 71/24
 75/14 77/15 77/18 82/24
cameras [19]   7/17 7/19 7/21
 56/14 56/15 56/20 57/9 61/5
 61/15 62/4 62/13 62/20 62/21
 62/23 62/25 63/1 69/25 71/23
 87/16
CAMILLE [1]   2/5
can [54]
can't [18]   7/1 29/23 29/24
 33/16 38/16 42/15 42/23 62/4
 62/5 69/4 69/5 69/11 69/16
 69/17 79/17 79/19 92/3 92/11
cannot [4]   69/21 70/4 79/6
 80/23
capability [1]   56/10
capable [1]   56/1
captioned [1]   43/2
captions [1]   28/10
capture [2]   21/19 83/25
captured [4]   8/12 16/10
 69/25 75/16
card [7]   54/23 55/5 55/9
 55/11 55/24 57/4 57/5
care [1]   14/14
carefully [2]   63/8 65/22
carries [1]   37/17
case [98]
cases [13]   7/3 8/1 10/20

15/20 16/4 25/20 25/21 26/14
26/25 35/3 36/11 48/5 56/3
56/19 59/16 64/25 71/3 71/24
75/16 76/16 76/18 77/16 89/13
casual [1]   73/22
catch [1]   18/5
CATHARINE [1]   2/5
Catherine [1]   4/12
caused [1]   53/17
caution [1]   26/17
cautionary [1]   34/13
cautioned [1]   28/16
ceiling [1]   61/19
cell [5]   46/1 62/1 62/16
 65/25 86/12
CENTRAL [1]   1/2
certain [5]   14/25 22/16 29/3
 81/12 81/17
certainly [1]   77/3
CERTIFICATE [1]   96/1
certify [1]   96/4
cetera [3]   42/2 42/2 42/14
chance [2]   50/13 82/16
change [9]   33/12 41/14 79/25
 79/25 81/4 81/7 81/12 81/16
 81/17
changes [3]   34/2 48/1 80/21
changing [1]   81/11
character [1]   32/2
characteristic [1]   22/21
characteristics [1]   81/16
charge [9]   16/19 67/12 67/16
 68/18 82/13 84/2 84/2 85/14
 86/7
charged [8]   50/22 52/24
 54/21 63/18 63/20 63/23
 84/16 86/9
charger [1]   62/16
chart [3]   32/11 32/13 32/15
charts [2]   32/7 32/10
chatting [1]   65/20
check [5]   56/4 58/10 58/11
 72/24 87/20
checked [1]   14/5
cheerleading [1]   65/19
child [34]   16/20 16/23 17/3
 22/16 22/22 23/22 27/23 43/2
 43/3 52/22 59/23 60/6 60/10
 60/15 60/17 60/20 60/23 65/9
 66/4 66/5 66/15 71/11 71/15
 72/7 77/12 79/14 79/16 80/4
 86/3 86/13 86/16 88/15 88/23
 89/2
child's [1]   25/5
children [9]   23/6 26/9 35/19
 36/5 36/10 42/11 80/18 81/15
 86/2
children's [3]   7/17 61/8
 61/9
China [2]   55/13 57/6
choice [2]   46/15 60/21
chose [6]   67/12 67/15 68/17
 82/12 84/1 84/2
circuit [60]
Circuit's [1]   34/21
circuits [2]   41/8 41/11
citation [2]   17/22 17/23
cite [4]   24/13 24/13 27/17
 33/18
cited [3]   7/14 8/1 26/14
cites [2]   15/23 33/17
citing [1]   24/24
clarification [4]   20/20 22/1
 26/5 40/2
clarify [1]   31/8
clarity [1]   30/8
clear [8]   23/10 35/11 39/4
 40/1 41/3 67/25 85/6 87/12
clearly [2]   65/16 87/7
clerk [7]   45/2 46/1 46/10
 47/19 89/7 90/3 90/10

clicked [1]   93/6
closely [2]   7/10 76/1
closest [1]   7/12
closing [16]   3/9 43/6 43/23
 45/11 49/11 49/14 50/8 50/10
 50/11 50/13 50/14 51/2 51/5
 52/15 86/22 93/15
clothed [4]   26/11 77/23
 77/23 80/6
coach [1]   8/21
Code [1]   96/5
coerced [1]   19/22
cohort [1]   93/20
cold [1]   82/7
colleague [1]   4/13
collection [2]   60/10 60/17
collections [2]   60/7 88/15
color [1]   81/8
comb [1]   75/21
combs [1]   86/24
come [10]   10/21 14/20 33/10
 34/3 44/5 44/25 45/23 45/24
 73/2 73/3
comes [9]   5/24 12/6 12/21
 13/14 38/10 72/10 76/14 83/4
 92/14
coming [2]   32/25 60/3
comment [2]   15/17 51/24
comments [2]   14/9 21/8
commerce [6]   53/19 53/25
 54/18 56/8 57/14 83/1
common [13]   56/4 68/1 72/2
 72/24 73/1 74/22 78/24 79/4
 79/22 81/21 84/21 87/20 88/2
commonly [1]   87/23
companion [1]   25/11
compatible [1]   54/24
competing [1]   52/12
completely [1]   78/9
complicated [2]   38/17 56/16
components [5]   56/15 56/20
 56/21 61/20 61/22
computer [5]   59/22 60/4 72/1
 79/17 91/7
concealed [1]   62/18
concede [1]   80/12
concern [4]   15/1 21/22 21/23
 92/15
concerned [5]   16/15 19/12
 21/16 32/8 52/12
concerns [1]   26/19
conclude [1]   88/25
concluded [3]   16/5 16/8 95/6
conclusion [2]   10/2 58/20
condone [1]   67/13
condoning [1]   83/8
conduct [32]   19/23 20/2 25/3
 52/25 53/14 53/15 57/19
 57/23 61/12 66/10 67/6 67/20
 68/3 68/12 71/5 72/12 72/14
 72/18 72/20 73/5 74/23 76/21
 77/7 77/20 79/2 79/20 79/21
 81/22 81/23 85/13 85/24 88/4
conducted [1]   78/11
Conference [1]   96/9
confirm [1]   83/17
confirmed [2]   45/2 54/4
confirming [1]   65/5
conformance [1]   96/8
confusing [5]   5/16 25/24
 27/8 29/25 82/4
Congress [1]   73/3
connoting [1]   6/11
consider [21]   6/4 11/22 12/8
 12/16 23/13 33/22 38/11
 57/25 58/4 58/9 58/12 61/11
 69/12 74/16 76/17 77/22 78/1
 85/18 87/10 87/22 87/24

**C**

consideration [2]   22/3 40/14
considered [6]   9/3 11/23
13/17 22/4 40/15 41/13
considering [3]   30/7 80/25
81/1
consistent [4]   10/15 34/15
34/21 40/8
consists [1]   22/23
conspiracy [3]   8/7 16/21
17/2
conspired [1]   16/24
constitute [1]   86/16
constitutes [3]   12/8 16/6
43/10
constitutional [2]   38/15
39/25
contact [1]   90/3
contain [2]   56/20 78/11
contained [3]   52/5 56/15
59/23
contains [1]   81/22
content [5]   75/2 76/18 76/19
77/22 78/2
context [2]   13/12 42/24
contraband [5]   63/15 91/4
92/3 92/5 92/11
contrary [1]   28/25
contrast [1]   62/20
control [3]   12/24 48/21 91/5
controlling [1]   6/3
controls [2]   49/19 59/3
conversation [1]   42/18
conversations [3]   42/10 43/7
43/18
convict [1]   71/15
convicted [1]   17/2
conviction [2]   72/7 80/20
convictions [1]   69/13
copies [1]   44/10
copy [4]   47/25 48/13 49/2
90/5
cords [1]   64/2
coreced [1]   19/21
corners [3]   67/22 81/20
85/16
corollary [1]   87/15
correct [12]   9/15 12/10
17/15 17/17 17/18 17/23
20/11 28/24 33/6 40/17 91/13
96/5
corrections [1]   44/7
corroborating [2]   85/24
88/14
corroborative [1]   36/1
cost [1]   56/18
could [22]   9/17 13/5 13/7
21/18 27/24 36/16 39/20
41/21 43/10 46/14 46/15 55/2
56/1 61/25 65/1 75/18 76/21
83/15 87/24 88/2 92/7 92/8
couldn't [2]   62/19 93/17
counsel [40]   2/1 4/10 4/13
5/3 11/8 15/8 19/18 21/10
24/12 24/20 30/22 34/9 34/16
36/19 37/6 42/13 42/25 43/4
43/20 44/17 45/1 45/10 45/20
46/10 46/25 47/1 47/15 47/17
48/10 48/25 49/11 52/14 85/9
85/15 86/5 86/22 90/2 90/19
91/15 95/5
count [25]   17/15 17/15 17/16
19/17 19/23 33/1 48/4 48/4
48/4 48/5 48/5 48/6 53/1
53/3 54/2 54/6 54/9 63/17
63/20 63/23 66/13 75/10
75/10 75/10 82/18
counter [3]   75/15 75/19

86/12 91/11 95/19
counters [1]   70/9
counting#[2665]   70/9
counts [17]   11/19 52/25
54/14 57/11 58/7 59/25 67/13
69/12 70/12 71/8 71/11 77/25
78/1 84/12 85/2 85/12 89/1
couple [10]   5/12 8/1 14/9
19/15 30/24 67/5 73/16 73/21
76/24 89/16
course [8]   9/22 31/22 49/12
59/1 59/12 60/2 72/2 88/17
court [27]   1/1 1/20 6/21 8/9
9/6 10/1 12/7 12/12 13/17
14/2 15/25 16/4 16/21 17/1
21/14 23/25 26/23 27/12
27/15 29/5 29/6 31/3 39/2
40/1 49/1 49/6 73/22
court's [11]   5/4 5/13 8/3
9/18 13/24 23/24 27/13 29/17
36/2 36/13 47/1
courtroom [4]   46/3 48/13
71/9 91/12
courts [2]   21/22 26/17
covered [4]   23/12 31/5 51/21
52/9
covers [1]   31/24
coyness [1]   78/13
CR [1]   1/8
cravings [1]   25/7
crazy [1]   76/22
create [1]   66/10
created [3]   26/3 63/9 66/5
creates [2]   35/6 35/6
creating [2]   53/16 57/20
creator [5]   35/11 35/18
35/20 36/23 39/10
crime [4]   18/11 37/17 50/21
84/3
crimes [4]   19/12 19/13 83/25
84/11
criminal [4]   50/17 67/11
85/10 85/24
criminalize [2]   39/15 79/21
critical [2]   8/3 74/20
critically [1]   78/24
cropped [1]   76/2
cropping [1]   47/14
cross [2]   70/22 71/20
cross-examine [2]   70/22
71/20
crossed [1]   14/7
CRR [1]   96/12
Cruel [1]   37/22
crystal [1]   39/3
CSR [2]   1/20 96/12
curb [1]   23/8
cure [1]   29/9
curling [1]   65/19
curtain [2]   75/22 86/25
custody [2]   4/20 91/5

**D**

dad [1]   54/6
dark [1]   10/10
data [3]   55/2 56/1 56/11
date [2]   12/23 96/10
dates [1]   17/18
daughter [3]   53/2 61/6 87/16
daughter's [3]   61/9 61/16
62/23
DAY [1]   1/14
days [1]   67/5
DC [10]   5/13 5/24 5/25 6/15
6/16 6/19 7/3 7/6 10/11 16/2
deals [2]   6/25 9/2
decide [14]   13/7 13/8 24/2
26/7 28/18 29/3 51/14 51/18
52/21 68/18 68/19 69/15 82/2

82/5
84/20   [1]   28/4
deciding [3]   68/10 68/14
69/14
decision [15]   6/8 10/25
12/13 12/25 13/5 25/2 27/20
29/17 34/20 68/18 69/5 69/17
69/21 83/24 88/2
decisions [2]   33/25 34/2
deeming [1]   7/4
deep [7]   59/20 60/3 60/12
60/15 60/18 79/16 88/16
deeply [1]   79/23
defendant [52]
defendant's [4]   10/21 12/18
14/24 42/14
DEFENDER'S [1]   2/10
defense [44]   4/17 5/9 11/8
15/12 19/2 19/9 19/24 20/14
21/10 22/12 23/7 24/8 24/17
28/12 28/19 29/12 30/14
30/18 31/7 34/9 36/19 38/11
38/24 40/3 40/5 42/12 42/25
43/4 43/11 43/20 44/21 45/17
47/1 47/15 47/17 66/20 70/21
70/24 85/9 85/15 86/5 86/22
90/12 91/14
define [1]   73/20
defined [1]   73/5
definition [11]   9/22 9/23
16/3 16/5 16/11 20/15 43/9
68/16 71/14 72/13 81/22
definitional [1]   18/7
definitions [1]   72/17
delete [1]   63/6
deleted [1]   66/2
deliberate [2]   69/3 89/17
deliberation [1]   69/22
deliberations [1]   48/21
demonstrative [2]   59/4 59/5
denied [1]   13/18
DEPARTMENT [1]   2/4
depending [1]   81/11
depict [1]   67/20
depicted [7]   60/23 65/9 77/6
77/9 77/25 80/11 87/7
depicting [1]   7/21
depiction [13]   20/2 21/20
35/3 35/6 39/8 39/11 57/20
66/11 73/24 75/11 75/12 78/12
78/21
depicts [1]   79/1
deputy [1]   48/13
designation [1]   41/14
designed [7]   8/17 21/21 35/3
36/23 37/7 62/15 78/22
designing [1]   77/12
desire [3]   6/13 52/4 69/5
despicable [1]   67/9
despite [2]   58/25 63/25
detached [1]   82/7
detecting [2]   61/20 61/22
detector [6]   61/15 61/16
61/19 61/21 62/6 62/17
detectors [1]   63/1
determination [2]   51/8 58/4
determine [7]   17/1 22/14
23/15 23/18 24/5 74/25 79/1
determining [5]   56/6 57/25
74/14 75/4 78/25
developed [1]   41/10
development [1]   80/4
devices [2]   54/20 59/20
DFPD [2]   2/10 2/11
did [26]   14/17 15/8 15/11
16/4 17/1 17/19 29/23 30/25
46/11 47/15 48/10 48/12 63/6
63/11 68/9 68/11 69/10 70/3
71/12 79/12 83/2 85/10 86/7

**D**

**did . . . [3]**   86/22 88/14 90/10
**didn't [29]**   14/8 17/1 31/4
31/14 31/25 32/1 32/1 32/3
32/17 32/24 32/25 34/10
34/13 65/2 65/23 70/20 70/23
71/3 71/19 71/20 72/24 73/2
73/3 73/11 73/12 73/14 76/22
82/20 91/23
**difference [1]**   16/24
**different [11]**   18/10 25/20
28/20 49/25 52/22 53/8 55/2
60/4 60/17 72/17 77/16
**differently [2]**   50/4 70/15
**difficult [4]**   20/23 26/2
57/24 82/15
**difficulties [1]**   66/18
**digital [8]**   54/20 56/13
56/14 56/15 56/19 56/23 57/9
59/20
**disagreement [1]**   52/1
**disagrees [1]**   51/7
**disapprove [1]**   68/11
**discuss [7]**   13/12 14/21
14/21 15/2 15/2 72/19 89/22
**discussed [4]**   13/15 21/17
47/12 86/21
**discusses [1]**   7/10
**discussion [5]**   5/13 13/13
16/1 16/16 57/17
**disgust [1]**   84/18
**disgusted [1]**   69/24
**disgusting [3]**   67/8 85/10
85/23
**disk [1]**   91/23
**dismissed [2]**   11/19 12/19
**display [2]**   91/8 93/14
**displayed [2]**   6/10 25/5
**displays [1]**   73/24
**dispute [3]**   47/7 71/18 72/9
**disputed [1]**   14/4
**disputes [2]**   51/15 83/2
**disputing [1]**   71/22
**distinguishable [1]**   8/22
**distressing [1]**   67/8
**district [6]**   1/1 1/2 1/4
23/24 23/24 29/6
**districts [1]**   16/2
**disturbed [2]**   68/9 69/24
**disturbing [3]**   78/9 82/11
83/6
**DIVISION [1]**   1/2
**do [60]**
**docket [3]**   14/2 20/3 21/15
**does [13]**   6/1 14/11 21/6
26/12 39/15 43/12 43/14
49/21 75/13 77/5 78/7 79/20
94/17
**doesn't [19]**   5/25 16/23
20/22 26/5 26/9 36/10 38/24
57/1 76/11 77/19 78/10 78/15
79/5 79/19 79/25 80/22 80/23
81/4 81/17
**dog [1]**   87/2
**doing [4]**   78/16 81/19 92/2
93/15
**don't [53]**
**done [16]**   14/1 39/13 50/7
50/9 50/11 50/12 67/21 69/24
82/9 82/10 82/22 82/22 84/1
91/10 94/18 94/19
**door [3]**   56/4 72/25 87/20
**Dost [45]**   5/17 6/1 6/2 6/25
7/1 8/4 8/8 8/14 8/16 11/6
11/11 13/10 13/18 13/21
14/22 15/2 20/17 20/18 20/21
23/9 24/23 25/10 25/11 25/11
25/13 25/17 25/19 26/18

26/22 26/23 28/25 29/1 30/4
33/13 35/15 35/18 36/14 37/2
37/15 38/22 38/24 38/19
38/25 41/6 41/6 81/1
**Dost-based [1]**   26/22
**doubt [12]**   50/25 53/9 53/22
54/13 57/11 58/6 66/8 66/14
67/5 67/18 82/17 85/3
**down [6]**   18/8 72/11 73/21
75/24 83/4 94/21
**draft [3]**   13/24 14/6 15/9
**draw [5]**   27/13 35/12 35/14
74/24 87/15
**dressed [1]**   65/19
**drew [1]**   78/3
**drive [10]**   54/25 55/3 55/15
56/2 56/10 57/6 59/25 60/16
82/25 88/19
**drivers [1]**   63/10
**drugs [1]**   92/11
**drying [1]**   43/14
**due [1]**   38/1
**duplicates [1]**   31/17
**duplicative [2]**   31/2 31/15
**during [8]**   40/22 43/6 47/16
49/24 51/4 66/18 71/1 93/15
**duty [2]**   83/8 84/17

**E**

**e-mailed [1]**   48/12
**E-S-P-I-N-A-L [1]**   89/10
**each [10]**   13/23 14/3 23/15
24/5 27/24 53/21 70/12 75/6
80/16 82/18
**earlier [1]**   65/1
**easiest [1]**   15/16
**East [1]**   2/11
**easy [2]**   19/5 19/7
**edited [1]**   76/2
**Eighth [2]**   8/20 26/16
**either [6]**   23/13 27/10 32/18
33/16 57/3 76/24
**element [9]**   19/18 34/24
36/20 53/23 54/24 53/25
54/13 54/16 82/18
**elements [10]**   22/6 33/1
40/18 41/2 41/2 50/21 53/8
53/22 85/2 89/1
**elicit [11]**   8/18 21/21 35/3
36/23 37/7 39/12 58/21 59/19
78/22 86/3 88/7
**elicited [2]**   36/7 88/10
**eliciting [4]**   36/11 39/9
58/17 88/12
**elide [1]**   8/2
**else [22]**   9/9 9/10 20/13
30/12 30/19 41/18 44/3 44/18
59/9 59/18 60/3 60/6 60/24
61/3 62/13 63/6 72/5 79/18
82/24 83/1 90/12 94/24
**embraces [2]**   53/9 84/25
**employed [2]**   19/20 19/22
**encouraged [1]**   72/25
**encouraging [1]**   8/12
**end [5]**   10/24 28/11 31/18
38/12 53/25
**endear [1]**   70/3
**endeavor [1]**   94/25
**ended [1]**   60/12
**ends [1]**   41/4
**engage [6]**   6/14 57/19 66/10
76/21 78/13 78/17
**engaged [2]**   25/1 25/3
**engagement [1]**   45/21
**enough [8]**   29/3 38/18 56/12
64/6 79/11 79/18 79/19 81/16
**entire [1]**   7/4
**entirely [2]**   41/3 79/3
**entirety [3]**   75/16 80/15

80/15
**entitled [1]**   96/1
**entry [1]**   32/13
**equipment [1]**   91/2
**Espinal [1]**   89/10
**essence [1]**   28/21
**essentially [2]**   20/3 71/4
**establish [1]**   53/8
**established [1]**   40/7
**establishes [3]**   54/13 60/19
66/13
**et [3]**   42/2 42/2 42/14
**evaluate [1]**   81/21
**even [11]**   10/15 11/18 13/5
18/1 26/10 36/9 58/11 78/25
80/10 82/1 94/12
**evening [3]**   89/23 90/16 95/2
**event [1]**   37/11
**eventually [1]**   55/4
**ever [3]**   30/3 47/17 68/25
**every [8]**   53/21 58/10 68/9
74/5 74/9 74/10 82/17 85/18
**everybody [4]**   10/5 90/16
94/18 94/19
**everybody's [1]**   94/8
**EVID [1]**   3/6
**evidence [42]**   7/18 10/3 10/6
27/9 32/1 32/2 42/15 49/13
49/15 49/16 49/18 49/22 50/4
50/6 51/6 51/10 51/13 51/15
51/17 51/19 52/4 53/20 54/1
54/12 55/22 57/10 58/4 58/12
58/15 58/19 60/19 61/14 62/6
63/16 66/8 66/13 83/14 83/19
85/1 85/19 86/19 88/24
**exact [2]**   10/11 60/7
**exacting [2]**   68/15 69/8
**exactly [3]**   14/12 69/8 88/17
**examine [3]**   55/20 70/22
71/20
**examiners [1]**   57/2
**example [8]**   10/10 14/21 28/9
31/1 34/19 36/3 51/9 81/3
**examples [1]**   79/9
**Excel [1]**   47/11
**except [1]**   13/15
**excerpt [1]**   32/16
**excite [1]**   74/1
**exciting [1]**   87/22
**exclusive [2]**   26/1 86/18
**exclusively [3]**   39/4 56/17
56/25
**excuse [3]**   47/6 53/14 82/21
**exhaustive [1]**   26/1
**exhibit [37]**   3/6 32/13 47/13
47/15 55/6 55/7 55/10 55/11
55/14 55/16 58/7 59/2 59/6
59/11 59/13 59/16 59/24 60/8
60/14 61/17 61/17 62/1 62/2
62/17 63/4 64/9 64/12 64/15
64/19 65/25 73/14 91/20 92/5
93/1 94/5 94/7 94/7
**exhibition [32]**   6/8 6/18 7/5
7/23 8/4 9/8 10/12 10/18
15/19 16/6 20/16 22/3 22/17
22/22 23/3 23/3 23/4 34/18
37/16 40/15 43/10 57/22 58/1
72/23 73/17 73/23 74/6 74/9
74/14 74/23 85/12 86/10
**exhibits [13]**   6/13 41/22
41/23 41/25 42/5 45/2 47/3
47/20 61/1 62/7 63/19 63/21
65/9
**expect [1]**   45/11
**experience [1]**   56/22
**experiences [1]**   56/6
**explain [1]**   70/19
**explained [2]**   55/1 55/25
**explanation [1]**   36/19

## E

**explicit [21]** 19/23 25/3
53/14 53/15 57/19 57/23
66/10 67/20 72/12 72/13
72/18 72/20 73/4 74/22 77/6
77/20 78/11 79/2 79/20 81/22
85/13
**explicitly [2]** 29/11 40/23
**exposed [3]** 65/16 87/7 87/9
**exposure [1]** 74/5
**extent [6]** 13/15 20/15 20/16
22/4 37/6 40/15
**external [1]** 63/10
**extra [1]** 27/3
**extremely [1]** 5/16

## F

**F.2d [3]** 22/19 27/14 27/18
**F.2nd [1]** 15/24
**F.3d [1]** 15/21
**face [1]** 80/10
**facility [1]** 56/7
**fact [17]** 9/8 14/11 16/1
38/12 39/7 39/11 39/13 47/13
49/17 49/22 50/6 51/6 57/1
71/3 72/6 72/25 81/6
**factor [50]**
**factors [71]**
**facts [12]** 7/10 29/14 51/18
58/4 70/5 70/7 71/22 71/22
72/9 81/12 83/3 83/9
**factual [2]** 23/18 51/15
**fair [1]** 70/6
**fairly [1]** 66/22
**familiar [1]** 29/14
**family [3]** 69/25 71/23 72/4
**family's [1]** 63/14
**far [2]** 43/12 47/7
**favor [2]** 78/8 78/10
**fed [1]** 16/15
**federal [2]** 2/10 7/15
**feel [11]** 34/23 38/3 52/2
52/9 68/9 69/18 69/20 69/23
70/4 94/13 94/24
**feels [1]** 84/18
**few [1]** 44/7
**Fifth [1]** 78/12
**figure [1]** 86/15
**file [6]** 59/25 60/1 60/9
60/14 60/20 88/16
**filed [2]** 19/25 21/14
**Files [1]** 65/23
**filing [1]** 14/24
**final [7]** 13/24 14/7 15/10
17/6 31/14 44/4 48/19
**finally [5]** 16/14 55/14 56/9
64/19 88/5
**find [11]** 28/8 37/16 37/16
40/12 67/6 67/8 69/7 72/2
84/21 86/11 87/21
**finding [5]** 8/3 22/3 40/14
78/8 78/10
**finds [2]** 11/24 13/18
**fine [5]** 44/8 46/16 46/18
48/8 90/11
**finished [1]** 77/1
**first [21]** 4/10 8/7 9/18
19/15 23/11 26/16 35/14 50/9
53/1 53/11 54/2 54/13 54/19
55/5 57/15 58/16 58/23 72/20
75/11 80/8 92/16
**fit [1]** 86/8
**fits [1]** 86/9
**five [5]** 22/5 40/16 44/6
72/17 89/18
**flagged [1]** 19/17
**Floor [1]** 2/6
**focal [8]** 26/9 75/11 75/17

75/22 75/25 76/4 80/9 80/13
76/11 76/23 77/15 87/15
65/21 80/6 87/4 87/5 87/8
87/11
**focusing [1]** 57/17
**folder [2]** 59/21 60/12
**foldering [1]** 60/16
**folders [1]** 59/23
**follow [3]** 11/12 20/23 89/15
**following [19]** 4/6 15/6
25/25 27/16 27/20 34/7 44/15
45/8 46/8 46/23 48/15 74/13
74/16 74/19 74/25 89/25
90/17 94/1 95/3
**follows [1]** 23/25
**footnote [2]** 9/5 9/18
**footnotes [1]** 8/2
**foregoing [1]** 96/5
**foreground [1]** 86/25
**foreign [5]** 53/18 53/25
54/18 56/8 57/14
**forensic [3]** 56/13 56/23
57/2
**forgot [1]** 62/3
**form [3]** 47/24 48/11 90/6
**format [1]** 96/8
**forth [1]** 91/25
**found [6]** 8/9 9/7 28/15
54/25 55/4 56/3
**four [3]** 67/22 81/20 85/16
**fourth [4]** 72/6 77/21 78/7
80/7
**frame [1]** 35/16
**framed [2]** 37/5 37/6
**frankly [5]** 6/16 20/23 29/25
37/2 38/3
**fray [1]** 52/12
**free [3]** 52/2 94/13 94/24
**friends [7]** 42/11 42/19 43/7
43/19 61/6 65/20 87/17
**front [6]** 42/21 64/1 75/19
76/15 76/25 94/9
**fully [3]** 26/10 77/23 80/6
**fulsome [1]** 16/18
**functionally [1]** 61/21
**further [3]** 11/1 51/23 52/3
**FX [1]** 7/15

## G

**GABRIELA [1]** 2/10
**Gabriella [1]** 4/18
**Galvan [1]** 54/10
**garage [1]** 76/10
**gave [4]** 14/6 27/21 31/9
31/11
**geared [1]** 39/8
**general [2]** 75/8 87/24
**generally [3]** 52/7 76/8
76/12
**genital [1]** 86/23
**genitalia [4]** 6/10 23/1
73/14 76/5
**genitals [16]** 43/2 57/22
58/1 58/8 65/13 65/15 65/21
72/23 73/17 73/25 74/5 74/15
75/12 85/12 86/10 87/11
**gentlemen [4]** 48/18 49/7
89/14 94/3
**GEORGE [1]** 1/3
**get [19]** 7/12 20/10 38/24
41/21 44/4 48/25 50/14 50/17
60/5 66/24 70/14 74/17 76/16
82/15 82/18 90/7 90/12 90/24
92/7
**gets [4]** 50/9 50/11 50/13
51/2
**getting [4]** 63/13 65/19 78/4
78/5
**girl [2]** 43/14 87/9

**girls [7]** 8/25 63/13 67/6
**girls' [1]** 83/23
**give [31]** 11/22 13/23 14/8
14/18 14/19 23/19 24/1 25/22
26/3 27/17 28/5 28/17 29/2
29/7 31/3 31/4 31/21 32/18
39/23 40/2 41/25 44/6 46/1
52/3 65/2 75/6 81/8 82/5
82/6 92/8 92/8
**given [5]** 7/3 24/4 33/20
41/23 90/3
**giving [2]** 29/19 38/9
**go [22]** 8/16 13/6 15/15 17/5
17/7 29/23 43/12 45/21 51/25
53/20 53/24 58/14 63/17
65/12 69/2 69/17 73/21 75/9
91/10 92/19 92/25 94/21
**goes [2]** 38/9 41/5
**going [51]**
**gone [2]** 89/17 90/24
**Good [4]** 4/11 4/16 4/18
48/17
**got [1]** 59/1
**gotten [1]** 76/25
**government [88]**
**government's [29]** 8/2 22/10
54/1 55/6 55/10 55/11 55/14
58/15 59/4 59/6 59/11 59/13
59/16 59/24 61/1 61/17 61/17
61/25 62/2 62/7 63/18 63/21
64/12 65/9 65/24 67/17 73/15
78/20 79/2
**granddaughter [1]** 86/13
**grandma [1]** 86/12
**graphic [3]** 73/7 73/10 81/23
**great [4]** 18/19 46/6 48/8
94/19
**green [4]** 51/10 81/5 81/6
81/10
**grooming [1]** 9/10
**guarantee [1]** 76/11
**guarded [1]** 28/2
**guess [5]** 5/12 11/5 12/11
33/10 34/24
**guidance [2]** 27/1 35/12
**guide [4]** 27/23 58/9 75/8
86/19
**guidelines [2]** 6/4 33/21
**guilty [10]** 11/25 12/6 12/21
37/17 38/10 66/14 68/21
71/10 71/13 84/22
**guns [1]** 92/11
**guy [1]** 26/8
**guys [6]** 14/19 17/21 18/5
18/8 40/9 92/22
**GW [1]** 1/8

## H

**had [34]** 5/3 7/16 8/10 10/8
10/8 10/9 10/16 16/5 16/10
17/22 23/25 26/8 27/22 35/19
36/3 41/11 43/7 47/5 53/18
54/3 56/10 59/20 60/9 61/21
62/7 66/2 67/4 68/6 68/7
77/1 79/12 81/15 82/25 88/15
**hair [2]** 65/19 75/21
**half [4]** 14/19 14/20 15/4
46/13
**hand [3]** 27/25 65/3 71/10
**happened [3]** 68/8 71/2 72/8
**happens [1]** 76/10
**happy [1]** 5/10
**hard [14]** 38/21 54/25 55/3
55/15 56/2 56/10 57/6 59/25
60/16 71/12 75/17 76/4 82/25
88/19
**has [53]**
**hasn't [2]** 67/14 74/8

**H**

have [125]
haven't [3]   45/23 67/21
  68/20
having [4]   76/25 79/14 82/10
  87/7
he [81]
head [1]   75/24
hear [5]   24/7 24/17 32/1
  33/9 67/4
heard [15]   47/5 51/17 53/1
  54/3 54/19 56/12 62/9 69/13
  69/19 70/13 71/6 73/5 73/6
  85/11 87/19
held [15]   4/6 15/6 34/7
  44/15 45/8 46/8 46/23 48/15
  55/7 55/15 89/25 90/17 94/1
  95/3 96/6
help [1]   70/25
Henry [3]   7/14 7/19 8/6
her [9]   6/10 36/5 43/14 54/6
  54/9 61/6 86/12 86/12 87/16
here [60]
hereby [1]   96/4
hers [1]   86/22
herself [2]   35/10 36/9
hey [1]   26/8
hid [9]   60/6 62/23 69/25
  71/23 72/1 72/3 79/16 87/15
  88/17
hidden [11]   7/16 7/19 54/22
  61/4 61/5 61/14 61/23 62/14
  62/15 62/16 63/1
hide [1]   60/20
hiding [1]   62/22
high [1]   50/24
higher [1]   16/5
highlight [1]   76/3
highlighted [1]   74/4
highly [4]   68/14 83/4 84/15
  84/15
Hillie [23]   5/13 5/19 5/23
  6/6 6/23 7/11 7/11 9/6 9/18
  10/8 10/25 11/4 11/16 11/19
  11/20 12/4 12/19 12/24 15/17
  16/2 16/14 16/15 24/21
him [13]   46/15 59/10 65/23
  67/16 68/6 68/7 70/3 70/4
  82/13 82/23 84/2 84/2 88/22
himself [8]   22/24 35/10
  58/18 58/22 58/24 59/19 86/4
  88/7
his [54]
holding [3]   29/18 30/2 30/3
home [3]   61/7 63/5 87/17
Honor [78]
HONORABLE [1]   1/3
hope [2]   82/6 82/10
hopefully [1]   64/5
horse [1]   87/2
hour [4]   14/20 14/20 15/4
  46/13
house [2]   61/4 63/1
housekeeping [1]   41/20
how [35]   8/11 9/19 12/11
  29/25 32/8 35/23 39/2 39/2
  39/7 43/12 45/11 49/15 52/2
  58/23 59/9 59/18 60/6 60/24
  61/3 62/11 62/13 63/6 65/24
  71/6 73/20 75/5 76/20 82/5
  83/6 85/22 86/15 87/6 88/13
  88/17 91/19
however [10]   5/17 9/12 10/19
  22/2 28/15 34/23 40/13 41/4
  49/20 51/25
HSI [1]   4/14
humor [1]   44/2
hundred [3]   43/17 63/12

**I**

70/11
Hughes [11] 61/14
I'm [2]   42/16 42/17
I.D [1]   3/6
ID [1]   54/4
idea [3]   39/1 76/22 82/25
identify [1]   48/5
IDs [2]   59/16 88/22
illustration [1]   80/2
illustrations [1]   79/24
image [24]   6/13 8/17 21/19
  22/15 34/18 43/3 53/16 76/18
  77/22 79/7 79/18 79/19 80/19
  80/21 87/1 87/4 87/5 87/6
  87/8 88/11 93/2 93/3 93/6
  93/12
images [67]
imagine [1]   80/3
imaging [1]   67/3
immune [1]   36/7
immutable [1]   81/17
impartial [4]   70/7 82/8
  83/24 84/20
impeachment [1]   32/2
important [8]   8/9 29/17
  59/15 74/4 74/7 78/24 88/21
impression [1]   26/6
inapplicable [2]   14/16 86/7
inappropriate [5]   43/19 68/4
  77/9 78/9 83/7
inappropriately [1]   28/13
incapable [1]   61/22
inclination [1]   6/13
inclined [2]   26/23 40/2
include [9]   11/14 12/3 12/5
  14/11 30/25 31/14 31/25 32/3
  73/10
included [7]   11/10 14/1
  14/12 20/2 23/25 31/12 73/17
including [7]   8/12 14/3
  26/14 41/25 45/14 45/15
  58/12
inconsistent [3]   40/6 40/10
  49/18
inconvenience [1]   64/5
incorporate [4]   11/4 11/5
  11/21 14/25
incorporated [2]   13/21 40/9
incorporates [2]   20/17 40/5
incorrect [4]   17/22 17/25
  26/6 49/21
incur [1]   39/11
independent [1]   89/22
indicate [6]   11/23 38/19
  42/12 45/20 46/10 84/10
indicated [7]   6/2 38/5 38/14
  42/4 50/19 92/19 94/22
indicates [1]   47/19
indicating [2]   25/1 94/4
indicia [3]   36/1 85/25 88/14
indictment [1]   54/22
influence [1]   39/2
information [2]   29/24 52/4
informed [1]   29/16
initial [5]   4/24 13/24 15/9
  22/11 34/1
initially [1]   24/20
initials [1]   17/14
innocence [2]   70/16 70/19
innocent [1]   70/12
innocuous [1]   59/21
inquire [1]   92/13
inquiry [2]   57/24 87/23
inscription [6]   55/8 55/12
  55/17 57/5 57/6 57/7
inside [1]   61/23
insofar [7]   16/14 19/11 32/7

**J**

33/1 43/8 43/9 52/12
suspect [1] 41/15
instance [1]   52/8
instead [4]   11/21 41/12
  61/22 70/6
instructed [7]   30/8 57/21
  58/3 59/2 68/25 85/17 86/17
instructing [1]   28/4
instruction [20]   5/16 19/16
  19/25 20/4 20/10 20/23 23/12
  25/21 26/13 26/24 28/7 28/21
  30/13 32/9 32/23 33/12 33/20
  34/12 38/8 72/15
instructions [44]   4/22 11/17
  12/5 12/15 13/12 13/25 14/3
  14/6 14/7 15/1 15/3 15/10
  17/6 17/21 19/11 20/8 23/24
  26/22 30/24 30/25 31/9 31/10
  31/13 31/14 31/18 31/18
  32/18 38/7 44/4 44/11 48/20
  48/20 48/24 49/1 49/6 49/8
  51/22 51/23 52/1 52/2 52/6
  52/9 68/23 84/10
insurmountable [1]   5/20
intended [4]   21/21 35/3
  36/22 78/22
intent [2]   21/19 35/8
intention [1]   27/4
intentionally [3]   49/23 50/7
  62/18
intentions [1]   10/21
intents [1]   13/1
interacted [1]   60/25
intercourse [2]   72/1 73/12
interest [8]   23/6 26/8 35/19
  36/10 79/13 80/18 81/15 86/1
interesting [1]   16/1
interject [1]   52/11
internal [1]   24/13
Internet [3]   10/4 56/1 57/9
Internet-capable [1]   56/1
interpret [1]   52/2
interpretation [1]   7/6
intersection [1]   51/11
interstate [7]   53/18 53/24
  54/18 56/7 56/7 57/13 83/1
intimate [1]   61/7
introduced [3]   66/1 85/20
  87/13
invasion [1]   68/5
investigation [1]   89/23
involved [2]   8/10 16/10
involvement [1]   8/23
is [478]
isn't [8]   7/9 26/1 67/11
  73/8 74/9 80/10 81/24 86/11
issue [23]   11/2 12/22 13/1
  13/7 17/8 22/13 23/18 38/1
  38/2 38/4 38/6 39/25 45/3
  51/21 51/21 52/5 67/24 68/12
  70/13 71/18 80/2 83/5 83/17
issues [4]   21/7 27/6 34/25
  37/13
it [318]
it's [3]   18/9 22/1 93/3
item [9]   32/16 35/11 36/24
  39/10 39/15 47/22 49/17 50/6
  52/4
items [1]   59/15
its [11]   7/14 16/3 23/12
  37/15 54/24 55/9 55/24 75/1
  83/18 84/25 88/6
itself [6]   18/6 22/15 23/10
  28/22 32/13 55/12

**J**

Javier [3]   44/22 64/22 65/5
Johnson [1]   8/19
join [1]   52/11

## J

**Joining [1]** 4/13
**judge [12]** 1/4 27/21 28/2
57/21 58/2 58/13 59/2 69/14
73/3 85/11 85/17 86/17
**judgment [6]** 4/23 4/25 5/5
5/14 39/19 85/23
**Judicial [1]** 96/9
**judicially [1]** 26/3
**June [1]** 96/10
**juries [1]** 29/9
**juror [3]** 23/15 46/11 94/17
**juror's [1]** 90/20
**jurors [9]** 23/13 23/18 24/4
28/16 29/6 44/23 44/24 90/25
93/13
**jurors' [1]** 27/23
**jury [94]**
**jury's [1]** 28/2
**just [78]**
**JUSTICE [1]** 2/4

## K

**KATIE [2]** 1/20 96/12
**keep [12]** 60/22 66/22 91/5
**Kelly [1]** 54/7
**kept [4]** 59/9 59/10 65/22
88/19
**kids [1]** 43/19
**kind [15]** 5/22 6/14 8/2
10/23 16/12 20/22 25/23
38/17 42/21 50/13 71/21
77/16 78/18 85/7 92/16
**kinds [1]** 43/5
**knees [1]** 75/24
**knew [4]** 60/23 61/5 74/7
87/16
**know [45]** 6/23 9/25 10/13
10/23 26/17 29/15 29/18
33/11 33/14 34/15 34/20
37/16 39/6 39/17 40/17 40/19
41/3 48/22 57/1 58/23 59/9
59/18 59/23 60/6 60/24 61/3
62/6 62/10 62/13 63/6 65/24
69/6 69/7 69/10 70/11 70/13
70/13 76/14 80/12 82/3 82/23
83/19 85/22 88/13 93/16
**knowingly [2]** 32/23 32/25
**knowledge [1]** 56/6
**known [1]** 56/21

## L

**lack [5]** 16/17 24/1 28/4
28/16 29/2
**ladies [4]** 48/17 49/7 89/14
94/3
**laid [1]** 37/3
**language [25]** 6/8 11/4 11/10
11/15 11/16 11/21 12/4 12/4
13/21 14/13 14/15 14/25
20/10 20/12 23/8 23/25 29/1
34/12 34/17 34/20 37/11 40/8
40/9 41/6 41/15
**laptop [4]** 90/25 92/9 93/13
93/13
**larger [1]** 32/16
**lascivious [34]** 6/8 6/17 7/5
7/23 8/4 9/4 9/7 10/12 10/17
15/19 16/6 20/16 22/3 22/15
23/4 36/5 36/7 37/16 40/14
43/10 57/22 58/1 58/7 72/22
73/14 73/17 73/23 74/6 74/9
74/15 74/23 75/1 85/12 86/10
**lasciviously [1]** 25/6
**lasciviousness [3]** 12/9
22/21 28/8
**last [4]** 14/25 19/6 67/5
90/8

**lastly [1]** 51/4
**later [1]** 45/14
**latter [1]** 51/23
**law [19]** 7/8 11/2 13/1 38/18
40/11 51/21 52/5 57/25 68/2
68/14 68/17 70/5 70/7 83/9
85/11 85/11 85/17 85/18
86/16
**laws [2]** 57/21 84/8
**laypeople [1]** 27/9
**laypersons [1]** 26/3
**least [1]** 15/18 37/5
**leave [5]** 39/18 89/16 89/18
89/19 91/7
**leaves [2]** 50/20 72/2
**leaving [1]** 94/23
**lectern [2]** 47/14 64/23
**led [1]** 8/3
**left [2]** 18/12 60/24
**legal [5]** 38/11 71/14 72/10
83/5 92/17
**legally [1]** 26/6
**less [3]** 11/9 11/23 45/13
**let [49]**
**let's [3]** 17/5 44/5 65/12
**life [2]** 42/10 71/1
**lifting [1]** 8/21
**light [2]** 36/18 51/10
**like [32]** 5/24 8/15 10/24
16/12 21/7 22/24 24/15 27/13
29/18 31/23 31/23 35/17
35/20 37/8 37/21 55/19 56/16
57/23 59/15 60/12 61/13
62/16 69/10 75/15 79/22
80/20 88/16 88/21 92/1 92/11
93/14 94/4
**like-minded [4]** 22/24 35/17
35/20 37/8
**liked [1]** 88/23
**likes [7]** 52/20 58/24 58/24
59/7 66/3 66/4 66/4
**limiting [2]** 20/20 26/12
**Lindsay [1]** 4/13
**line [4]** 7/3 25/24 41/4 41/4
**Line 19 [1]** 25/24
**lingerie [2]** 8/13 8/13
**list [9]** 14/2 25/25 27/21
73/2 73/3 73/3 73/4 73/9
74/20
**Listen [1]** 84/20
**little [6]** 27/1 29/7 30/8
30/10 56/16 86/12
**live [1]** 61/25
**lodging [1]** 47/17
**logical [1]** 92/17
**long [14]** 6/2 24/3 27/21
29/6 38/21 38/21 45/11 59/24
60/9 60/14 60/20 62/11 91/9
91/19
**longer [1]** 94/18
**look [20]** 5/22 12/15 15/9
25/24 30/23 33/13 33/25
35/25 59/3 62/16 67/22 67/24
76/19 81/20 82/6 83/7 85/15
86/18 93/13 94/10
**looked [2]** 34/10 75/15
**looking [4]** 21/14 36/7 81/4
81/11
**LOS [5]** 1/15 1/22 2/7 2/12
4/1
**lot [7]** 26/18 36/13 37/10
37/18 49/25 60/4 86/5
**loud [1]** 72/18
**love [1]** 33/9
**low [2]** 62/11 66/22
**lust [1]** 23/6
**lustfulness [1]** 74/1
**LYNDSI [1]** 2/5

## M

**made [14]** 25/8 30/5 42/10
42/13 42/18 51/20 52/8 55/8
55/12 55/17 55/23 56/24 57/6
57/7
**mailed [1]** 48/12
**majority [1]** 21/3
**make [26]** 12/13 12/25 13/5
16/23 17/14 17/19 20/10
43/10 43/15 45/6 47/25 48/1
49/21 50/10 50/11 50/13 51/2
51/8 51/23 52/14 63/16 80/22
80/23 83/24 90/25 94/24
**makes [5]** 43/3 49/16 51/5
77/10 77/16
**makeup [1]** 65/18
**making [3]** 12/1 28/12 51/16
**man [1]** 7/16
**mandatory [7]** 5/15 26/1
33/20 37/18 74/21 82/3 82/4
**MANI [2]** 2/11 4/19
**manner [2]** 6/11 10/20
**manufactured [3]** 56/17 56/21
56/24
**manufacturer [1]** 37/12
**many [4]** 56/20 56/20 87/19
88/15
**March [4]** 53/2 53/6 63/18
63/24
**March 14th [2]** 53/6 63/24
**March 5th [2]** 53/2 63/18
**marks [1]** 14/10
**mask [1]** 52/17
**masochistic [3]** 72/22 73/9
73/13
**masturbation [2]** 72/22 73/13
**material [1]** 92/18
**materials [4]** 53/18 54/17
57/13 59/10
**matter [7]** 4/8 9/12 22/11
26/9 41/20 41/23 96/7
**may [21]** 1/16 4/1 7/13 7/25
13/3 13/9 18/1 22/2 22/4
27/3 27/15 39/24 40/13 40/15
50/3 50/4 52/8 52/16 64/1
74/16 91/24
**maybe [9]** 17/25 29/19 45/18
72/15 82/23 82/24 82/25
82/25 83/1
**me [60]**
**mean [7]** 7/2 7/5 14/12 37/14
43/15 52/1 75/13
**meaning [3]** 25/4 56/1 74/21
**means [6]** 7/5 14/6 14/8 56/7
72/20 73/23
**meant [3]** 37/25 62/18 73/9
**medical [1]** 80/3
**meet [8]** 50/23 71/15 74/10
75/4 76/11 80/4 80/8 82/11
**members [1]** 39/12
**memory [3]** 47/11 49/19 59/3
**mere [2]** 14/11 28/9
**merely [1]** 87/14
**met [4]** 68/19 69/8 69/9
71/14
**micro [6]** 54/23 55/5 55/9
55/24 57/4 57/5
**might [20]** 9/19 27/25 28/13
34/23 38/3 38/5 38/15 39/10
39/25 47/24 48/4 52/10 57/23
69/2 69/7 69/18 77/11 80/4
81/9 84/18
**Miguel [1]** 89/10
**military [1]** 42/14
**mind [6]** 34/2 38/20 39/16
65/5 70/25 76/14
**minded [4]** 22/24 35/17 35/20
37/8

**M**

mine [3]   66/22 74/4 93/22
minimize [1]   82/22
minimizing [1]   83/3
minimum [1]   37/18
minor [18]   6/10 6/11 6/12
7/22 8/12 9/3 9/13 26/10
48/5 52/23 54/5 61/6 64/20
66/15 73/25 74/15 77/8 77/23
minor's [1]   75/12
minors [6]   23/1 65/15 67/19
71/25 77/14 77/25
minutes [6]   33/11 34/3 45/13
45/16 45/19 46/3
mirror [3]   75/19 76/16 76/25
mischaracterizes [1]   50/6
mislead [1]   49/23
misleading [3]   60/8 60/12
88/16
missing [2]   19/18 55/23
mistake [1]   68/3
MK [9]   17/15 48/6 53/3 54/6
63/20 64/13 66/15 89/2 91/20
model [6]   19/16 19/24 20/1
20/7 20/10 25/18
modest [1]   21/25
modification [1]   20/7
modified [1]   23/8
modify [1]   41/12
mom [1]   54/9
moment [4]   13/11 45/7 64/25
94/10
moments [1]   70/1
more [9]   11/9 11/22 14/19
23/19 30/8 30/11 39/20 83/11
92/24
morning [4]   4/11 4/16 4/18
19/7
most [7]   5/24 39/12 52/11
58/11 61/7 66/5 88/6
motion [8]   4/22 4/25 5/5 5/9
5/14 13/13 13/14 39/18
move [1]   54/16
moved [2]   8/24 24/22
moving [1]   57/16
Mr. [24]   4/19 54/7 67/12
67/18 68/3 68/18 68/20 69/6
69/24 70/11 70/16 70/18
70/21 70/24 71/4 71/8 71/23
79/12 79/21 81/15 82/9 82/21
84/1 84/22
Mr. Kelly [1]   54/7
Mr. Robert [1]   4/19
Mr. Stella [21]   67/12 67/18
68/18 68/20 69/6 69/24 70/11
70/16 70/18 70/21 70/24 71/4
71/8 71/23 79/12 79/21 81/15
82/9 82/21 84/1 84/22
Mr. Stella's [1]   68/3
Ms [12]   3/10 3/11 3/12 17/15
48/5 53/1 54/2 54/4 64/7
66/15 89/2 91/20
MS' [1]   54/4
Ms. [3]   21/8 54/10 90/24
Ms. Galvan [1]   54/10
Ms. Richmond [1]   90/24
Ms. Rivera's [1]   21/8
much [7]   19/6 29/7 54/1
57/17 75/6 82/5 91/6
multiple [5]   60/11 60/17
61/1 63/8 63/25
murky [1]   10/24
must [2]   71/15 74/25
my [24]   4/13 4/24 9/5 9/5
10/7 24/21 33/25 34/2 39/16
43/23 45/2 46/1 46/10 47/11
47/19 52/16 64/2 64/24 85/3
86/21 90/10 92/2 92/15 93/15

myself [1]   52/11

**N**

naked [10]   35/22 35/23 61/6
63/14 65/15 65/20 65/23 87/8
87/17 88/4
name [2]   3/3 89/9
named [1]   19/22
narrow [2]   71/18 72/10
nature [4]   41/23 57/9 80/21
84/13
nauseam [1]   41/17
NE [8]   17/16 48/6 53/5 54/9
63/23 64/20 66/16 89/2
near [1]   65/23
necessarily [5]   5/21 11/7
14/12 28/22 35/5
necessary [1]   94/15
need [20]   17/1 25/25 26/12
37/14 44/6 44/18 55/20 58/10
58/11 75/3 75/5 77/21 78/1
78/25 79/4 81/19 94/12 94/17
94/23 95/1
needed [2]   32/17 62/10
needs [1]   53/8
nested [3]   60/3 63/8 88/15
neutral [3]   70/6 82/7 84/20
never [3]   50/20 56/23 68/8
nevertheless [1]   11/24
new [2]   44/6 90/7
next [4]   12/14 14/5 23/7
50/2
nice [1]   15/4
night [2]   14/25 19/6
Ninth [32]   5/18 6/1 7/9 7/22
8/19 15/18 16/11 22/18 22/19
22/20 23/9 23/23 24/3 25/10
25/15 25/15 25/20 27/14
27/19 27/19 28/15 29/10
29/22 33/14 34/16 34/21 37/5
38/19 39/21 40/7 40/21 41/10
no [62]
No. [6]   19/25 20/3 21/13
21/15 31/1 31/3
No. 166 [1]   20/3
No. 17 [1]   31/3
No. 194 [1]   21/15
No. 2 [1]   21/13
No. 23 [1]   31/1
No. 45 [1]   19/25
nobody [2]   31/6 77/17
nom [2]   25/12 25/14
none [8]   3/4 3/7 23/13 27/10
72/9 72/19 75/5 91/17
nonpornographic [1]   79/7
normal [1]   80/18
norms [1]   92/14
North [1]   2/6
not [160]
note [9]   15/25 17/19 20/17
52/3 55/21 74/12 85/7 90/20
94/4
noted [1]   21/23
nothing [12]   9/10 17/9 17/12
18/23 27/8 30/14 30/15 67/25
70/3 76/1 76/2 78/15
notice [3]   38/1 42/2 73/25
now [19]   12/14 13/23 17/19
20/25 21/2 25/2 30/23 33/24
36/13 45/4 49/12 57/16 62/20
63/16 65/7 83/8 87/19 90/4
93/20
nude [9]   26/11 74/8 74/9
74/10 77/24 78/1 78/2 78/6
80/6
nudity [2]   9/9 28/10
number [4]   17/21 28/25 68/24
90/3
numbers [1]   46/2

numerous [1]   56/15

**O**

o'clock [2]   46/12 89/18
oath [2]   68/25 70/8
object [3]   42/9 42/20 47/16
objection [20]   18/13 18/14
18/23 19/2 19/3 19/9 20/6
20/18 20/19 30/18 31/7 32/6
32/21 47/18 51/16 51/20 52/8
84/6 84/7 84/13
objections [3]   26/21 32/4
52/7
objective [7]   22/6 40/18
40/20 40/23 41/1 81/6 81/12
objects [2]   51/8 51/12
obligation [1]   67/17
obviously [8]   6/24 10/2
16/15 16/22 38/12 47/4 49/19
73/11
Occasionally [1]   68/24
occurred [1]   54/23
off [9]   14/5 43/14 58/10
58/11 59/25 61/19 93/16
93/25 94/20
offensive [2]   68/4 83/22
offer [2]   26/25 29/24
OFFICE [2]   2/4 2/10
Official [1]   1/20
often [1]   88/4
Ofttimes [1]   49/24
Oh [2]   93/3 93/3
ohm [1]   41/13
okay [24]   13/17 14/23 16/18
17/11 18/19 20/5 20/9 31/25
42/6 45/20 45/25 46/6 46/21
48/8 48/14 49/9 52/13 65/4
70/3 90/15 93/23 93/24 94/19
95/2
old [4]   7/20 35/22 35/23
43/13
once [3]   50/10 50/12 91/9
one [61]
ones [5]   14/3 31/2 62/23
83/20 84/12
only [21]   18/10 22/1 22/2
22/4 26/7 28/9 40/14 40/15
40/19 42/8 45/21 47/5 47/22
48/3 61/3 67/23 76/24 83/17
83/20 85/15 91/11
opening [2]   42/13 52/14
operational [1]   62/10
opinion [2]   11/7 11/19
opportunities [1]   51/2
opportunity [3]   5/4 15/9
50/10
ops [1]   16/15
oral [1]   40/22
order [2]   6/7 16/6
organs [1]   25/5
original [1]   30/23
other [67]
others [2]   23/20 31/18
otherwise [4]   30/5 48/8
48/23 79/7
our [12]   4/14 5/14 11/16
20/18 26/21 30/5 38/24 39/2
39/3 40/22 57/17 94/7
out [23]   14/8 16/12 17/4
18/12 19/6 25/23 32/12 33/11
34/17 34/17 37/3 44/13 44/25
52/3 55/19 66/24 67/7 72/18
76/25 78/4 86/15 93/8 94/14
outset [1]   66/25
outside [10]   4/6 15/6 34/7
44/15 46/8 46/23 56/21 62/21
89/25 95/3
over [11]   15/9 20/22 23/9
34/10 47/12 53/20 62/5 63/12

**O**

over... [3] 67/5 80/24 81/2
over-reliance [1] 23/9
over-rely [3] 20/22 80/24
81/2
overall [5] 75/1 76/17 76/19
77/22 78/2
overseas [1] 56/18
overt [1] 16/10
Overton [6] 5/19 9/1 9/12
33/16 33/17 33/18
own [6] 37/15 56/5 58/3
58/20 70/24 74/21

**P**

p.m [8] 44/14 44/14 46/7
46/7 46/22 46/22 48/9 48/9
packaging [1] 22/13
page [28] 3/3 3/9 5/1 15/15
15/15 17/7 17/7 17/8 18/17
18/20 19/1 19/8 20/13 20/25
20/25 21/1 21/3 21/5 21/7
24/13 30/12 30/17 30/20
68/24 72/14 72/16 73/22 96/7
pages [1] 15/21
paid [1] 36/4
Palomino [1] 87/1
paragraph [1] 74/19
paragraphs [1] 73/21
paraphrase [1] 21/18
parent [1] 36/4
parents [2] 68/7 69/19
parents' [1] 63/2
parker [2] 56/13 66/1
part [14] 11/5 11/11 12/5
19/23 20/4 20/25 26/23 52/11
60/21 74/17 75/18 77/11 82/1
88/4
partially [3] 26/11 77/23
80/6
particular [17] 11/24 12/24
23/5 25/21 26/19 28/1 28/3
29/10 29/22 38/7 38/15 39/13
39/14 49/22 67/13 69/12 77/4
particularly [3] 30/6 30/6
77/2
parties [5] 4/24 14/13 32/9
32/22 46/16
parts [4] 56/16 56/24 76/1
76/3
pass [1] 52/3
passage [3] 27/16 28/11
29/11
passport [1] 59/15
passports [1] 88/21
past [1] 83/7
path [2] 59/25 60/2
paths [4] 59/21 60/9 60/15
60/21
pause [1] 5/2
pedophile [5] 35/20 36/4
36/6 37/10 40/24
pedophiles [4] 22/24 35/17
35/20 37/8
pen [5] 81/5 81/6 81/9 81/10
81/10
penalties [1] 18/11
people [9] 10/4 60/22 77/13
80/6 87/5 87/6 87/24 88/3
88/4
per [2] 16/19 32/11
perceive [1] 50/4
percent [2] 43/17 70/12
perhaps [9] 34/23 39/20
76/14 76/20 77/1 77/16 80/5
80/8 80/9
period [1] 71/1
permanently [1] 13/8

permit [2] 27/12 27/15
person [15] 4/13 6/21 13/23
35/5 35/24 36/14 36/16 37/13
75/23 75/23 76/9 80/5 80/18
80/19 88/11
person's [1] 61/7
personal [7] 42/10 42/18
42/21 43/5 43/8 43/18 56/5
personally [2] 61/18 87/21
persons [1] 77/14
persuade [1] 49/15
persuaded [2] 19/20 19/22
phone [4] 46/2 62/1 62/16
86/12
photo [2] 91/22 94/8
photograph [6] 22/22 35/22
43/13 43/13 74/10 80/10
photographer [6] 22/23 23/4
25/6 36/9 80/3 80/17
photographing [1] 80/5
photographs [3] 43/1 67/19
71/24
photos [3] 73/16 74/8 78/16
phrase [1] 41/5
physical [6] 25/5 55/16
55/22 85/20
picture [8] 25/5 35/23 36/1
36/2 36/22 43/1 55/10 86/12
pictures [4] 23/2 28/10
58/17 85/19
piece [1] 85/19
place [2] 76/8 83/20
placed [3] 10/3 10/9 10/16
places [5] 17/23 17/23 59/20
61/5 61/7
placing [1] 34/24
plain [2] 23/2 62/22
PLAINTIFF [2] 1/7 2/3
planning [1] 43/24
play [4] 10/22 13/14 91/3
91/24
played [6] 64/8 64/11 64/14
64/18 64/21 92/23
pleading [1] 71/10
pleasant [3] 89/23 90/16
95/2
Please [2] 89/9 89/21
plugged [2] 56/11 65/1
point [34] 5/23 6/19 7/7
11/1 12/1 12/20 13/1 13/18
13/22 14/22 16/12 26/9 27/4
32/22 36/13 37/24 38/17
38/23 39/19 40/11 49/10
49/20 51/4 52/10 75/11 75/17
75/22 75/25 76/5 80/9 80/13
92/25 94/16 94/20
pointed [2] 34/17 34/17
pointing [1] 25/23
points [1] 22/11
porn [5] 52/20 58/24 59/7
66/4 66/6
pornographic [2] 79/8 80/19
pornography [30] 16/20 16/23
17/3 23/23 27/23 35/7 43/3
52/22 59/23 60/7 60/10 60/15
60/20 60/23 65/9 66/4 66/5
66/15 71/11 71/16 72/7 77/12
79/15 79/16 86/3 86/13 86/16
88/15 88/23 89/2
portray [1] 72/11
pose [3] 8/13 76/8 77/9
posing [8] 8/15 9/3 9/12
9/13 22/16 77/10 77/13 77/17
position [4] 6/7 12/17 34/22
77/14
positioning [1] 77/18
possessed [2] 71/11 79/14
possessing [1] 81/5
possession [5] 32/24 33/5

71/10 71/15 72/7
possible [3] 11/63 63/8 13/15
94/5
potty [2] 42/19 43/2
practice [1] 65/20
precedential [1] 16/16
prefer [2] 13/11 46/20
preferably [1] 93/18
preference [1] 46/16
prejudice [2] 12/20 13/19
preliminary [4] 17/20 17/24
31/10 31/17
presence [14] 4/7 15/7 28/9
28/21 34/8 44/16 45/9 46/9
46/24 48/16 90/1 90/18 94/2
95/4
present [7] 4/20 7/10 25/25
27/6 27/22 39/2 58/15
presentation [1] 39/3
presented [8] 7/18 25/6 58/6
58/19 83/10 85/1 85/25 88/24
preserve [3] 41/22 41/24
42/1
preserving [1] 26/21
PRESIDING [1] 1/4
pressed [1] 76/4
presume [7] 18/13 31/6 43/20
51/22 91/3 92/7 93/11
presumed [1] 70/11
presupposes [1] 37/9
pretty [5] 8/22 20/3 20/23
21/25 23/10 26/2 45/18 67/2
73/7 78/14
previous [1] 36/3
previously [1] 19/18
principles [1] 75/8
print [1] 44/13
printed [3] 44/5 44/10 90/8
privacy [1] 68/5
private [3] 70/1 75/25 76/3
probably [5] 6/17 10/25
16/11 34/1 80/12
problem [22] 5/20 5/21 10/19
31/6 33/14 34/14 36/20 36/25
37/1 39/6 39/16 39/18 39/22
40/4 41/3 41/11 41/16 44/12
46/21 81/13 91/15 93/9
problematic [3] 43/11 79/6
79/23
problems [5] 18/16 18/20
37/11 38/16 41/9
proceedings [16] 1/13 4/6
5/2 15/6 34/7 44/15 45/8
46/8 46/23 48/15 89/25 90/17
94/1 95/3 95/6 96/6
process [1] 38/2
produce [5] 7/21 16/21 36/5
53/14 53/15
produced [16] 36/16 52/20
52/22 53/2 53/4 53/5 53/12
54/8 54/15 54/17 57/12 58/20
59/18 86/3 88/23 89/2
producer [5] 35/10 36/14
36/15 37/12 39/14
produces [1] 35/7
producing [2] 20/1 66/15
production [11] 7/23 16/20
19/17 23/22 53/17 54/5 54/11
54/21 54/23 56/18 77/12
prohibit [1] 73/10
prong [8] 19/19 19/21 57/15
57/16 57/16 57/18 66/9 86/9
prongs [2] 86/6 86/8
proof [5] 50/18 50/21 50/24
50/25 82/17
properly [1] 8/5
proposal [2] 40/5 40/12
proposed [14] 4/22 12/15
14/6 15/10 17/6 19/25 21/25

## P

proposed... [7]   23/12 26/13
30/25 31/1 31/3 33/24 40/3
proposing [5]   11/4 14/13
21/12 21/13 40/10
proposition [2]   23/21 24/4
prosecutors [3]   67/11 68/17
82/12
prove [3]   16/9 53/7 70/16
proved [1]   58/5
proven [1]   67/14
proves [4]   53/21 57/11 66/8
85/1
provide [2]   4/24 94/25
provided [2]   14/2 42/5
providing [1]   5/10
prurient [4]   23/6 35/19
36/10 86/1
pubic [7]   6/11 72/23 73/18
74/15 75/12 76/6 80/14
public [4]   2/10 39/12 74/5
87/24
published [1]   47/16
pull [2]   20/9 24/16
punish [1]   69/5
punished [1]   69/11
punishment [3]   37/21 37/23
69/12
purported [2]   60/2 60/10
purpose [6]   20/1 36/11 53/16
57/20 58/17 88/12
purposeful [1]   60/21
purposes [2]   10/17 13/1
pursuant [1]   96/4
put [17]   11/16 18/8 31/13
31/24 40/18 42/20 48/4 62/3
70/18 71/19 73/6 83/24 85/7
91/23 93/19 94/6 94/9
putting [1]   65/18

## Q

qualifies [1]   57/22
qualify [3]   6/7 6/17 58/7
question [20]   6/21 7/8 9/5
9/11 9/20 9/25 10/8 11/3
11/12 14/10 22/13 35/1 36/3
37/7 39/23 43/1 43/12 50/2
72/10 92/17
questions [2]   48/22 49/7
quick [3]   33/13 45/18 63/16
Quido [1]   1/9
quite [2]   29/11 32/8
quotation [1]   24/15
quote [4]   6/9 22/20 23/25
25/3
quoting [1]   25/2

## R

raise [3]   38/11 43/5 45/4
raised [2]   33/1 71/9
raising [1]   42/25
rare [1]   52/8
rather [2]   20/25 22/16
reach [3]   10/1 58/20 88/2
reached [2]   16/3 45/24
reaching [1]   73/1
reaction [1]   34/1
read [12]   5/1 5/4 13/25
14/14 14/20 27/15 29/11
48/22 58/13 72/18 73/6 73/22
reading [2]   34/2 48/19
reads [3]   21/20 22/1 49/6
ready [2]   45/6 52/14
real [3]   38/1 38/1 73/12
realize [1]   46/11
realized [1]   93/6
realizing [1]   63/7
really [17]   7/7 7/9 7/10

9/11 16/17 18/5 32/16 69/9
68/6 68/17 72/10 74/1 74/3
74/7 76/12 77/22 81/23
rearrange [1]   66/25
reason [8]   7/4 9/5 16/8
31/16 38/8 39/22 50/16 93/16
reasonable [11]   50/25 53/9
53/22 54/13 57/11 58/6 66/8
66/14 67/18 82/17 85/3
reasons [3]   16/3 37/2 56/18
rebuttal [3]   45/14 45/15
85/3
recall [3]   47/17 49/18 49/19
recap [1]   57/4
receive [2]   26/5 56/11
received [3]   14/24 68/23
94/4
Recess [6]   15/5 34/6 44/14
46/7 46/22 48/9
record [5]   7/17 17/20 41/21
42/5 42/20
recorded [3]   22/25 67/19
71/24
recording [2]   9/9 67/6
recordings [2]   47/9 70/1
refer [2]   68/22 68/24
referenced [1]   33/15
references [1]   42/13
regard [2]   11/10 16/13
regarding [6]   8/20 9/18
19/16 30/8 33/12 47/3
regards [4]   8/19 17/8 30/12
32/9
region [1]   86/23
regulations [1]   96/8
reject [1]   12/18
rejects [1]   5/20
relates [1]   23/7
relatively [1]   67/2
relevant [4]   22/5 27/24
27/25 40/16
reliance [1]   23/9
rely [7]   20/22 26/7 56/5
69/1 72/25 80/24 81/2
relying [3]   27/5 38/25 39/4
remain [2]   84/19 84/20
remember [7]   33/16 42/23
47/7 55/6 58/2 82/20 89/21
remove [1]   52/16
rendered [1]   61/21
replaced [1]   62/11
reported [1]   96/6
reporter [2]   1/20 49/1
REPORTER'S [1]   1/13
representation [2]   49/17
51/6
request [1]   94/24
requested [1]   41/20
requesting [2]   20/20 26/20
require [5]   11/1 11/20 12/13
required [7]   16/9 70/6 70/16
70/18 70/22 70/24 85/7
requirement [3]   6/15 69/8
74/11
requirements [2]   68/15 84/4
reshowing [2]   63/15 85/4
resolve [2]   38/16 51/15
resolved [2]   38/6 39/7
resolving [1]   38/6
respect [16]   8/6 8/8 8/17
19/16 19/19 25/9 25/17 26/21
29/16 30/3 37/14 67/15 68/11
71/7 75/9 80/9
respond [5]   21/8 29/13 51/16
52/7 92/21
responding [3]   24/20 24/23
25/8
response [24]   4/25 5/4 8/18
21/21 22/9 22/10 24/7 24/18

35/4 36/7 36/12 36/23 37/8
38/22 50/8 58/7 59/1 59/19
78/22 86/3 88/7 88/10 88/12
90/23
responsibility [6]   68/19
71/4 71/8 71/16 79/14 82/10
rest [1]   21/24
rested [1]   88/6
restrictions [1]   41/8
rests [2]   78/20 79/3
reversed [2]   38/20 38/21
review [3]   55/22 91/1 94/5
reviewed [5]   12/12 16/4 54/4
54/20 65/8
RICHMOND [5]   2/5 3/10 3/12
4/12 90/24
riding [1]   87/2
right [47]   4/8 4/16 4/21
10/5 15/4 15/8 17/5 18/6
19/1 19/14 20/12 20/24 24/17
27/2 29/12 30/19 42/6 44/3
44/12 44/17 45/2 46/25 48/17
49/5 62/1 63/7 63/16 64/3
66/20 67/10 68/9 72/15 74/8
79/17 80/5 84/23 85/6 89/4
89/14 90/2 90/4 90/11 90/15
91/14 92/5 94/3 95/5
RIVERA [3]   2/10 3/11 4/19
Rivera's [1]   21/8
roadmap [1]   14/17
Robert [2]   1/9 4/19
room [9]   48/21 51/25 69/3
69/22 91/3 91/7 91/10 94/11
94/21
routine [1]   26/17
RPR [1]   96/12
rule [3]   19/24 20/1 92/13
run [1]   62/11
runs [1]   28/25

## S

sadistic [4]   72/22 73/9
73/13 81/23
said [18]   7/3 10/11 10/14
15/19 16/18 16/21 17/5 17/25
22/20 25/20 34/12 39/1 40/22
40/23 52/13 71/10 80/20 93/4
same [14]   9/22 10/1 10/11
14/12 18/9 28/12 31/24 33/5
36/14 36/16 37/13 60/7 60/14
71/7
satisfy [1]   25/7
save [2]   63/11 65/23
saved [6]   60/1 60/17 63/8
63/11 63/12 65/22
saw [16]   55/10 59/11 59/16
59/24 60/8 60/14 61/1 61/16
61/25 62/1 62/6 70/23 73/15
75/10 75/14 76/24
say [24]   6/22 10/15 10/20
10/24 12/7 26/17 29/23 32/15
33/9 33/19 33/21 40/13 41/13
44/5 62/3 62/4 62/5 70/2
75/17 76/4 79/11 82/23 83/11
84/15
saying [13]   7/1 19/7 24/25
26/22 28/24 31/9 41/12 43/4
43/18 51/17 79/11 79/22
80/24
says [14]   7/5 7/18 23/12
25/25 28/21 29/5 29/10 51/10
51/12 74/13 74/20 85/11
85/17 85/18
scale [1]   8/24
scene [1]   77/13
scope [1]   20/21
Scott [13]   4/15 54/3 54/19
55/1 55/7 55/15 55/18 61/18
62/9 62/12 62/14 62/21 66/1

**S**

**screen [6]**   59/4 64/2 64/5
93/20 93/24 94/9
**screens [4]**   91/9 93/15 93/16
93/17
**screenshots [1]**   47/11
**SD [7]**   54/23 55/5 55/9 55/11
55/24 57/4 57/5
**se [2]**   16/19 32/11
**second [13]**   19/19 19/21
24/10 26/15 34/19 53/3 53/13
55/9 57/16 57/18 66/8 76/7
77/5
**secondly [1]**   50/23
**secret [1]**   61/23
**secretly [1]**   22/25
**section [5]**   9/24 18/1 18/7
25/4 96/4
**sections [1]**   18/9
**see [45]**   10/4 13/2 32/1
32/24 32/25 34/1 34/10 55/16
62/17 62/19 64/6 65/1 65/6
65/11 67/4 73/11 73/12 73/14
75/18 75/19 75/20 75/20
75/20 75/21 75/22 75/23
75/23 76/22 80/14 80/15
81/10 82/11 87/8 89/24 91/9
91/24 93/8 93/20 93/20 93/22
93/25 94/5 94/12 94/17 94/23
**seeing [3]**   29/21 94/18 94/19
**seems [2]**   33/23 90/11
**seen [7]**   27/9 30/3 42/5
56/23 57/2 74/8 90/20
**sees [1]**   39/3
**send [2]**   92/4 92/11
**sends [1]**   36/5
**sense [18]**   44/2 56/4 68/1
72/2 72/24 73/1 74/22 77/10
77/16 78/24 79/4 79/23 80/22
80/23 81/21 84/21 87/20 88/2
**sentence [4]**   22/1 37/18
74/13 74/25
**separate [1]**   71/25
**serious [3]**   69/13 84/3 84/3
**set [22]**   7/16 7/19 13/24
14/7 15/10 16/22 17/6 17/20
30/23 31/12 31/14 44/4 44/13
48/19 60/24 64/22 75/14
75/15 83/5 83/7 84/17 84/18
**sets [1]**   22/23
**setting [5]**   8/11 8/11 26/10
76/7 83/13
**several [3]**   21/22 26/14 27/5
**sex [4]**   25/5 87/12 87/23
87/25
**sexual [45]**   6/13 6/14 8/18
16/10 21/21 23/6 25/2 25/7
26/8 35/4 35/19 36/6 36/10
36/11 36/23 37/7 39/9 39/12
58/18 58/21 59/19 61/12
67/25 72/21 73/12 74/1 76/9
76/10 76/12 76/21 77/2 77/3
78/13 78/13 78/18 78/22
80/18 81/15 86/1 86/3 88/3
88/7 88/10 88/12 92/18
**sexually [24]**   8/14 19/23
25/3 53/14 53/15 57/19 57/23
66/10 67/20 72/11 72/13
72/18 72/20 73/4 74/22 76/8
77/6 77/20 78/11 79/2 79/20
81/22 85/13 87/22
**shameful [1]**   72/3
**shape [1]**   38/24
**she [17]**   24/23 24/24 34/17
36/4 36/5 36/10 44/2 54/3
54/7 54/10 54/20 55/18 55/25
56/9 61/10 61/18 86/23
**sheet [1]**   47/11

**shell [1]**   61/19
**shell 213**   61/19
**shortly [1]**   77/20
**should [17]**   12/19 12/24 13/8
18/6 23/8 23/16 26/22 27/7
30/7 41/11 43/4 49/15 52/2
58/9 68/8 69/11 80/25
**shouldn't [3]**   14/19 21/11
79/25
**show [8]**   51/10 64/1 65/11
67/18 71/23 71/24 79/19
94/14
**showed [3]**   55/18 61/13 77/20
**shower [6]**   43/14 67/7 75/22
77/1 78/5 86/25
**showering [1]**   7/22
**showing [3]**   23/2 66/1 87/3
**shown [5]**   64/23 67/23 67/24
91/11 94/12
**shows [1]**   85/25
**side [11]**   13/23 14/3 51/5
51/7 59/11 59/14 88/20
**sidebar [1]**   47/12
**sides [3]**   14/18 90/19 92/22
**significance [2]**   28/3 29/9
**significant [1]**   27/25
**similar [1]**   71/6
**similarly [2]**   51/20 60/8
**simply [8]**   12/18 48/3 51/16
67/14 68/20 77/19 78/15
81/16
**simulated [2]**   72/21 73/11
**since [2]**   44/7 90/8
**single [2]**   58/10 82/18
**sir [1]**   89/6
**sit [1]**   92/22
**situation [9]**   6/6 9/2 10/7
10/9 11/18 12/24 32/24 38/15
39/11
**six [14]**   13/10 13/18 20/21
21/10 25/24 27/5 41/12 58/13
60/3 74/17 78/19 82/1 83/12
86/18
**six-part [2]**   74/17 82/1
**sixth [30]**   8/16 21/17 22/2
24/25 25/17 26/7 26/19 27/1
28/14 28/22 30/9 35/2 35/13
36/20 36/25 37/1 37/15 38/25
39/4 39/6 39/23 40/13 74/19
78/19 78/21 79/3 79/6 80/24
81/2 81/14
**skip [1]**   74/18
**slide [2]**   55/22 65/11
**slightly [1]**   28/20
**smoke [9]**   61/15 61/15 61/19
61/20 61/20 61/22 62/5 62/17
62/25
**so [134]**
**sold [1]**   10/10
**solely [1]**   38/25
**some [38]**   8/2 11/5 11/15
14/9 14/9 14/10 17/22 23/8
23/13 23/19 26/4 26/12 27/10
30/25 31/17 34/12 34/14
34/24 35/12 38/15 39/8 39/13
39/20 40/6 40/9 41/1 41/2
51/4 57/24 67/4 68/22 69/6
69/6 76/21 79/9 79/16 79/24
93/16
**somebody [9]**   5/8 37/17 43/1
71/15 76/20 77/1 81/8 83/1
83/15
**somebody's [3]**   42/10 76/5
80/10
**someone [3]**   36/6 60/3 82/24
**someone's [1]**   87/2
**something [18]**   5/8 14/15
14/16 27/7 28/20 30/22 37/20
37/21 47/1 52/10 74/3 79/1

79/1 79/18 79/25 80/13 81/3
**sometimes [2]**   14/14 75/24
**somewhat [1]**   21/17
**somewhere [1]**   76/12
**son [2]**   65/24 66/2
**son's [1]**   63/3
**soon [1]**   44/24
**sorry [5]**   15/22 16/2 24/11
52/5 64/15
**sort [15]**   7/8 8/10 10/24
14/16 20/20 21/23 22/13
35/10 35/15 41/19 52/10 71/6
71/19 76/21 78/17
**sound [1]**   57/23
**sounds [1]**   29/18
**Special [1]**   4/14
**specific [7]**   27/22 41/15
68/15 68/16 82/12 84/3 84/15
**specifically [3]**   5/19 33/15
86/2
**spell [1]**   89/9
**spent [2]**   19/6 86/5
**Spore [2]**   34/20 40/8
**spray [1]**   75/21
**spreadsheet [1]**   65/25
**Spring [1]**   2/6
**stand [1]**   12/11
**standard [4]**   40/20 40/23
40/24 50/24
**standing [1]**   76/25
**start [7]**   5/12 8/6 15/14
49/10 53/23 81/21 89/20
**starting [3]**   4/10 46/12 55/5
**starts [1]**   41/4
**state [2]**   56/25 89/9
**statement [2]**   42/13 49/21
**statements [1]**   49/13
**states [17]**   1/1 1/4 1/6 2/3
4/9 4/12 6/9 7/14 15/21
15/23 23/22 27/13 27/18
27/20 56/22 96/5 96/9
**statute [8]**   17/21 18/2 18/9
67/11 67/15 82/12 85/13 86/6
**statutory [1]**   9/23
**Stella [24]**   1/9 4/9 4/19
67/12 67/18 68/18 68/20 69/6
69/24 70/11 70/16 70/18
70/21 70/24 71/4 71/8 71/23
79/12 79/21 81/15 82/9 82/21
84/1 84/22
**Stella's [1]**   68/3
**stenographically [1]**   96/6
**stepping [1]**   67/7
**steps [2]**   16/25 60/5
**sticking [1]**   16/20
**still [9]**   10/17 20/20 37/13
63/13 64/10 64/16 81/10
91/21 91/22
**stimulated [1]**   73/12
**stimulation [1]**   74/1
**stipulation [1]**   41/21
**stood [2]**   71/9 71/12
**stop [3]**   5/17 9/1 22/8
**stories [1]**   42/21
**strategies [1]**   50/2
**stream [1]**   61/25
**Street [3]**   1/21 2/6 2/11
**stretch [1]**   70/2
**strike [1]**   43/23
**strong [1]**   11/7
**structure [1]**   60/16
**struggle [1]**   16/12
**stuff [9]**   20/25 43/8 67/1
73/7 73/10 75/20 81/23 82/7
88/21
**stumbled [1]**   59/22
**sub [2]**   25/12 25/14
**subfolders [7]**   60/3 60/11

**S**

**subfolders... [5]** 60/18
60/21 63/9 79/17 88/16
**subject [2]** 43/19 47/13
**subjective [3]** 21/18 40/24
41/2
**subjects [1]** 80/16
**submits [9]** 22/12 23/11
23/17 27/8 28/12 54/12 57/10
66/7 88/1
**submitted [1]** 90/8
**subsections [1]** 18/10
**subsequent [1]** 39/18
**substitute [1]** 46/14
**such [8]** 15/20 20/2 22/17
23/9 42/21 57/2 76/2 77/13
**suddenly [1]** 80/21
**sufficient [8]** 24/6 28/18
28/23 29/4 29/8 29/20 29/22
37/15
**suggest [4]** 34/13 77/6 77/19
78/16
**suggested [5]** 9/13 13/21
28/10 75/8 80/7
**suggesting [4]** 11/15 26/4
83/16 85/8
**suggestion [1]** 47/25
**suggestive [2]** 8/14 76/8
**suggests [1]** 78/12
**suit [1]** 23/5
**Suite [1]** 1/21
**summaries [2]** 32/8 32/10
**summary [4]** 32/12 32/12
32/14 32/15
**sunset [1]** 87/1
**supervaluable [1]** 88/21
**support [1]** 83/18
**supposed [2]** 33/20 35/12
**supreme [1]** 16/4
**sure [9]** 9/21 11/12 12/11
17/14 17/19 20/10 32/8 45/6
69/9
**sustained [2]** 69/14 80/20
**swallow [1]** 21/24
**swear [1]** 89/7
**sworn [1]** 89/11
**sympathies [1]** 69/2
**sympathy [3]** 69/18 69/18
69/21
**system [1]** 64/22

**T**

**table [1]** 4/13
**Taiwan [2]** 55/8 57/5
**take [9]** 11/15 14/19 19/23
33/13 33/25 60/4 69/5 94/10
94/20
**taken [9]** 36/1 36/2 68/25
70/8 79/14 83/13 87/12 87/14
94/11
**takes [1]** 6/6
**taking [4]** 12/17 36/11 46/18
71/4
**talk [4]** 58/18 73/20 82/16
82/18
**talked [3]** 34/11 41/17 86/24
**talking [10]** 20/25 24/22
34/18 42/17 42/17 77/11
81/14 84/8 86/5 88/8
**talks [2]** 18/10 35/2
**target [1]** 35/9
**tasked [2]** 68/10 68/13
**tasks [1]** 63/25
**taxes [2]** 60/11 88/16
**team [2]** 8/25 70/21
**tech [2]** 66/22 66/23
**technical [6]** 64/5 68/14
72/10 83/5 84/4 84/15
**technically [1]** 10/14
**technology [2]** 12/24 13/6
**teen [9]** 42/20 58/24 59/7
66/4 66/6 79/13 80/20 86/2
88/23
**teenage [1]** 67/6
**tell [9]** 45/22 45/23 45/24
51/12 70/14 70/15 81/9 92/20
93/17
**telling [2]** 27/9 92/20
**tells [3]** 46/11 68/1 68/2
**tends [1]** 35/16
**tentative [1]** 5/11
**term [3]** 15/19 73/19 73/23
**terms [1]** 50/8
**terrible [1]** 72/3
**test [11]** 21/24 25/10 25/11
25/19 26/3 30/1 41/9 74/18
76/11 77/11 82/2
**tested [1]** 62/8
**testified [7]** 54/7 54/10
56/14 56/19 61/18 62/14
62/21
**testify [2]** 70/24 71/7
**testimony [6]** 50/1 54/3
54/19 56/13 62/9 85/19
**testing [1]** 58/25
**textbook [1]** 80/3
**Thailand [3]** 55/17 55/23
57/7
**than [9]** 14/19 18/16 20/25
23/20 31/23 33/19 50/4 84/11
92/24
**thank [21]** 5/10 15/4 24/9
24/19 34/4 34/5 42/3 44/1
44/8 48/14 49/5 52/19 66/17
66/17 66/21 84/24 89/3 89/13
90/15 93/10 95/5
**that [589]**
**that's [2]** 17/17 37/18
**their [28]** 7/19 7/20 35/7
42/10 42/11 42/11 42/19 43/1
43/2 43/6 43/7 43/19 50/1
50/2 63/3 65/16 65/18 65/19
65/21 67/15 68/6 68/20 69/9
75/24 75/24 83/19 87/7 87/9
**them [46]** 10/10 14/14 23/14
23/14 24/4 28/17 29/3 31/11
31/17 31/21 36/6 36/11 36/16
36/17 42/1 42/1 44/25 45/23
45/24 48/22 48/23 55/19
55/20 58/15 58/17 59/10
59/20 63/8 63/9 64/1 65/13
65/22 68/1 68/24 72/3 75/7
75/9 81/21 82/5 82/6 92/8
92/20 92/21 93/8 93/17 93/25
**themselves [5]** 48/24 77/14
77/18 88/10 88/12
**then [38]** 11/3 11/17 11/25
12/23 12/25 13/2 13/6 14/21
20/19 31/18 31/25 32/7 35/10
35/11 40/17 41/9 41/11 41/13
41/14 45/5 47/18 50/12 53/24
57/8 63/9 72/1 72/6 72/19
74/24 77/5 78/19 80/19 82/1
91/9 92/24 93/5 93/7 93/25
**theory [2]** 73/15 78/20
**there [86]**
**therefore [5]** 36/22 42/15
49/16 51/1 51/23
**these [54]**
**they [90]**
**THIBODEAUX [2]** 1/20 96/12
**thing [16]** 6/12 12/14 16/22
17/19 31/24 33/5 37/23 42/8
48/3 69/4 69/16 69/17 72/3
74/12 81/24 83/11
**things [12]** 5/12 19/15 30/24
34/13 40/6 49/25 50/18 67/5
67/9 67/10 81/17 89/16
**thank [5]** 77/20
**thinking [10]** 21/11 49/25
50/1 50/2 50/3 69/7 79/24
81/3 83/12 83/13
**thinks [2]** 38/21 83/18
**third [10]** 26/15 53/5 53/17
54/16 56/9 57/15 72/15 77/5
77/8 77/19
**this [179]**
**those [55]**
**though [7]** 10/15 11/18 36/9
78/8 78/9 78/9 82/11
**thought [10]** 14/15 31/1 31/2
32/14 33/14 47/5 74/8 91/21
93/3 93/5
**threatens [1]** 21/23
**three [18]** 1/14 47/19 52/22
52/25 53/8 54/14 54/14 54/20
55/2 57/11 58/14 69/12 70/12
71/25 85/2 85/2 89/1 89/1
**through [10]** 15/22 41/22
58/14 60/1 61/2 63/17 75/7
75/9 83/12 84/12
**throughout [1]** 49/12
**throw [1]** 17/4
**THURSDAY [2]** 1/16 4/1
**till [1]** 90/12
**time [29]** 7/7 10/21 11/1
12/20 19/6 32/22 33/10 37/24
38/17 39/19 40/11 49/10
49/20 51/4 51/11 52/10 54/5
54/8 54/11 66/17 71/1 82/21
86/5 92/23 92/24 94/13 94/14
94/16 94/20
**times [4]** 36/13 58/25 61/1
87/19
**tiny [1]** 56/15
**Title [1]** 96/4
**titles [1]** 88/16
**today [4]** 68/10 68/13 68/13
89/17
**toddlers [1]** 42/19
**together [1]** 73/7
**toilet [4]** 67/7 75/18 76/15
77/2
**told [7]** 42/21 49/11 56/9
57/1 58/23 59/14 62/12
**tomorrow [5]** 45/23 45/25
89/20 92/21 94/23
**too [3]** 19/5 44/2 76/18
**took [11]** 16/24 17/21 17/24
25/15 58/16 61/18 71/8 83/20
88/6 88/11 88/11
**totally [1]** 85/6
**towels [2]** 75/20 86/25
**trade [1]** 55/16
**training [1]** 42/19
**transcribing [1]** 49/1
**transcript [4]** 1/13 47/4
96/6 96/7
**transferred [1]** 56/1
**transform [3]** 79/6 79/18
79/19
**transmitted [1]** 56/1
**traveled [3]** 53/18 54/18
57/13
**treated [1]** 35/23
**trial [8]** 1/14 31/19 47/16
49/24 67/2 69/19 84/11 90/25
**tried [2]** 6/16 93/15
**true [2]** 51/12 96/5
**trust [3]** 68/6 83/23 85/23
**trusting [4]** 70/9 83/5 83/23
84/16
**try [3]** 8/12 70/24 93/19
**trying [7]** 39/1 49/23 72/4
79/9 82/21 82/22 87/15
**turn [1]** 93/25

## T

**turned [1]**   32/12
**turning [1]**   19/6
**Twelfth [1]**   2/6
**Twenty [1]**   45/13
**two [10]**   18/9 22/11 32/18
50/14 50/17 50/18 51/1 51/2
62/12 88/15
**type [4]**   33/20 37/23 43/15
81/24
**types [1]**   32/18
**typos [1]**   18/5

## U

**U.S [3]**   1/20 2/4 2/4
**U.S.C [2]**   18/1 25/4
**ultimately [2]**   13/7 58/2
**unaddressed [1]**   63/13
**unconstitutional [2]**   16/7
38/4
**unconstitutionally [1]**   15/20
**uncontroversial [1]**   78/14
**under [15]**   7/2 12/19 35/24
53/11 54/7 54/10 54/14 57/21
57/25 67/11 67/16 86/8 86/9
86/16 88/16
**underlies [1]**   37/19
**underlying [1]**   34/25
**understand [7]**   6/23 25/18
31/20 39/5 41/8 70/25 84/13
**understandable [2]**   69/20
69/23
**understanding [3]**   24/21 94/7
94/8
**understands [1]**   51/22
**understood [3]**   31/22 47/21
83/15
**undressing [1]**   7/22
**undue [2]**   28/3 29/9
**unequivocally [1]**   59/13
**Unfortunately [1]**   92/10
**UNITED [15]**   1/1 1/4 1/6 2/3
4/9 4/12 7/14 15/21 15/23
23/21 27/13 27/18 56/22 96/5
96/9
**unless [2]**   44/9 92/22
**unlike [1]**   80/14
**unnatural [3]**   77/9 78/3 78/6
**until [3]**   45/5 45/22 89/18
**untitled [1]**   60/13
**unusual [1]**   37/22
**up [41]**   7/16 7/19 8/11 8/11
16/22 20/9 21/2 22/23 23/14
23/18 24/16 37/4 38/8 39/18
44/5 47/14 51/14 51/17 55/7
55/15 58/3 60/24 60/24 62/3
62/12 64/22 70/14 71/9 71/12
73/2 73/3 73/4 75/6 75/15
82/2 82/5 82/14 82/24 84/14
89/19 93/12
**upheld [2]**   7/23 23/21
**upon [4]**   13/4 38/12 39/9
63/7
**upset [1]**   68/9
**upsetting [2]**   67/3 67/4
**us [4]**   28/7 91/17 92/2 92/8
**USB [7]**   54/22 54/24 55/3
55/25 56/2 56/10 60/25
**use [14]**   5/25 6/2 19/20
26/23 38/13 38/19 70/4 74/21
78/24 79/4 79/22 81/5 84/21
88/2
**used [12]**   7/21 17/22 19/22
53/13 53/14 57/18 59/5 61/10
66/9 76/20 77/4 85/14
**using [8]**   38/14 53/17 54/17
57/13 67/7 71/24 71/25 77/2
**utilize [1]**   7/1

## V

**vaginas [3]**   87/16 87/7 87/9
**vague [1]**   19/20
**vagueness [2]**   16/7 38/4
**valuable [1]**   88/22
**Vampire [1]**   60/13
**verdict [9]**   12/6 12/21 38/10
45/24 47/24 48/11 73/1 90/5
90/12
**version [1]**   44/7
**versus [8]**   4/9 7/14 15/21
15/23 23/22 27/14 27/18 43/3
**very [16]**   8/22 29/25 50/24
59/20 60/9 68/15 68/15 69/13
70/1 73/16 82/12 84/3 84/3
89/23 90/16 95/2
**victim [11]**   32/2 53/1 53/3
53/5 54/2 54/6 54/9 57/19
63/20 63/23 64/13
**victims [8]**   52/23 53/11
53/13 53/15 54/14 66/9 66/15
89/2
**Victoria [1]**   4/14
**video [13]**   16/10 63/11 64/7
64/8 64/10 64/11 64/14 64/17
64/18 64/21 74/10 91/20 93/4
**videos [14]**   7/21 53/12 54/17
57/12 63/12 63/12 65/22 66/2
67/19 71/25 73/16 76/3 78/16
76/16
**view [6]**   7/8 36/16 41/1
49/15 62/22 73/24
**viewed [4]**   58/17 58/21 65/14
88/11
**viewer [19]**   21/22 35/4 35/8
35/16 36/14 36/15 36/21 37/8
39/9 39/10 39/15 40/25 59/22
62/19 74/2 78/23 88/8 88/9
88/9
**viewier [1]**   36/12
**viewing [1]**   27/24
**viewpoint [1]**   34/16
**violation [3]**   18/6 83/23
85/23
**vis [2]**   35/8 35/8
**vis-a-vis [1]**   35/8
**visual [9]**   20/2 21/20 35/3
39/8 53/16 57/20 66/10 75/1
78/21
**void [1]**   16/6
**voyeur [1]**   25/7

## W

**W-I-E-G-A-N-D [1]**   15/24
**wait [5]**   22/7 45/5 46/15
46/20 46/21
**waive [2]**   11/9 11/13
**waived [1]**   11/25
**waiver [1]**   48/25
**waiving [1]**   20/19
**walk [1]**   64/1
**want [26]**   5/8 12/4 12/16
17/14 20/9 20/17 23/19 32/14
44/9 45/6 46/14 48/4 65/2
66/24 66/25 67/1 73/19 74/12
74/24 75/7 75/8 83/17 91/9
91/24 92/2 94/25
**wanted [7]**   14/3 31/3 32/9
42/20 60/20 66/5 83/11
**wants [3]**   6/19 47/1 92/24
**was [137]**
**wasn't [11]**   20/2 32/8 32/11
61/3 61/4 62/22 72/4 82/23
83/1 85/22 87/1
**waste [1]**   82/21
**way [18]**   5/22 7/8 11/5 11/24
12/17 15/16 22/16 37/5 39/7
39/13 46/16 50/8 60/7 66/24

## Y

76/2 77/13 78/3 78/3
85/21 87/19 88/2
**we [147]**
**web [2]**   10/10 10/16
**weigh [3]**   27/10 78/8 78/10
**weighed [1]**   8/25
**weighing [1]**   58/5
**weight [16]**   8/21 23/15 23/19
24/1 24/1 24/5 27/6 28/4
28/4 28/16 28/16 29/2 29/2
29/7 75/6 82/5
**well [28]**   6/5 9/20 9/21 12/7
12/10 15/12 16/21 24/19
26/21 33/6 34/24 35/10 37/4
38/4 42/12 43/12 44/13 58/25
68/2 69/7 75/14 77/10 78/4
79/12 80/9 84/10 86/22 93/21
**went [1]**   62/5
**were [69]**
**weren't [1]**   43/24
**West [1]**   1/21
**WESTERN [1]**   1/2
**what [98]**
**whatever [6]**   29/8 38/8 92/1
92/25 94/24 94/25
**whatsoever [5]**   75/18 77/10
78/17 79/1 81/1
**when [22]**   15/2 21/7 28/15
47/14 51/25 53/11 54/15 65/1
67/22 67/24 69/2 71/9 71/12
71/14 73/5 76/19 82/6 82/7
82/8 82/8 89/21 93/5
**where [39]**   8/24 10/9 23/12
23/23 26/16 32/24 35/15
35/18 36/3 37/12 39/11 41/3
52/8 54/1 54/23 54/25 55/3
56/2 57/17 59/6 59/13 60/1
60/9 60/15 60/16 61/5 61/5
61/15 71/1 71/14 77/17 78/19
78/23 80/13 80/14 83/13
87/16 88/5 92/13
**whereas [1]**   6/1
**whether [53]**
**which [54]**
**while [3]**   18/10 49/25 67/1
**who [24]**   4/20 27/9 35/5 35/6
36/2 36/4 36/6 36/6 39/14
53/1 56/13 57/2 59/22 69/19
74/8 76/10 77/1 80/6 81/4
81/5 81/8 81/11 88/3 88/11
**whole [2]**   15/3 84/20
**wholly [1]**   27/4
**whose [1]**   23/1
**why [28]**   7/4 16/3 16/8 18/4
21/2 25/11 26/13 30/6 36/1
36/19 36/24 38/8 39/22 45/5
50/16 61/24 66/3 72/19 77/10
79/5 79/5 79/6 79/23 88/13
88/22 91/5 93/19 93/24
**Wiegand [11]**   15/23 22/19
24/13 24/14 24/24 24/25 25/1
25/9 25/10 34/18 35/15
**wife [3]**   8/10 65/23 66/2
**will [74]**
**willing [1]**   78/17
**willingness [1]**   78/13
**wind [1]**   38/8
**window [1]**   75/20
**wish [1]**   29/8
**within [4]**   25/4 46/3 60/15
85/16
**without [6]**   9/9 12/20 13/19
20/19 38/19 41/7
**WITNESS [1]**   3/3
**witnesses [3]**   64/24 70/22
71/20
**women [1]**   76/24
**won't [4]**   12/13 52/7 59/12
85/3

**W**

**wonder [1]**   41/20
**word [1]**   16/17
**words [21]**   6/3  7/11  9/2  9/6
11/14  11/18  12/3  17/15  24/24
31/12  31/13  35/7  40/4  40/7
50/14  50/24  51/9  51/14  91/19
91/24  92/8
**work [7]**   59/12  59/16  60/2
60/11  75/7  79/5  88/17
**working [3]**   59/1  64/2  64/24
**worry [1]**   85/3
**would [66]**
**wouldn't [7]**   6/24  11/9  11/20
11/22  11/25  12/6  39/21
**wrap [2]**   82/14  84/14
**wrestling [2]**   8/21  8/25
**write [1]**   55/20
**written [3]**   4/25  5/4  49/2
**wrong [7]**   18/1  18/4  33/2
33/3  33/7  39/24  78/10
**wrongly [1]**   22/13
**WU [1]**   1/3

**Y**

**year [5]**   7/20  35/22  35/23
37/17  43/13
**years [2]**   56/22  62/12
**yes [28]**   5/6  5/7  6/22  9/16
10/15  15/13  17/17  19/14
20/14  21/2  31/16  42/7  46/4
46/5  47/3  47/23  48/2  49/3
49/4  52/16  52/18  84/7  84/24
88/3  89/6  90/21  90/22  92/6
**yesterday [5]**   19/25  21/14
40/22  42/17  47/5
**yet [1]**   44/24
**you [364]**
**you're [1]**   37/21
**young [3]**   68/5  76/24  78/15
**younger [3]**   58/24  59/7  66/3
**your [119]**
**yourselves [2]**   55/20  69/7

**Z**

**zero [1]**   61/20
**zooming [1]**   76/1